**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **DAVID DEJUAN WISE,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 2:08cv17-MHT** |
| | ) | **(CR No. 2:04-cr-00009-LES-VPM-1)** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## UNITED STATES'S RESPONSE TO § 2255 MOTION

COMES NOW the United States of America ("the Government") by and through its

attorneys, Leura G. Canary, United States Attorney, and Sandra J. Stewart, Assistant United

States Attorney, and in compliance with this Court's January 10, 2008 order, responds to

Petitioner David DeJuan Wise's Motion Under § 2255 To Vacate, Set Aside, Or Correct

Sentence By A Person In Federal Custody, as follows:

## I. PROCEDURAL HISTORY AND RELEVANT FACTS

On January 21, 2004, a grand jury in the Middle District of Alabama returned a three-

count indictment against Petitioner/Defendant David DeJuan Wise ("Wise") and two

codefendants charging them with violations of the Controlled Substances Act.  *See*

Government's Exhibit ("GX") A (Doc. 1)[1], a copy of the initial indictment, attached to this

response.  Specifically, count one of the indictment charged that, beginning in April 2003 until

on or about April 29, 2003 in Montgomery, Alabama, within the Middle District of Alabama,

---

[1]The references to "Doc." are to the docketed entries from Wise's criminal case, criminal
case number 2:04-cr-00009-LES-VPM-1.

1

and elsewhere, Wise, Tony Lamar Hooks and Joanna Nicole Hooks, knowingly and intentionally conspired to distribute and possess with the intent to distribute 500 grams or more of cocaine hydrochloride, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846.  *See* GX A at 1.  Count two of the indictment charged that, on or about April 29, 2003, in Montgomery, Alabama, within the Middle District of Alabama, and elsewhere, Wise and Tony Lamar Hooks aided and abetted one another in knowingly and intentionally possessing with the intent to distribute 500 grams or more of cocaine hydrochloride, a Schedule II controlled substance, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1).  *Id*. at 2.  Count three of the indictment charged that, on or about April 29, 2003, in Montgomery, Alabama, within the Middle District of Alabama, Wise and Joanna Nicole Hooks aided and abetted one another in knowingly and intentionally possessing a mixture and substance containing in excess of five grams of cocaine base (crack cocaine), a Schedule II controlled substance, in violation of 21 U.S.C. § 844(a).  *Id*.  The indictment also contained a forfeiture allegation.  *Id*. at 2-4.  At his arraignment on February 4, 2004, Wise, represented by retained counsel Dan W. Taliaferro, entered a plea of not guilty.  (Doc. 13, 14)  This initial indictment was dismissed on motion of the Government (Doc. 79, 80), after a superceding indictment was returned by the grand jury.

After Wise's counsel was permitted to withdraw and new counsel, Susan Graham James, entered her appearance as counsel for Wise (Doc. 49, 65, 70), a superceding indictment was returned by the grand jury in the Middle District of Alabama on May 5, 2004, *see* GX B (Doc. 72), a copy of the superceding indictment, attached to this response.  The superceding indictment was a five-count indictment against Wise and several codefendants, and Wise was charged with violations of the Controlled Substances Act in all five counts.  Specifically, count one of the

2

superceding indictment charged that in or about the beginning of April 2003 and continuing until on or about April 29, 2003, in Montgomery, Alabama, within the Middle District of Alabama, and elsewhere, Wise and Joanna Nicole Hooks knowingly and intentionally conspired with each other, and with Tonney Lamar Hooks, to distribute and possess with the intent to distribute 500 grams or more of cocaine hydrochloride, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846.  *Id*. at 1.  Count two of the indictment charged that, on or about April 29, 2003, in Montgomery, Alabama, within the Middle District of Alabama, Wise, while aiding and abetting Tonney Lamar Hooks, knowingly and intentionally possessed with the intent to distribute 500 grams or more of cocaine hydrochloride, a Schedule II controlled substance, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1).  *Id*. at 1-2.  Count three of the indictment charged that, on or about April 29, 2003, in Montgomery, Alabama, within the Middle District of Alabama, Wise and Joanna Nicole Hooks aided and abetted one another in intentionally possessing a mixture and substance containing in excess of five grams of cocaine base (crack cocaine), a Schedule II controlled substance, in violation of 21 U.S.C. § 844(a).  *Id*. at 2.  Count four of the indictment charged that, on or about November 26, 2002, in Prattville, Alabama, within the Middle District of Alabama, Wise, Robert James Zeigler, Jr., and Leslie Octavius Reese, knowingly and intentionally conspired with each other to distribute five grams or more of cocaine base (crack cocaine), a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846.  *Id*.  And count five of the indictment charged that, on or about November 26, 2002, in Prattville, Alabama, within the Middle District of Alabama, Wise, Robert James Zeigler, Jr., and Leslie Octavius Reese, aided and abetted one another in knowingly and intentionally distributing five grams or more of cocaine base (crack cocaine), a Schedule II

3

controlled substance, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). *Id*. at 2-3. The superceding indictment also contained a forfeiture allegation.[2] *Id*. at 3-4. Wise pleaded not guilty to this superceding indictment. (Doc. 83)

Before trial, the Government filed a Notice of Information To Establish Convictions. *See* GX C (Doc. 28), a copy of the notice, attached to this response. In that notice, the Government provided the Court and Wise with notice of Wise's status as a career offender due to his prior felony drug convictions, along with copies of those convictions. *Id*. Those convictions were to be used for purposes of enhancing Wise's sentence under 21 U.S.C. § 851. *Id*. Wise had been convicted for unlawful distribution of a controlled substance on or about April 27, 2001 in the Circuit Court of Elmore County, Alabama (CC-00-365) and sale of a controlled substance on or about November 27, 1996 in the Circuit Court of Elmore County, Alabama (CC-96-188). *Id*.

Wise proceeded to a jury trial on March 14, 2005.[3] After the jury was selected, and before opening statements to the jury, this Court gave a preliminary instruction to the jury that provided, in relevant part:

> The charges are set forth in what we call an indictment, that I've just summarized for you. You should understand that an indictment is simply an accusation. It is not evidence of anything. The defendants have entered a plea of guilty (sic.) to these charges and are presumed to be innocent unless and until proven guilty beyond a reasonable doubt. It will be your duty to decide from the evidence whether either or both defendants are guilty or not guilty of the crimes charged. From the evidence you will decide what the facts are.

*See* GX D at 14, an excerpt from the jury trial proceedings transcript containing the above

---

[2]The forfeiture allegation was later struck on motion of the Government. (Doc. 208, 277)

[3]The jury trial in this case was transcribed for purposes of Wise's appeal to the United States Court of Appeals for the Eleventh Circuit, and should be a part of the record of this Court.

4

instruction, attached to this response.[4]  There was no objection by Wise's counsel to this jury instruction.

At the close of all of the evidence and after counsel made their closing arguments to the jury, the Court gave its oral charge to the jury.  *See* GX E, the Court's oral charge to the jury, excerpted from the jury trial proceedings transcript, attached to this response.[5]  Included in that charge were the following relevant instructions:

It is your duty to receive and accept as correct the law given you in this charge, and you are not privileged to entertain an opinion as to the law or what the law should be which conflicts in any respect with the law as stated in this charge. However, I have not attempted to embody all of the law applicable to this case in any one of the instructions contained in this charge and, therefore, you must consider the charge in its entirety giving due weight to each instruction and construing each construction in the light of and in harmony with the other instructions and so apply the principles set forth to all of the evidence received during the trial.

* * * *

The defendants have entered pleas of not guilty to these charges.  As I told you at the beginning of the trial, an indictment is simply an accusation.  It is not evidence of anything.  To the contrary, a defendant is presumed to be innocent. Thus, a defendant even though charged begins the trial with no evidence against him.  The presumption of innocence alone is sufficient to find the defendant not guilty and can be overcome only if the Government proves beyond a reasonable doubt each essential element of the crime charged.

* * * *

Finally, remember that the defendants, not anyone else, are on trial here, and the defendants are on trial only for the crimes charged against them, not for anything else.  The law presumes the defendant to be innocent of crimes.  Thus a

---

[4]This excerpt is from Volume II of the trial transcript, the 2nd day of jury trial proceedings, dated March 15, 2005, at page 14.

[5]This excerpt is from Volume IV of the trial transcript, the 4th day of the jury trial proceedings, dated March 17, 2005, at pages 252-77.

> defendant, although accused, begins the trial with a clean slate with no evidence
> against him.  The presumption of innocence alone is sufficient to acquit a
> defendant.

*See* GX E at 253, 262-263.  There were no objections to these jury instructions as given.  *See* GX

E at 277.

In addition to the oral charge, the Court provided the jury with written instructions that

were in accordance with the oral charge.  *See* GX F at 182-83, excerpt from the court's

comments to the jury prior to closing arguments, attached to this response.[6]

On March 18, 2005, the jury convicted Wise on count one (April 2003 conspiracy to

possess with the intent to distribute 500 grams of more of powder cocaine); count two (April 29,

2003, possession with the intent to distribute 500 grams or more of powder cocaine); and count

three of the indictment (April 29, 2003 possession with intent to distribute 5 grams or more of

crack cocaine).  (Doc. 245)  The jury acquitted Wise on counts four and five of the indictment.

(*Id*.)

Before sentencing, a presentence investigation report was prepared in this case.[7]  (Doc.

270)  In the report, the probation officer determined that, under the applicable Sentencing

Guidelines, Wise's offense level was 37 and his criminal history category was VI.  The offense

---

[6]This excerpt is from Volume IV of the trial transcript, the 4th day of the jury trial
proceedings, dated March 17, 2005, at pages 182-83.

[7]The presentence report is a part of the record in this case, but is under seal.  Therefore,
while the Government will refer to the pertinent parts of that report, it is not attaching a copy of
that report to this response.  However, because it is a part of the record in this case, it may be
considered in resolving the issues raised in the § 2255 motion.

level was determined to be 30, without application of the career offender provisions in U.S.S.G.[8] § 4B1.1. With application of the career offender provisions, which the probation officer found applicable in this case because of Wise's two prior felony drug convictions, Wise's offense level was 37.

As to Wise's criminal history category, the probation officer found that Wise's criminal history category, without application of the career offender provisions was III. However, because Wise had previously been convicted of two felony drug offenses, his criminal history category was VI, pursuant to U.S.S.G. § 4B1.1(b).

A sentencing hearing was held on July 13, 2005. *See* GX G, a copy of the sentencing hearing transcript in this case, attached to this response. After hearing from the parties and ruling on the objections to the presentence report, the Court overruled the objections. *See* GX G at 2-19. The Court then explained the application of the Sentencing Guidelines in this case, explaining how the sentence would be calculated, with and without application of the career offender provisions. *See* U.S. Sentencing Guidelines Manual § 4B1.1 (Nov. 1, 2004). The Court explained:

> THE COURT: Well, I'm inclined to agree. In reviewing these – and I went back and reviewed all my notes. I think the issue – as far as these objections are noted, I'm going to overrule them and deny them. I think what we get to is, now that the guidelines are no longer binding upon the Court but are merely advisory and since the career offender provisions are only a part of the guidelines, I think the argument of defendant goes to how the Court should handle that and whether I should fashion the sentence other than as reflected in the presentence investigation report and in the proposed sentence, as set forth.

---

[8]"U.S.S.G." is a reference to the United States Sentencing Guidelines. Specifically, in this case, it refers to the November 1, 2004 version of the United States Sentencing Guidelines Manual, which is the version of the Guidelines that was used to calculate Wise's sentence.

So let me proceed with my findings now that I've resolved the objections. The Court now adopts the revised presentence report and the facts set forth therein as findings for purposes of sentencing. And obviously, I've had the benefit of having heard the trial testimony. And while I didn't have a transcript, I did have a chance to review all my notes.

Under the – starting out, as I've noted, the 990.1 grams of powder cocaine constitute the basis for both count one and count two. In fashioning a presentence investigation report in this matter, the drugs, when taken just – or Probation has taken just the drugs that were discovered on the date of their arrest, 990.1 grams of powder cocaine, the 22.1 grams of crack cocaine, and then converted them under the guidelines to marijuana, which resulted in a base offense level of 28. To that, there's then added the adjustment for role in the offense, which is two offense levels, resulting in an adjusted offense level of 30. And his prior history was calculated as only – I know it comes out as a criminal history category of III based on a criminal history score of six points. And this would convert to a sentence range of 121 to 151 months.

However, if you apply the provisions of Section 4B, I believe it is, 4B1.1, noting the two prior drug convictions of the defendant, his offense level is converted to a 37 and his criminal history category is converted to a level VI. And under the guidelines, this would result in a sentence of 360 months to life imprisonment.

Count – if we go back to the guidelines, for counts one and two, because he had a prior drug conviction under Title 21, United States Code, Section 841(d), the statutory sentence for each of those two convictions is ten years to life. The 121 to 151 months, of course, falls within that. The conviction under count three results in a statutory penalty of five to 20 years, but these would all be lumped together in one sentence. He would be sentenced cumulatively on the three using the guidelines. So it's either 121 to 151 months, or it's 360 months to life. He's facing under the guidelines a term of supervised release of not less than eight years and under count three, not more than – or – yes, not more than three years. The fine range is 20,000 to 8 million. And is that based on level 37? A level 30 would be 15,000, and I think the 8 million still applies, because I believe that's under the statute. And on the 37, it's 20,000 to 8 million. And then he's subject to a special assessment of $300. Those are the guideline findings of the Court.

So before we proceed with sentencing in this matter, I'm going to hear from both the government and the defense and from the defendant with respect to an appropriate sentence. Those are the guidelines. The guidelines are advisory under Booker. The Court is required to apply the factors set forth in Title 18, United States Code, Section 3553(a). (b)(1), the one I referred to, has been

declared unconstitutional, so it doesn't apply at all in determining this sentence.

*See* GX G at 19-21.  After hearing further from the parties, the Court then announced its sentence and the reasons for that sentence as follows:

THE COURT:  I probably have said enough to indicate that I am concerned, and I think the factors that both you and Ms. James [defense counsel] have raised are factors which I constantly struggle with in trying to determine an appropriate sentence.  I guess I might say that I start out in cases of this kind where a defendant is facing either a mandatory life sentence or mandatory sentence of 360 months or more with the feeling that this sentence is too severe for the criminal conduct involved.

What is an appropriate sentence?  And I look at – as I read Booker and 3553(a) and particularly – well, I guess both (1) and then the factors set forth in subparagraph (2), (3), and (4) are equally important.  But I guess I have to determine the sentence by considering the nature and circumstances of the offense and the history and characteristics of the defendant.  And, of course, that's the career criminal provisions the Sentencing Commission devised to treat the drug offenses being committed by people who have a prior history of dealing in drugs.

And we have here two prior convictions, both of which he has admitted that he entered pleas of guilty to.  He didn't say that he was not guilty, so there isn't any question in this case.  And I would have been surprised by a jury verdict, I think, for the defendant in the case, having heard the evidence that he certainly has knowledge of what the subject is and traded in it.

And we know from experience that the conversion of powder cocaine to crack cocaine anymore is a very simple matter and that a large percentage of this powder cocaine that's transported in interstate commerce to various locations is converted to crack cocaine.  I have struggled over the years with Congress's decision that crack cocaine is 100 times worse than powder cocaine.  That discrepancy offends me because it's not supported by the evidence that I received, which would support the findings that I made that this was not a reasonable difference, and for other reasons.  All of these reasons sounded good to me; but they didn't sound very good to the Court of Appeals, and I was reversed every time on them.  And it doesn't – that doesn't really bother me except it doesn't help anybody when you can just arbitrarily pick sentences on what I think a sentence ought to be without considering all of these factors which are set forth here and the need to reflect the seriousness of the offense and to promote respect for the law.

These are matters, I think, Mr. Moorer [AUSA] has addressed. The drug problem is a serious problem. This is a serious offense, to transport significant amounts. And I think a kilogram or almost a kilogram of powder cocaine is a significant amount of cocaine to be transporting in interstate commerce.

To afford adequate deterrence of criminal conduct. I don't know how we do that without imposing a sentence that is relatively severe so that people realize if they're going to deal in criminal conduct of this kind, that there's going to be a serious sentence.

To protect the public from further crimes of the defendant. Obviously, incarceration does that.

To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. Much of that will be available to him with the kinds of sentences that are available and the kinds of sentence and the sentencing range established for these offenses under the guidelines, which are now advisory.

I think Ms. James has made one telling point, and that is that we start out at the beginning. He's committed these two prior crimes. And that's true; he's served those sentences. That does not exonerate him from being held more responsible, to a more severe sentence this time, simply because he's paid his price for the prior two times. The purpose of the sentencing is to deter repetitive criminal conduct. And I have to accept the verdict of the jury that the defendant is guilty of this crime and this is a crime which, in part, he's conducted – he's committed in the past. And while he didn't receive severe sentences for those – the sentences could have been, but they ended up being very light – I think leads people to the conclusion that they can commit these crimes without any serious consequences. That simply isn't true. And the consequences have to be serious enough to deter other people from doing that.

But it's true, those two prior offenses for which he's been sentenced now were used first as a basis under Section 841 to increase the statutory range from five years to 40 years, to ten years to life. So that's number one. Those two sentences have done that, and they were not good sentences.

And then because we do have those two sentences, the guidelines say, well, that makes him a career offender, and now you have to sentence him to 360 months to life. And I can't do that. I don't think I can go down to 120 months. But when I look at the crime and the effect of the statute and the impact of the guidelines, I have to pick the sentence which I think under the circumstances in considering these factors, without being able to more specifically articulate – it's

10

my conclusion in this case that the appropriate sentence for this offense conduct and for considering his prior criminal history and his prior involvement with drugs is a term of imprisonment of 240 months.

And that's going to be the sentence of this Court, that the defendant will be committed to the custody of the Bureau of Prisons for a term of 240 months. I think this sentence reflects the seriousness of this offense and that it will promote respect for the law and provide for just punishment. I think that it affords adequate deterrence to criminal conduct and that it will protect the public from further crimes of the defendant. And it will give the defendant the opportunity to get the educational or vocational training and medical care in prison. He'll have an opportunity to do that. And under all of the sentences available to me, I think that this sentence, to me, is what I consider to be a reasonable, proportionate sentence under all of the circumstances of this case....

*See* GX G at 36-39.

The Court then sentenced Wise to 240 months in prison on counts one and two of the

indictment and to 60 months on count three of the indictment, the sentences to run concurrent.

*See* GX G at 39-40; GX at 2. The Court also ordered that Wise be placed on eight years of

supervised release on his release from prison on counts one and two, and three years of

supervised release on count three, all to run concurrent, with the supervised release being subject

to standard and special conditions. *See* GX G at 40-41; GX H at 3-4. Finally, Wise was ordered

to pay a special assessment of $300, and the Court waived the imposition of a fine due to Wise's

inability to pay. *See* GX G at 40; GX H at 5.

A final judgment was entered in this case on July 26, 2005. *See* GX H. Wise timely filed

a notice of appeal to the United States Court of Appeals for the Eleventh Circuit on July 19,

2005. (Doc. 272) In his brief to that Court, Wise raised the following four issues:

I.      Whether the evidence was sufficient to sustain a conviction.

II.     Whether Wise's Fifth and Sixth Amendment rights were violated
        as a result of the Court's exclusion of exculpatory evidence as to

11

possession of cocaine base charged in count III of the indictment.

III.    Whether the district court erred in striking Wise's diminished capacity defense.

IV.    Whether the district court erred in denying Wise's request for a special verdict finding on drug quantity pursuant to *Apprendi*, *Blakely*, and *Booker*.

The Eleventh Circuit issued an unpublished opinion rejecting all four of Wise's issues and affirming his convictions and sentence.  *See* GX I, *United States v. Wise*, No. 05-14710 (11th Cir. Oct. 10, 2006), attached to this response.  Wise did not appeal to the United States Supreme Court.

## II.  FACTS ESTABLISHED AT TRIAL

On the night of April 28, 2003, several Houston, Texas, police officers were stationed at the Greyhound Bus terminal in Houston, Texas.  (Vol. II at 55)[9]  They were assigned to the High Intensity Drug Trafficking Area ("HIDTA") team, which is assigned to perform narcotics interdiction work.  (Vol. II at 55)  HIDTA teams are comprised of local law enforcement officers who work together with the United States Drug Enforcement Administration ("DEA") to stop the trafficking in illegal narcotics, and are frequently stationed at transportation facilities.  (Vol. II at 43-44)  In particular, these officers focus their efforts on the interdiction of narcotics such as marijuana, cocaine, heroine, methamphetamine, and crack cocaine.  (Vol. II at 45)

Officer Richard Smith described Houston, Texas, as a source city for narcotics, where illegal narcotics were in great supply.  (Vol. II at 46)  Montgomery, Alabama, was characterized as a demand city, which would receive narcotics from Houston via various modes of

---

[9]"Vol. ____ at _____" are references to the volume of the trial transcript and the page number of that volume of the trial transcript from the jury trial in this case.

transportation.  (Vol. II at 47, 48)  Smith explained that the increased airport security that resulted from the September 11, 2001 attacks had caused a switch in narcotics trafficking from air to other modes of transportation such as trains, buses, and delivery services.  (Vol. II at 47)  Bus travel presented several advantages for drug couriers because their bags were not subject to screening; they did not have to present identification; and cash payment was not viewed with suspicion.  (Vol. II at 47-48)

Smith also explained that his years of experience as a police officer and formal training in narcotics interdiction had taught him to notice certain behavioral characteristics as a sign of possible involvement in drug trafficking.  (Vol. II at 43, 50-54)  Bus patrons who seem to be continually looking around, as though to identify plainclothes officers, and those who have no luggage, or only small backpacks, are viewed with interest by HIDTA officers.  (Vol. II at 50-51, 53-54)  Finally, Smith stated that when one or more persons were traveling together, one person served as the "alpha," or head man, and another serves as the "bravo," or mule.  (Vol. II at 53)  The "alpha" is frequently "the person that does all the setup and goes to the place to purchase drugs, give it to the bravo guy which is the mule.  A mule is simply a courier, and a lot of times the alpha guy is the one who does all the transactions."  (Vol. II at 53)

While working interdiction at the Greyhound Bus terminal in Houston, Texas, on April 28, 2003, Smith saw Wise and Hooks enter the bus station at approximately 9:50 p.m.  (Vol. II at 55-56)  The pair appeared to be scanning the lobby as though to identify police officers.  (Vol. II at 57)  Wise was wearing a green football jersey with the name "Cunningham" on the back. (Vol. II at 56-57)  Hooks was wearing a Phat Farm pullover jersey and carrying a backpack. (Vol. II at 57, 61, 83)  They got into line to purchase tickets, and each appeared to continue

scanning the lobby.  (Vol. II at 57)  After being in line for a few minutes, Wise said something to

Hooks which prompted Hooks to leave the line for the departure area.  (Vol. II at 57)  Smith

followed Hooks to the bus departure area, leaving other HIDTA officers to observe Wise.  (Vol.

II at 57-58)  Smith observed that Hooks seemed nervous and continued to scan his surroundings.

(Vol. II at 58)

Next, Smith saw Hooks walk back toward the ticketing area, and return with Wise.  (Vol.

II at 59)  Both men were running toward Gate 14 where a bus was departing.  (Vol. II at 59)

Smith saw them stop a departing bus by tapping the door and waving their hands to get the

driver's attention, and then enter the bus.  (Vol. II at 60)  He continued to observe Wise and

Hooks through the untinted bus windows, and saw that, even though seats were available for

them to sit together, they sat several rows apart.  (Vol. II at 60, 79)  Smith explained that drug

couriers sometimes sit separately, as the alpha tries to separate himself from the bravo.  (Vol. II

at 60, 82)  After Wise and Hooks departed on the bus, Smith and other HIDTA officers passed

the information along to Officer Pedro Lopez, another member of the HIDTA team, through the

Houston Police Department.  (Vol. II at 66)

Officer Pedro Lopez was also stationed at the Greyhound Bus terminal in Houston, Texas

on the evening of April 28, 2003.  (Vol. II at 89-90)  He saw Wise enter the terminal lobby

around 9:50 p.m. and get in line to purchase a ticket.  (Vol. II at 90)  He noticed that Wise

appeared to be nervous and kept looking around the lobby and at the clock.  (Vol. II at 90)  Wise

finally purchased a ticket and went to the departure area to board a bus.  (Vol. II at 90)  Although

Lopez did not know who Wise was when he first observed him, he identified him as a man

wearing a white and green football jersey that bore the name "Cunningham."  (Vol. II at 91)

14

After Wise departed, Lopez spoke with Officer Smith and they discussed their observations of Wise and Hooks.  (Vol. II at 90-91)  After this discussion, Lopez spoke to the Greyhound ticket agent and inquired about Wise's destination.  (Vol. II at 94)  Lopez learned that Wise had purchased a ticket for himself and another person whose last name was Hooks, and that their destination was Montgomery, Alabama.  (Vol. II at 94, 101-02)  The next morning Lopez telephoned the DEA office in Montgomery and informed officers there of their observations regarding Wise and Hooks, along with descriptions of the pairs' attire.  (Vol. II at 94-95)  When Lopez made the telephone call, he gave the suspects' names as "Wide" and Hooks.  (Vol. II at 97)  On April 29, 2003, Officer Brad Bartlett of the Montgomery, Alabama, Police Department emailed four drivers license photographs to the Houston Police Department.  (Vol. 67, 97) Lopez was unable to identify any of the photographs as the man he observed in the green and white football jersey, but Smith identified Hooks as the man who boarded the bus with Wise. (Vol. II at 67, 98)

On the morning of April 29, 2003, Officer Brad Bartlett of the Montgomery, Alabama Police Department Narcotics Division received information that two suspects had boarded a bus the previous night in Houston, Texas, and that they may be delivering drugs to Montgomery, Alabama, that day.  (Vol. II at 104-05)  The Houston Police Department had given him descriptions of the suspects' attire and a last name of Hooks for one of the suspects.  (Vol. II at 105-06)  Bartlett and three other officers stationed themselves at the Greyhound Bus terminal in Montgomery in various locations where they could observe passengers exiting the bus identified as the one on which the suspects were riding.  (Vol. II at 106-07, 128-29)  Wise got off of the bus alone and, after identifying him by his green and white jersey, Bartlett radioed his fellow officers

of Wise's arrival. (Vol. II at 107-08) One of the other officers tracked Wise's movements while

Bartlett waited for Hooks to get off of the bus. (Vol. II at 108-09) Bartlett knew what Hooks

looked like because he had been identified by the Houston officers as the person traveling with

Wise. (Vol. II at 109) Bartlett recognized Hooks from his photo and attire when he got off of the

bus, and Bartlett approached Hooks as Hooks made his way to the parking lot. (Vol. II at 109-

10) Bartlett identified himself as a Montgomery police officer in the Narcotics Division and

asked if he could talk to Hooks. (Vol. II at 110) Bartlett and Hooks walked to a car where other

police officers were standing with Wise and Joanna Hooks, both of whom were in handcuffs.

(Vol. II at 110-11)

When they reached the car, Sergeant Mike Drummond of the Montgomery Police

Department asked Hooks if the officers could search the two bags in his possession. (Vol. II at

111-12) Hooks consented, and Drummond found two packages of what appeared to be cocaine

in the backpack. (Vol. II at 111, 114-15) The cocaine was in two clear plastic bags, which were

in turn stuffed inside two socks. (Vol. II at 114-15) The substance field-tested positive as

cocaine, and the DEA laboratory in Dallas, Texas determined that the total weight was 990.1

grams with a purity of 77 percent. (Vol. II at 118, 266) This package of cocaine was turned over

to DEA Agent Devin Whittle. (Vol. II at 122) Drummond also found two Southwest Airline

tickets dated April 28, 2003, and a Greyhound Bus Lines receipt and itinerary for passage from

Houston, Texas, to Montgomery, Alabama, also dated for April 28, 2003. The airline tickets and

receipt were both in the name of Tonney Hooks. (Vol. II at 154)

Sergeant Mike Drummond and Detective Sean Collins were at the Montgomery

Greyhound Bus terminal with Bartlett on April 29, 2003. (Vol. II at 106, 127-28, 144)

16

Drummond immediately identified Wise by his green and white football jersey when he got off

of the bus, and followed him to the parking lot where he saw him meet a woman, then walk with

her to a nearby car.  (Vol. II at 146)  After Wise took a seat on the passenger's side, and the

woman on the driver's side, Detective Sean Collins positioned himself on the driver's side.  (Vol.

II at 130-31, 146-48)  Drummond tapped on the passenger window to get Wise's attention.  (Vol.

II at 146-47)  Wise and the woman looked in his direction whereupon he identified himself, and

asked if he could talk to them.  (Vol. II at 147)  Drummond saw Wise lean forward and move his

left hand toward the back, but he could only tell that he had extended his arm.  (Vol. II at 147-48,

159-60)

On the opposite side of the car, Collins could see that, while leaning forward, Wise

tapped Joanna Hooks on the leg to get her attention, and then held his hand open for her to grab a

plastic bag which appeared to be crack cocaine.  (Vol. II at 131-32)  At that point, Collins opened

the driver's side door and pulled the woman out of the car, saying, "she's got drugs," as he did

so.  (Vol. II at 132, 148-49)  The substance taken from Joanna Hooks field-tested positive as

crack cocaine, and the DEA laboratory in Dallas, Texas, determined that the total weight was

22.1 grams with a purity of 80 percent.  (Vol. II at 118, 266.)  This package of cocaine base was

also turned over to DEA Agent Devin Whittle.  (Vol. II at 133)

Tonney Hooks met Wise early in 2003 through his cousin and housemate, Cynthia

Hooks, who was dating Wise.  (Vol. II at 165)  Around March of 2003, Wise, also known as

Julio, began living at the Hooks's residence in Montgomery, Alabama.  (Vol. II at 165-66)  Wise

was known to have a lot of cash, and Hooks sometimes saw him with powder cocaine.  (Vol. II at

166-67)  After Wise moved into Hooks's home, he observed Wise transform powder cocaine into

17

crack cocaine through a cooking process.  (Vol. II at 167-68)

In April of 2003, Wise asked Hooks to travel with him to Houston, Texas.  (Vol. II at 168-69)  The pair flew from Birmingham, Alabama, to Houston, Texas, via New Orleans, Louisiana.  (Vol. II at 169)  A man arrived at the airport to pick up Wise and Hooks.  (Vol. II at 170)  He took them to the Galleria Mall, where Wise gave Hooks two or three hundred dollars. (Vol. II at 170-71)  Hooks shopped in the mall while Wise left with the man who had driven them to the mall, so the two could "negotiate business."  (Vol. II at 171-72)  After "negotiating," the two men picked Hooks up at the mall approximately three hours later.  (Vol. II at 172)  Wise and Hooks then checked into a Houston motel, and Hooks shopped some more.  (Vol. II at 173) Hooks estimated that he and Wise spent a total of 28 hours in Houston before they boarded a bus to return to Alabama.  (Vol. II at 173-74)  Hooks never knew the name of the man who had driven he and Wise around Houston.  (Vol. II at 170, 173)

Hooks made another trip to Houston with Wise ten days later.  (Vol. II at 174)  Again, they flew from Birmingham to Houston, but a different man picked them up at the airport.  (Vol. II at 175)  This man took Wise and Hooks directly to a motel, and, after checking in, Hooks was asked to leave the room so that Wise and the man could "negotiate business."  (Vol. II at 175-76) When Hooks returned to the room, Wise was trying to decide whether they would stay the night in Houston or return to Montgomery.  (Vol. II at 177)  Hooks wanted to stay, but Wise decided to depart for Montgomery.  (Vol. II at 177)  The pair left the motel for the Galleria Mall and the Greyhound Bus terminal.  (Vol. II at 177-78)  Wise gave Hooks one hundred dollars for shopping at the Galleria, and Hooks bought some clothes.  (Vol. II at 178-79)  Wise gave Hooks about two hundred dollars when they arrived at the bus station.  (Vol. II at 180)  The three hundred dollars

given to Hooks by Wise was part of the nine hundred dollars that Hooks was to be paid for carrying the backpack on the bus. (Vol. II at 180-81) Hooks explained that he was being paid to carry the backpack because it contained the cocaine-filled socks that Wise placed inside the backpack when the men were leaving the motel. (Vol. II at 181-82)

Wise purchased all plane and bus tickets for Hooks's travel to and from Houston. (Vol. II at 182-84) When purchasing the tickets for their second bus trip back to Montgomery, Wise was rushing from the motel room, and Hooks went to the departure area to "hold the bus down." (Vol. II at 184) After Wise secured the tickets, he boarded the bus with Hooks and they sat separately. (Vol. II at 186) The plan for the two to sit separately was prearranged by Wise, and Hooks only talked to him during stops when the bus driver was taking a food or restroom break. (Vol. II at 186, 193) When the bus arrived in Montgomery, Hooks saw Montgomery police officers grab Wise and his sister, Joanna Hooks, while he was still on the bus. (Vol. II at 187) He got off of the bus and tried to walk in the crowd, but a police officer approached him and asked permission to ask questions. (Vol. II at 188) A search of the backpack Hooks was carrying revealed the cocaine-filled socks, which led to his arrest. (Vol. II at 188) Hooks was interviewed by DEA agent Devin Whittle on April 29, 2003, during which he described his involvement with Wise and the transport of cocaine between Houston and Montgomery. (Vol. II at 214-16)

Hooks entered a plea of guilty to conspiracy to possess with intent to distribute cocaine, and possession with intent to distribute cocaine. (Vol. II at 206) His plea agreement provided that he would receive a downward departure at sentencing in return for his cooperation in the Government's prosecution of Wise. (Vol. II at 208-09) Wise tried to persuade Hooks to

19

withdraw his guilty plea and offered to assist him in such a way that he would not be sentenced to any time in prison. (Vol. II at 210-12) Hooks signed a document on June 5, 2003, in which he indicated that he found the backpack with clothes inside, but was unaware that the bag contained cocaine. (Vol. II at 231-33) The statement also recited that neither Wise nor Joanna Hooks was aware that the bag contained cocaine. (Vol. II at 233-34) Hooks disavowed the accuracy of the statement. (Vol. II at 234, 254-55) He explained that Wise wrote the statement, and took him to sign it before a notary at the driver's license office. (Vol. II at 236, 248-49, 255, 256) Hooks signed the statement without really paying attention to the contents of the document. (Vol. II at 234-37) Hooks described Wise taking him to Meadhaven for a psychiatric evaluation, but stated that he believed that Wise was trying to convince him that he had psychological problems. (Vol. II at 244-45, 256-57)

Wise presented testimony from codefendant Joanna Hooks, who was convicted on count three of the superseding indictment on August 10, 2004. During her trial, Ms. Hooks took the stand in her own defense and claimed to have found the cocaine base on the floor in the bathroom of the Greyhound Bus terminal. Ms. Hooks's sentence was enhanced for obstruction of justice upon the sentencing court's finding that she provided three different versions of her acquisition of the cocaine base. The enhancement for obstruction was affirmed by the United States Court of Appeals for the Eleventh Circuit. *See United States v. Hooks*, No. 05-10929 (11th Cir. Sept. 14, 2005) (unpublished).

Ms. Hooks repeated testimony presented at her own trial in which she stated that she found the cocaine base in the bathroom of the Greyhound Bus terminal. (Vol. IV at 133-34, 145) However, she contradicted herself when she stated that she came to the bus station to pick up

Wise and her brother, but later said that she did not know that the two men were traveling together until she saw Hooks in handcuffs. (Vol. IV at 132, 137-38) Wise also sought to introduce testimony from Ms. Hooks about a letter that she sent to her cousin Cynthia which presented yet another version of her involvement in the events of April 29, 2003. In Ms. Hooks's latest version, the crack cocaine belonged to someone named "Preacher." (Vol. IV at 8) During Ms. Hooks's examination outside the presence of the jury, and before the jury, she invoked her Fifth Amendment right against self-incrimination whenever the contents of the letter arose. (Vol. IV at 19-20, 149) This was the result of the Government's position that her sworn testimony that the letter's contents were truthful would subject her to perjury charges. (Vol. IV at 4-7) Wise attempted to question DEA Agent Devin Whittle about the letter, but the District Court sustained the Government's hearsay objection to such testimony. (Vol. IV at 152-53)

### III. CLAIMS RAISED IN THE § 2255 MOTION

Wise raises the following four issues in his § 2255 motion:

1.  His trial counsel was ineffective for failing to file a pretrial motion challenging the Government's probable cause to arrest him where the officers claimed they arrested him based only on the fact that he looked suspicious while he and his codefendant were at the bus station.

2.  He has a Fifth Amendment right to be resentenced in light of the retroactive amendment to the U.S. Sentencing Guidelines related to crack cocaine that becomes effective March 3, 2008.

3.  He also has a right to be resentenced in light of the district court's indication that it would have sentenced him to a lower sentence but that it did not have the authority to do so because of the Sentencing Guidelines and the 100 to 1 crack to powder cocaine ratio.

4.  His trial counsel was ineffective for failing to object to a jury instruction where the court incorrectly told the jury that he had

already pled guilty to the charges.

This court should reject all of his claims because they are without merit.

## IV.  RESPONSE TO CLAIMS FOR RELIEF

### A.    Wise Has Met The One-Year Statute Of Limitations Under 28 U.S.C. § 2255.

Wise has filed his § 2255 motion in a timely manner under paragraph six of 28 U.S.C. §

2255, which provides a one-year period of time to seek relief under the rule.  Section 2255 states

that a motion be filed within one year from:

> (1)  the date on which the judgment of conviction becomes final;
>
> (2)  the date on which the impediment to making a motion created by governmental action in violation of the Constitution and laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3)  the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4)  the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255 ¶ 6.  The relevant date for purposes of Wise's § 2255 motion is paragraph (1),

the date on which the judgment of conviction became final.

The final judgment in Wise's criminal case was entered on July 26, 2005.  *See* GX H

(Doc. 21).  He timely appealed his sentence to the United States Court of Appeals for the

Eleventh Circuit, which issued its opinion in the case on October 10, 2006.  *See* GX F.  A

judgment of conviction becomes final for someone who appeals to an appellate court when the

time for seeking certiorari review in the Supreme Court expires.  *See Close v. United States,* 336

F.3d 1283, 1284-85 (11th Cir. 2003); *Kaufman v. United States*, 282 F.3d 1336, 1337-39 (11th

Cir. 2002). Wise had 90 days from the October 10, 2007 opinion in which to file a petition for a

writ of certiorari in the United States Supreme Court, and his conviction and sentence became

final for purposes of § 2255 when that 90 days was ended. *See* Sup.Ct. R. 13(1) and (3); *see also*

*Close v. United States*, 336 F.3d at 1284-85. His conviction and sentence became final,

therefore, on January 8, 2007. Under § 2255, Wise then had until January 8, 2008 – one year

after January 8, 2007 – to file his motion in this Court. He filed the instant motion on January 2,

2008, within one year from the time the judgment in his case became final. It is, therefore,

timely under the limitation period in § 2255 ¶ 6(1).

###### B. Issue 3 of Wise's Motion Is Procedurally Defaulted Because It Could Have Been Raised and Decided On Direct On Appeal, But It Was Not.

In Issue 3 of his motion, Wise argues that he has a right to be resentenced in light of this

Court's indication that it would have sentenced him to a lower sentence but that it did not have

the authority to do so because of the Sentencing Guidelines and the 100 to 1 crack to powder

cocaine ratio. Aside from the fact that this issue is factually without merit, because the Court

clearly did not indicate it would have lowered Wise's sentence but for the 100 to 1 crack to

powder cocaine ratio, the issue is barred from this Court's review in this collateral proceeding,

because Wise could have raised it on direct appeal, but he did not.

A motion under § 2255 cannot be used as a substitute for appeal, *Burke v. United States*,

152 F.3d 1329, 1331 (11th Cir. 1998), and claims not raised on direct appeal that could have

been are generally barred from review in § 2255 proceedings, *McCoy v. United States*, 266 F.3d

1245, 1258 (11th Cir. 2001). In *Mills v. United States*, 36 F.3d 1052 (11th Cir. 1994), the

Eleventh Circuit succinctly summarized the law concerning procedural default as follows:

> Generally speaking, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a [Section] 2255 proceeding....  A ground of error is usually "available" on direct appeal when its merits can be reviewed without further factual development....  When a defendant fails to pursue an available claim on direct appeal, it will not be considered in a motion for [Section] 2255 relief unless he can establish  cause for the default and actual prejudice resulting from the alleged error....  Alternatively, under the fundamental miscarriage of justice exception, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default....

*Id*. at 1055-56 (internal citations omitted).  *See also Howard v. United States*, 374 F.3d 1068, 1072 (11th Cir. 2004) ("A habeas petitioner can escape the procedural default doctrine either through showing cause for the default and prejudice, or establishing a fundamental miscarriage of justice.") (internal citation and quotation marks omitted); *McCoy v. United States*, 266 F.3d at 1258 ("A claim not raised on direct appeal is procedurally defaulted unless the petitioner can establish cause and prejudice for his failure to assert his claims on direct appeal.").  The burden of demonstrating cause and prejudice or a miscarriage of justice is on the movant.  *See*, *e.g.*, *Bousley v. United States*, 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,'... or that he is 'actually innocent[.]' ").  And "to show the type of 'miscarriage of justice' that will excuse a procedural bar, a petitioner must make 'a colorable showing of actual innocence.' " *Howard v. United States*, 364 F.3d at 1072 (internal citation omitted).  Wise has offered nothing to this Court to support a cause and prejudice or miscarriage of justice argument to overcome his procedural default.

To the extent that Wise is relying on the Supreme Court's decision in *Kimbrough v. United States*, – U.S. – , 128 S. Ct. 558 (2007), to overcome his procedural default, his reliance is misplaced for two reasons.  First, *Kimbrough* does not govern his case because that case is not one where the Supreme Court "articulated a constitutional principle that has not been previously recognized but which has been held to have retroactive application."  *Howard v. United States*, 374 F.3d at 1072 (internal quotation marks and citation omitted).  To constitute cause to overcome a procedural default, the new retroactive decision must be a sufficiently clear break with the past that the attorney representing Wise could not reasonably have had the tools for presenting the claim in the district court or on direct appeal.  *Id*.  "Where a number of others had raised the claim before the petitioner failed to do so, the claim is not sufficiently novel to meet the cause requirement."  *Id*. at 1072-73.  *Kimbrough* does not help Wise because it does not articulate a *constitutional* principle at all, but a procedural one, and it has not been held to be retroactive.  Moreover, Wise could have raised the crack-to-powder issue on direct appeal, if he had chosen to do so, as had others before him.  *See, e.g.*, *United States v. Williams*, 435 F.3d 1350, 1355 (11th Cir. 2006); *United States v. Williams*, 456 F.3d 1353, 1369 (11th Cir. 2006). He simply failed to do so, and cannot, therefore, establish the necessary cause to overcome his procedural default.

Second, even assuming that *Kimbrough* applied in this case, Wise is entitled to no relief because the record does not support his contention that the sentencing judge based his decision in this case on a misapprehension concerning his ability to consider the crack-to-powder ratio in sentencing Wise.  Instead, while the sentencing judge did mention his previous concerns concerning the crack-to-powder ratio, *see* GX at 37, there is no indication he felt constrained in

25

his sentencing of Wise based on those previous concerns.  Additionally, because Wise was a

career criminal, the crack-to-powder 100 to 1 ratio had no bearing on the Sentencing Guidelines

in this case, or on the sentence itself.  Wise simply cannot rely on *Kimbrough* to obtain

sentencing relief in his case because the facts do not support his contention that that case had any

effect on his sentencing in this case.  Put simply, he was not prejudiced by the district court's

failure to have the *Kimbrough* decision available at the time of Wise's sentencing.

Wise has defaulted his crack-to-powder ratio claim, and he has not shown cause or

prejudice to overcome that claim.  Therefore, this Court should deny him relief on his third

claim.

C. **Because Wise Was Sentenced As A Career Criminal And The New Amendments To The Sentencing Guidelines In No Way Affected The Sentence Imposed In His Case, His Claim Of An Entitlement To A Reduced Sentence Under The Amendment, Because One Of His Convictions Involved Crack Cocaine, Should Be Rejected.**

In issue 2 of his motion, Wise argues that he is entitled to be resentenced in light of the

recent retroactive amendment to the United States Sentencing Guidelines concerning the

consideration of cocaine base, or crack, in calculating his sentence, Amendment 706.  Even

though Wise's argument is premature, because the new amendments to the Sentencing

Guidelines on which he relies do not become effective retroactively until March 3, 2008, and

even though his argument is arguably not properly before this Court in this 28 U.S.C. § 2255

proceeding, but should be brought pursuant to a motion under 18 U.S.C. § 3582(c)(2), *see* U.S.

Sentencing Guidelines Manual § 1B1.10 (Mar. 3, 2007), and the policy statements thereto,

his claim is without merit and is most easily disposed on that basis.

Wise is not entitled to the benefit of Amendment 706 because his sentence did not in any

way depend on his mere conviction for possessing crack cocaine.  In this case, therefore, Wise's

sentence did not rest on the provision regarding crack cocaine in U.S.S.G. § 2D1.1, which has

been amended.  Under the version of § 2D1.1 in effect at the time of Wise's sentencing, his base

offense level for the crack offense was 31 (when grouped with the powder offenses); that offense

level would not be reduced at all under Amendment 706 (because of the grouping).  However,

Wise was a career offender, based on his prior convictions for other drug offenses, and

accordingly his base offense level was increased to 37 pursuant to U.S.S.G. § 4B1.1.  That

enhancement is unaffected by Amendment 706, and the defendant's offense level remains exactly

what it was at the time of sentencing.  Section 1B1.10 directs: "the court shall substitute only the

amendments listed in subsection (c) for the corresponding guideline provisions that were applied

when the defendant was sentenced and shall leave all other guideline application decisions

unaffected."  U.S.S.G. § 1B1.10(b)(1).  Accordingly, Wise may not receive any relief under

Section 1B1.10 and Amendment 706.

> **D.** **Wise's Two Ineffective Assistance Of Counsel Claims (Issues 1 and 4) Should Be Denied Because He Has Failed To Demonstrate The Requisite Deficient Performance And Prejudice As To Those Claims.**

Finally, Wise raises two issues of ineffective assistance of counsel.  Those twp issues are

as follows:

1. His trial counsel was ineffective for failing to file a pretrial motion challenging the Government's probable cause to arrest him where the officers claimed they arrested him based only on the fact that he looked suspicious while he and his codefendant were at the bus station.

4. His trial counsel was ineffective for failing to object to a jury instruction where the court incorrectly told the jury that he had already pled guilty to the charges.

27

Because Wise has failed to demonstrate that his counsel was deficient in failing to raise these two issues, and he has also failed to demonstrate prejudice, this Court should reject these two ineffective assistance of counsel claims without an evidentiary hearing.

      **1.**    **The *Strickland* Test For Ineffective Assistance Of Counsel Claims**

To succeed on a claim of ineffective assistance of counsel, a defendant must prove both that his counsel's performance was deficient and that that deficient performance prejudiced his case. *Strickland v. Washington,* 466 U.S. 668, 694 (1984); *see also*, *Bell v. Cone,* 535 U.S. 685, 697-98 (2002) (reaffirming the *Strickland v. Washington* standard for reviewing ineffective assistance of counsel claims); *Brown v. United States*, No. 07-10219, 2007 WL 2900580, at *3 (11th Cir. Oct. 4, 2007) (applying two-part test of *Strickland v. Washington*). More specifically, Wise must show that (1) identified acts or omissions of counsel fell below an objective standard of reasonableness, and (2) that his counsel's alleged errors or omissions resulted in prejudice to him to such an extent that, without counsel's alleged errors or omissions, there is a reasonable probability that the outcome of his trial and/or sentencing would have been different. *Yordan v. Dugger,* 909 F.2d 474, 477 (11th Cir. 1990).

In analyzing counsel's performance under the performance prong of *Strickland*, this Court must presume that the conduct of counsel was reasonable, *Yordan v. Dugger,* 909 F.2d at 477. "Counsel is 'strongly presumed' to have rendered adequate assistance and to have exercised reasonable professional judgment," and the "proper measure of attorney performance is 'reasonableness under prevailing professional norms.' " *Brown v. United States*, 2007 WL 2900580, at *3 (internal citations omitted). A "[d]efendant must prove deficient performance by a preponderance of competent evidence. *Gallo-Chamorro v. United States*, 233 F.3d 1298,

1303-04 (11th Cir. 2000)(footnotes omitted).

The Eleventh Circuit has described a defendant's burden with regard to the deficient performance prong of an ineffective assistance of counsel claim as follows:

> Because there is such a wide range of constitutionally acceptable performance, a petitioner seeking to rebut the presumption of adequate performance must bear a heavy burden:
>
>> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. ...  We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.
>
>> ... Thus, in order to show that counsel's performance was unreasonable, the petitioner must establish that *no competent counsel would have taken the action that his counsel did take....*

*Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (internal citations omitted).

To succeed on an ineffective assistance of counsel claim, the defendant must show that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. *Brown v. United States*, 2007 WL 2900580, at *3.  The Eleventh Circuit has described a defendant's burden in demonstrating that his counsel's deficient performance prejudiced his case as "high," noting that it is not enough to show that any errors had some conceivable effect on the outcome of the proceeding.  *Brown v. United States*, 2007 WL 2900580, at *3; *Robinson v. Moore*, 300 F.3d 1320, 1343-44 (11th Cir. 2002).  Moreover, "[a] determination of the prejudice prong of the *Strickland* analysis is necessarily dependent on a review of the merits of the underlying claim."  *Brown v. United States*, 2007 WL 2900580, at *3.  " 'Counsel cannot be labeled ineffective for failing to raise issues which have no merit.' "  *Id.*, *quoting Card v.*

*Dugger*, 911 F.2d 1494, 1520 (11th Cir. 1990).

Finally, as the Eleventh Circuit has noted, "[i]t is well established that a habeas petitioner must demonstrate both deficient performance and prejudice, and that a failure to demonstrate either prong constitutes a failure to demonstrate ineffective assistance of counsel." *Bottoson v. Moore*, 234 F.3d 526, 532 (11th Cir. 2000); *accord, Robinson v. Moore*, 300 F.3d at 1343.

### 2.    Pretrial Suppression Motion Ineffective Assistance Of Counsel Claim

Wise first argues that his trial counsel was ineffective because she failed to file a pretrial motion challenging the Government's probable cause to arrest him where, he alleges, the officers claimed they arrested him based only on the fact that he looked suspicious while he and his codefendant were at the bus station. This claim of ineffective assistance of counsel is wholly without merit.

As the statement of facts above illustrates, Wise was not arrested merely because he and a codefendant were acting suspiciously at a bus station in Houston, Texas. They were arrested after officers approached Wise's codefendant, Tonney Hooks, asked to look inside his backpack and, on Hooks's consent, looked in the backpack and found almost a kilogram of powder cocaine. (Vol. II at 111, 114-15) Wise was also arrested because officers saw him engage in exchanging crack cocaine with another codefendant, Joanna Hooks. (Vol. II at 131-32) There was ample probable cause to arrest both Wise and his codefendant. Therefore, Wise's counsel was not ineffective for failing to file a motion to suppress on the grounds the arrest lacked probable cause. *See Card v. Dugger*, 911 F.2d 1494, 1520 (11th Cir. 1990) ("Counsel cannot be labeled ineffective for failing to raise issues which have no merit."). This Court should reject this first ineffective assistance of counsel claim.

3.      **Improper Jury Instruction Ineffective Assistance of Counsel Claim**

Finally, Wise argues his counsel was ineffective for failing to object to the Court's

preliminary instruction to the jury in which it told the jury that Wise had pled guilty to the

charge.  The Court instructed the jury as follows:

> The charges are set forth in what we call an indictment, that I've just
> summarized for you.  You should understand that an indictment is simply an
> accusation.  It is not evidence of anything.  The defendants have entered a plea of
> guilty (sic.) to these charges and are presumed to be innocent unless and until
> proven guilty beyond a reasonable doubt.  It will be your duty to decide from the
> evidence whether either or both defendants are guilty or not guilty of the crimes
> charged.  From the evidence you will decide what the facts are.

*See* GX D at 14, an excerpt from the jury trial proceedings transcript containing the above

instruction, attached to this response.  This instruction was improper as both Wise and his

counsel, in her affidavit, allege.  To tell the jury that the defendants had pled guilty was a factual

inaccuracy.  However, the comment, when considered in light of the entire jury charge, was not

so prejudicial that Wise is entitled to relief on the claim of ineffective assistance of counsel.

First, the Government does not concede that counsel was deficient for failing to notice the

Court's slip of the tongue in stating that "the defendants have entered pleas of guilty" right before

instructing the jury on the presumption of innocence and telling the jury what it was there to

decide.  But resolution of that particular point is not necessary, because Wise has failed to prove

prejudice and the issue can be resolved on that basis. *See Gilreath v. Head*, 234 F.3d 547, 551

(11th Cir. 2000) ("[P]etitioners must affirmatively prove prejudice because '[a]ttorney errors

come in an infinite variety and are as likely to be utterly harmless in a particular case as they are

to be prejudicial.' ") (internal citation omitted).

In determining whether a jury instruction resulted in prejudice to a defendant, "a single

instruction to a jury may not be judges in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141, 146-47 , 94 S. Ct. 396, 400 (1973). Further, the particular improper instruction must be reviewed to determine "if it so infected the entire trial that the resulting conviction violates due process." *Id*. If, when the charge is reviewed as a whole, the reviewing court cannot say that it is left with a substantial, ineradicable doubt as to whether the jury was properly guided in its deliberations, the charge is not prejudicial and no reversal is required. *See, e.g., United States v. Dohan*, 508 F.3d 989, 993 (11th Cir. 2007). When the improper statement of fact made by the district court – that the defendants had pleaded guilty – is reviewed in the context of the entire jury instructions and trial, including the fact that the Court later told the jury in its oral charge to the jury that the defendants had pled not guilty , *see* GX E at 252, and it provided the jury that same written charge, see GX F at 182-83, and that it told the jury that the instructions were to be considered as a whole, this Court should find that Wise was not prejudiced by the isolated slip of the tongue by the Court. *See United States v. Carrodeguas*, 747 F.2d 1390, 139394 (11th Cir. 1984).

Because Wise was not prejudiced by the Court's misstatement of fact in this case, this Court should reject his ineffective assistance of counsel claim as it relates to the improper jury instruction.

## IV.  MISCELLANEOUS

Wise has failed to plead facts or present sufficient evidence or argument demonstrating that he is entitled to an evidentiary hearing, and his claims for relief should be denied without such a hearing. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *United States v. Laetivdal-Gonzalez*, 939 F. 2d 1455, 1465

(11th Cir. 1991).  Should this Court determine that Wise has made any arguments not addressed in this response, the Government would request the opportunity to further respond to those arguments.

Any facts not specifically admitted in this response are denied, and the arguments made as to each claim raised are asserted in the alternative.

## V.  CONCLUSION

For the above reasons, Defendant/Petitioner David DeJuan Wise has failed to demonstrate that he is entitled to any relief from this Court, and his § 2255 motion should be dismissed and denied without an evidentiary hearing.

Respectfully submitted this 11th day of February, 2008.

LEURA G. CANARY
UNITED STATES ATTORNEY


/s/  Sandra J. Stewart
SANDRA J. STEWART
Assistant United States Attorney
131 Clayton Street
Montgomery, AL  36101-0197
(334) 551-1764
(334) 223-7135

33

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **DAVID DEJUAN WISE,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 2:08cv17-MHT** |
| **UNITED STATES OF AMERICA,** | ) | **(CR No.: 2:04-cr-00009-LES-VPM-1)** |
| | ) | |
| **Respondent.** | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 11, 2008, I electronically filed the foregoing response

and attachments with the Clerk of the Court using the CM/ECF system and mailed, postage

prepaid, a copy of this response to the *pro se* Defendant/Petitioner as follows:

> David Dejuan Wise
> Rg. #11376-002
> USP Cannan
> P.O. Box 300
> Waymart, PA 18472

Respectfully submitted,

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/  Sandra J. Stewart
SANDRA J. STEWART
Assistant United States Attorney
131 Clayton Street
Montgomery, AL  36101-0197
(334) 551-1764
(334) 223-7135

FILED

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JAN 21 2004

CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

UNITED STATES OF AMERICA )
)
          v.                )   CR. NO. 04-9-N
)   [21 USC § 846;
DAVID DEJUAN WISE, a/k/a JULIO, )   21 USC § 841(a)(1);
TONY LAMAR HOOKS, and        )   18 USC § 2;
JOANNA NICOLE HOOKS          )   21 USC § 844(a)]
)
)   INDICTMENT

D Wise
R Ziegler
L Reese

The Grand Jury charges:

## COUNT 1

That beginning in or about the beginning of April 2003,

the exact date being unknown to the Grand Jury, and continuing

until on or about April 29, 2003, in Montgomery, Alabama, in the

Middle District of Alabama, and elsewhere,

DAVID DEJUAN WISE, a/k/a JULIO,
TONY LAMAR HOOKS, and
JOANNA NICOLE HOOKS,

defendants herein, knowingly and intentionally combined,

conspired, confederated and agreed together and with each other

to distribute and possess with intent to distribute 500 grams or

more of cocaine hydrochloride, a Schedule II Controlled

Substance, in violation of Title 21, United States Code, Section

841(a)(1), all in violation of Title 21, United States Code,

Section 846.



GOVERNMENT
EXHIBIT

CASE
NO. 2:08cv 17

EXHIBIT
NO.    A

COUNT 2

On or about the 29th day of April, 2003, in Montgomery,
Alabama, within the Middle District of Alabama, and elsewhere,

DAVID DEJUAN WISE, a/k/a JULIO, and

TONY LAMAR HOOKS

defendants herein, while aiding and abetting one another, did
knowingly and intentionally possess with the intent to distribute
500 grams or more of cocaine hydrochloride, a Schedule II
Controlled Substance, in violation of Title 18, United States
Code, Section 2, and Title 21, United States Code, Section
841(a)(1).

COUNT 3

On or about April 29, 2003, in Montgomery, Alabama, within
the Middle District of Alabama,

DAVID DEJUAN WISE, a/k/a JULIO, and

JOANNA NICOLE HOOKS,

defendant herein, while aiding and abetting one another, did
knowingly and intentionally possess a mixture and substance
containing in excess of 5 grams of cocaine base, a Schedule II
Controlled Substance, in violation of Title 21, United States
Code, Section 844(a).

FORFEITURE ALLEGATION

A.    Counts 1 through 3 of this indictment are hereby
repeated and incorporated herein by reference.

2

B.     Upon conviction for violation of any of the charges
contained in Counts 1 through 3 of this indictment, the
defendants shall forfeit to the United States pursuant to Title
21, United States Code, Section 853, any and all property
constituting or derived from any proceeds the said defendants
obtained directly or indirectly as a result of the said violation
and any and all property used or intended to be used in any
manner or part to commit and to facilitate the commission of the
violation alleged in Counts 1 through 3 of this Indictment,
including but not limited to the following:

> One (1) 2000 Dodge Neon, bearing Alabama license
> number 3A1461C, and bearing Vehicle Identification
> Number 1B3ES46C5YD548607.

C.     If any of the forfeitable property described in this
forfeiture allegation, as a result of any act or omission of said
defendants:

> (1)   cannot be located upon the exercise of due
diligence;

> (2)   has been transferred or sold to, or deposited
with, a third person;

> (3)   has been placed beyond the jurisdiction of the
Court;

> (4)   has been substantially diminished in value; or

> (5)   has been commingled with other property which
cannot be subdivided without difficulty; the United States,
pursuant to Title 21, United States Code, Section 853, intends to

seek an order of this Court forfeiting any other property of said defendants up to the value of the forfeitable property, all in violation of Title 21, United States Code, Sections 841, 846, and 853.

A TRUE BILL:

_____
Foreperson

_____
LEURA GARRETT CANARY
United States Attorney

_____
JOHN T. HARMON
Assistant United States Attorney

_____
MATTHEW S. MINER
Assistant United States Attorney

4

5-5-0'

**FILED**

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MAY - 5 2004

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:04CR9 - T |
| | ) | [21 USC § 846; |
| DAVID DEJUAN WISE, a/k/a JULIO, | ) | 21 USC § 841(a)(1); |
| JOANNA NICOLE HOOKS, | ) | 18 USC § 2; |
| ROBERT JAMES ZEIGLER, JR., and | ) | 21 USC § 844(a)] |
| LESLIE OCTAVIUS REESE | ) | |
| | ) | SUPERSEDING INDICTMENT |

The Grand Jury charges:

## COUNT 1

That beginning in or about the beginning of April 2003, the exact date being unknown

to the Grand Jury, and continuing until on or about April 29, 2003, in Montgomery, Alabama, in

the Middle District of Alabama, and elsewhere,

DAVID DEJUAN WISE, a/k/a JULIO, and

JOANNA NICOLE HOOKS,

defendants herein, knowingly and intentionally combined, conspired, confederated and agreed

together and with each other, and with another individual named Tonney Lamar Hooks, to

distribute and possess with intent to distribute 500 grams or more of cocaine hydrochloride, a

Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1),

all in violation of Title 21, United States Code, Section 846.

## COUNT 2

On or about April 29, 2003, in Montgomery, Alabama, within the Middle District of

Alabama, and elsewhere,

DAVID DEJUAN WISE, a/k/a JULIO,

GOVERNMENT
EXHIBIT

CASE
NO. 2:08 CV 17

EXHIBIT
NO. B

defendant herein, while aiding, abetting and inducing another individual named Tonney Lamar

Hooks, did knowingly and intentionally possess with the intent to distribute 500 grams or more

of cocaine hydrochloride, a Schedule II Controlled Substance, in violation of Title 18, United

States Code, Section 2, and Title 21, United States Code, Section 841(a)(1).

### COUNT 3

On or about April 29, 2003, in Montgomery, Alabama, within the Middle District of

Alabama,

### DAVID DEJUAN WISE, a/k/a JULIO, and

### JOANNA NICOLE HOOKS,

defendant herein, while aiding and abetting one another, did knowingly and intentionally possess

a mixture and substance containing in excess of 5 grams of cocaine base, a Schedule II

Controlled Substance, in violation of Title 21, United States Code, Section 844(a).

### COUNT 4

On or about November 26, 2002, in Prattville, Alabama, in the Middle District of Alabama,

### DAVID DEJUAN WISE, a/k/a JULIO,

### ROBERT JAMES ZEIGLER, JR., and

### LESLIE OCTAVIUS REESE

defendants herein,   knowingly and intentionally combined, conspired, confederated and agreed

together and with each other to distribute 5 grams or more of cocaine base, a Schedule II

Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), all in

violation of Title 21, United States Code, Section 846.

### COUNT 5

On or about November 26, 2002, in Prattville, Alabama, within the Middle District of

Alabama,

DAVID DEJUAN WISE, a/k/a JULIO,

ROBERT JAMES ZEIGLER, JR., and

LESLIE OCTAVIUS REESE

defendants herein, while aiding and abetting one another, did knowingly and intentionally

distribute 5 grams or more of cocaine base, a Schedule II Controlled Substance, in violation of

Title 18, United States Code, Section 2, and Title 21, United States Code, Section 841(a)(1).

## FORFEITURE ALLEGATION

A.    Counts 1 through 3 of this indictment are hereby repeated and incorporated herein
by reference.

B.    Upon conviction for violation of any of the charges contained in Counts 1 through
3 of this indictment, the defendants shall forfeit to the United States pursuant to Title 21, United
States Code, Section 853, any and all property constituting or derived from any proceeds the said
defendants obtained directly or indirectly as a result of the said violation and any and all property
used or intended to be used in any manner or part to commit and to facilitate the commission of
the violation alleged in Counts 1 through 3 of this Indictment, including but not limited to the
following:

One (1) 2000 Dodge Neon, bearing Alabama license number 3A1461C,

and bearing Vehicle Identification Number 1B3ES46C5YD548607.

C.    If any of the forfeitable property described in this forfeiture allegation, as a result
of any act or omission of said defendants:

(1)  cannot be located upon the exercise of due diligence;

(2)  has been transferred or sold to, or deposited with, a third person;

(3)  has been placed beyond the jurisdiction of the Court;

(4)  has been substantially diminished in value; or

3

(5) has been commingled with other property which cannot be subdivided without difficulty; the United States, pursuant to Title 21, United States Code, Section 853, intends to seek an order of this Court forfeiting any other property of said defendants up to the value of the forfeitable property, all in violation of Title 21, United States Code, Sections 841, 846, and 853.

A TRUE BILL:

_____
Foreperson

_____
LEURA GARRETT CANARY
United States Attorney

_____
JOHN T. HARMON
Assistant United States Attorney

_____
MATTHEW S. MINER
Assistant United States Attorney

4

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

UNITED STATES OF AMERICA      )
                              )
              v.              )      CR. NO. 04-9-N
                              )
DAVID DEJUAN WISE, et al.     )

NOTICE OF INFORMATION TO ESTABLISH PRIOR CONVICTIONS

Comes now the United States of America, by and through Leura Garrett Canary, United States Attorney for the Middle District of Alabama, and provides this Honorable Court and Defendant David DeJuan Wise with notice of information of Defendant Wise's prior felony drug convictions for the purpose of increased punishment in accordance with Title 21, United States Code, Section 851. Specifically, Defendant Wise was convicted in the Circuit Court of Elmore County, Alabama, of the following offenses at the following times: (1) on or about April 27, 2001, of Unlawful Distribution of a Controlled Substance (CC-00-365); and (2) on or about November 27, 1996, of Sale of a Controlled Substance (CC-96-188). Photocopies of the certified records of Defendant's above-described convictions are attached hereto as Exhibit A.

Respectfully submitted this 20th day of February, 2004.

LEURA GARRETT CANARY
UNITED STATES ATTORNEY

Matthew S. Miner
Assistant United States Attor

GOVERNMENT
EXHIBIT

CASE
NO. 2:09CV17

EXHIBIT
NO. C

## CERTIFICATE OF SERVICE

I, Matthew S. Miner, Assistant United States Attorney, hereby certify that I have served a copy of the foregoing on Defendant's counsel of record, Dan Taliaferro, Esq., via facsimile, on this the 20th day of February, 2004.

_____
Assistant United States Attorney

2

ACR0372 ALABAMA JUDICIAL INFORMATION SYSTEM CASE: CC 2000 000365.00
OPER: SHC CASE ACTION SUMMARY
PAGE: 1 CIRCUIT CRIMINAL RUN DATE: 09/21/2000

THE CIRCUIT COURT OF ELMORE JUDGE: JBB

STATE OF ALABAMA VS WISE DAVID
6940A TAMOGAN LOOP
CASE: CC 2000 000365.00
FT STEWART, GA 00000 0000

DOB: 08/28/1973 SEX: M RACE: B HT: 5 11 WT: 260 HR: BLK EYES: BRO
SSN: 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 ALIAS NAMES:

CHARGE01: UNLAW DISTRIB CONTRO CODE01: UDCS LIT: UNLAW DISTRIB TYP: F #: 002
OFFENSE DATE: AGENCY/OFFICER: 0290000

DATE WAR/CAP ISS: DATE ARRESTED: 08/11/2000
DATE INDICTED: 06/30/2000 DATE FILED: 09/21/2000
DATE RELEASED: 08/11/2000 DATE HEARING:
BOND AMOUNT: $20,000.00 S SURETIES:

DATE 1: 11/03/2000 DESC: ARRG TIME: 0830 A
DATE 2: 12/7/00 DESC: Plea TIME: 0000

TRACKING NOS: GJ 2000 060162 00 / /

DEF/ATY: ~~JOHNSON RAYMOND E~~ TYPE: R TYPE:
~~640 S. MCDONOUGH ST~~ Bert Tomlinson

MONTGOMERY AL 36104 00000

PROSECUTOR: MASSENGALE KYLE DENNIS

OTH CSE: GJ200006016200 CHK/TICKET NO: CADTF GRAND JURY: 162
CRT REPORTER: C Fain SID NO: 000000000
JF STATUS: BOND DEMAND: OPER: SHC

| DATE | ACTIONS, JUDGEMENTS, AND NOTES |
|---|---|
| 11-1-00 | Plea of Not Guilty and ~~Waiver of Arraignment~~ |
| 11-30-00 | Motion to Continue |
| 12-4-00 | Order on Motion to Continue granted |
| | c: DA, R. Johnson |
| 3/19/01 | State moves to dismiss Count II of the indictment. No objection by Defendant. Motion Granted. JB |
| | DEFENDANT, IN PRESENCE OF COUNSEL, REQUESTS THE COURT TO ALLOW HIM TO WITHDRAW HIS PLEA OF NOT GUILTY AND ENTER A PLEA OF GUILT TO Unlawful dist. of controlled substance SEE EXHIBIT A. THE COURT ACCEPTS DEFENDANT'S PLEA OF GUILT JB |
| | Defendant, in the presence of Counsel, makes application for probation. Investigation ordered and case continued for probation hearing and sentencing on 4-27-01 at 9:00 a.m JB |

STATE OF ALABAMA, ELMORE COUNTY
I, Larry Dozier, Circuit Clerk of Elmore County, Alabama, hereby certify that the within and foregoing is a true and correct copy of the original on file in this office.
Witness my hand seal this 17 day of Feb 2004
Larry Dozier
Circuit Clerk

DW 54

ACR0369  A L A B A M A   J U D I C I A L   I N F O R M A T I O N   C E N T E R

CASE ACTION SUMMARY
CONTINUATION

CASE: CC 2000 000365.00
JUDGE ID:  JBB

STATE  OF  ALABAMA                    VS    WISE DAVID

| DATE | ACTION, JUDGMENTS, CASE NOTES |
|------|------------------------------|
| 4-3-01 | Motion to Withdraw |
| 4-4-01 | Order on Motion denied granted c: DA, R. Johnson D. Wise |
| 4-27-01 | Defendant, in presence of Counsel, appeared for sentencing. See sentencing order. JB |
| 6-5-01 | Deft's Request for Review |
| 6-6-01 | Order on Motion denied C: DA + D. Wise |
| 6-12-01 | Defendant's Request for Review |
| 6-22-01 | Order on Motion denied C: DA & D. Wise |
| 8-7-01 | Motion to Review |
| 8-9-01 | Order on Motion c: DA & R. Hawthorne |
| 8-14-01 | Defendant's Request for Work Release |
| 8-21-01 | Order on Motion - granted c: DA, ECJ, D. Wise |
| 9-25-01 | Motion to Review |
| 9-26-01 | Order on Motion c: DA & R. Hawthorne case set for review 10/12/01 @ 9:00 N. Sheriff |
| 10-11-01 | Defendant, in presence of counsel, appeared for sentence review. Penitentiary time suspended and Defendant placed on 3 years probation. JB |
| 10-16-01 | Deft's Motion to Transfer Probation & Rehab Facility to Ft Hood, TX |
| 10-19-01 | Order on Motion denied c: DA, PO & D. Wise |
| 11-2-01 | Deft's Request for Probation Transfer to Texas |
| 11-14-01 | Order on Motion c: DA & D. Wise + PO |
| 11-20-01 | Motion for Probation Transfer |
| 11-21-01 | Order on Motion (c: DA & Deft) |

DW 55

IN THE NINETEENTH JUDICIAL CIRCUIT OF ALABAMA

STATE OF ALABAMA v. _David Wise_____, Defendant  CASE# _CC-00-365_

### ORDER ASSESSING COURT COSTS, FINES
### RESTITUTION AND RECOUPMENT OF ATTORNEY FEES

A sentence restitution hearing was held and the following court ordered monies are to be paid by the defendant:

____ Court costs in the amount of $ _507.00_ to be paid by _____ (date)

____ Restitution in the amount of $ _145.00_ to _CADTF_____
to be paid by _____ (date)                    (name of victim)

____ Crime victim's compensation in the amount of $ _50.00_ to be paid by _____ (date)

____ Court ordered attorney fees in the amount of $ _____ to be paid by _____ (date)

____ Fines in the amount of $ _____ to be paid by _____ (date)

____ Drug demand reduction assessment in the amount of $ _2000.00_ to be paid by _____
_____ (date)

____ Court ordered monies to be paid in installments of $ _____ per _____
beginning _____.

**TOTAL**                                    $ _2702.00_____

The above court ordered monies are to be paid directly to the clerk of this court. If payment is authorized to be made in installments, there shall be paid an additional $1.00 administrative fee as provided in §12-19-26, *Code of Alabama* 1975, with each periodic payment.

____ Court ordered monies are a condition of probation and if probation is revoked, this Order shall be forwarded to the Department of Corrections. This Order shall be enforceable during the period of imprisonment and shall be paid from any income or other assets to which the defendant shall be entitled, including the prisoner's money on deposit account. Any person in real or constructive possession, custody or control of such employment income, other income or assets of the defendant shall pay over, deliver, convey, transfer and assign the same to the clerk of this court. This Order shall be a condition of future parole.

____ This Order shall be enforceable during the period of imprisonment and shall be paid from any income or other assets to which the defendant shall be entitled, including the prisoner's money on deposit account. Any person in real or constructive possession, custody or control of such employment income, other income or assets of the defendant shall pay over, deliver, convey, transfer and assign the same to the clerk of this court. This Order shall be a condition of future parole.

ORDERED at _Wetumpka_____, Alabama, this _27th_ day of _April, 2001_.

_____
Circuit Judge

Rev. 8/97

DW  56

| State of Alabama 19TH JUDICIAL CIRCUIT | CASE ACTION SUMMARY (CONTINUATION) SENTENCING ORDER | Case Number *CC-00-365* |
|---|---|---|

State of Alabama    v. *David Wise* _____

Page Number _____ of _____ Pages , Defendant

| DATE | JUDGE'S INITIALS | ACTIONS, JUDGMENTS, CASE NOTES |
|---|---|---|
| 4-27-01 | | |

### SENTENCING ORDER

The defendant, with counsel, and counsel for the State of Alabama appeared in open court for the defendant to be sentenced on his/her conviction of *Unlawful distribution of Controlled substance*

The defendant is adjudged guilty of *Unlawful distribution of Controlled substance*

### HABITUAL FELONY OFFENDER

The defendant has been given reasonable notice that the State intended to move the court to sentence the defendant under the provisions of §§13A-5-9 and 10, *Code of Alabama* 1975.

The State's motion to sentence the defendant pursuant to the Habitual Felony Offender Act is ☑ granted; ☐ denied. The court finds the defendant has ___ *1* ___ ☑ prior convictions: _____

### SENTENCE

The defendant waived a sentence hearing.

The court conducted a sentence hearing.

A pre-sentence report was requested by the defendant and considered by the court.

The defendant waived a pre-sentence investigation and report.

The court asked the defendant if he/she had anything to say why the sentence of law should not be imposed against him/her, and ☑ the defendant having had his/her say, ☐ the defendant had nothing to say, it is ORDERED as follows:

The defendant is sentenced to the custody of the Commissioner of the Department of Corrections for a period of ___ *15* ___ year(s), _____ month(s), _____ day(s) ☐ his/her life, ☐ his/her life without parole.

The defendant is sentenced to the custody of the Sheriff of _____ County, Alabama, for a period of _____ one year, _____ month(s), _____ day(s).

The defendant is sentenced to the custody of the Warden of the City of _____, Alabama, Jail, for a period of _____ one year, _____ month(s), _____ day(s).

The defendant is fined the sum of $ _____.

Pursuant to the Drug Demand Reduction Assessment Act, since this is a drug related offense, the defendant is fined the additional amount of _____ $ 1,000.00 ✓ $ 2,000.00, which may be remitted upon successful completion of a drug rehabilitation program.

The defendant's sentence shall be concurrent with the sentence(s) imposed in _____

The defendant shall pay court costs.

The defendant shall pay $ *50.00* to ACVCC.

The payment of court ordered monies shall be a condition of parole, early release, S.I.R., work release, or probation.

The defendant is given credit for time served.

The defendant was advised of the right to appeal.

_____
Circuit Judge

DW    57

| | | Page Number ____ of ____ Pages |
|---|---|---|
| **DATE** | **JUDGE'S INITIALS** | **ACTIONS, JUDGMENTS, CASE NOTES** |

4-27-01

## SENTENCE SUSPENDED

The defendant's sentence is suspended, and the defendant is placed on
☐ court supervised probation for a period of _____ ;
☐ unsupervised probation for a period of _____
☐ supervised probation for a period of _____ ;
Court or unsupervised probation is conditioned upon the defendant refraining from any violation of the law.

## SPLIT SENTENCE - §15-18-8, *CODE OF ALABAMA*

The defendant's sentence is hereby suspended in accordance with the provision of the Split Sentence Act. The defendant's minimum period of confinement in a prison or jail shall be *2 years*

The defendant shall serve the minimum period of confinement in the custody of the *Department of Corrections* who shall fully comply with the terms of this court's Sentencing Order in maintaining defendant's custody.

The confinement portion of the defendant's sentence shall be served as follows:

_____

In accordance with §15-18-8, this court retains jurisdiction and authority over, this defendant for the duration of his sentence. The defendant shall not be eligible for, nor shall defendant be granted, work release, S.I.R., early release, prediscretionary leave, or parole during the minimum period of confinement without court approval. The court may be petitioned for review of sentence during the minimum period of confinement by the defendant or defendant's custodian for the purpose of requesting modifications or amendments to this Sentencing Order including requests for entry into the above programs or supervised probation.

After the defendant has served the minimum period of confinement or at some earlier time as directed by the court, the defendant shall be transported back to this court for the imposition of the terms and conditions of probation. The probation term shall be *3 years*

The defendant is a drug offender or has otherwise been determined to have a problem with substance abuse. The defendant is in need of an intensive substance abuse program. The defendant is, therefore, ordered to complete a substance abuse program with the Department of Corrections. Upon completion of the program or upon the defendant reaching maximum benefit of the program, the defendant's sentence may be reviewed by the court for imposition of other terms and conditions of the Split Sentence.

## REVERSE SPLIT SENTENCE

The defendant's sentence is hereby suspended in accordance with §15-18-8 on reverse split.

The defendant is ordered to serve a minimum period of confinement in a prison or jail for _____ as a first condition of probation. This term or confinement shall be in the custody of the _____ .

The defendant's incarceration period is postponed for a period of _____ (mo/yr). At the expiration of the defendant's supervised probation period, the defendant shall appear before the court and show cause why the incarceration period should be postponed indefinitely.

## SPLIT SENTENCE - BOOT CAMP

The defendant's sentence is suspended, and he is placed on supervised probation for a period of _____ ; however, as the first condition of his probation, the defendant shall serve up to 180 days in the custody of the Commissioner of the Department of Corrections and he shall successfully complete the Disciplinary, Rehabilitation Program. If the defendant successfully completes the program, he shall be returned to this court for the imposition of further terms and conditions of probation. If the defendant does not successfully complete the program, he shall remain in the custody of the Commissioner of the Department of Corrections for a period of _____ .

DW    58

| State of Alabama<br>Unified Judicial System<br>19th JUDICIAL CIRCUIT | CASE ACTION SUMMARY<br>(CONTINUATION) | Case Number<br>*CC-00-365* |
|---|---|---|

Page Number ____ of ____ Pages

State of Alabama    v. *David Wise* _____ , Defendant

| DATE | JUDGE'S INITIALS | ACTIONS, JUDGMENTS, CASE NOTES |
|---|---|---|
| 10-12-01 | ☒ | The defendant's probation is conditioned on the Defendant complying with the following conditions of probation: |
| | ☒ | The defendant shall not be arrested for any further offenses. |
| | ☒ | The defendant shall maintain full time employment. |
| | ☐ | The defendant shall secure full time employment within _____. |
| | ☒ | The defendant shall not consume any alcoholic beverages or frequent any establishments that serve or sell alcoholic beverages as their primary service. |
| | ☒ | The defendant shall not have any contact with illegal drugs or associate with any persons who sell, furnish or use illegal drugs. |
| | ☐ | The defendant shall report to the court referral officer for evaluation and successful completion of any treatment program that is recommended. |
| | ☐ | The defendant shall remain in and successfully complete the alcohol/drug treatment program that he is currently enrolled in. |
| | ☐ | The defendant shall not enter _____ during his/her probation. |
| | ☐ | The defendant shall work on and obtain his/her GED and provide verified proof to the same to the probation officer. |
| | ☐ | The defendant shall not have any contact with _____ |
| | ☒ | The defendant shall comply with any other terms and conditions of probation that may be required by the Department of Probations and Parole. |
| | ☒ | The defendant shall make him/herself available for searches or tests when ordered by the probation officer, including, but not limited to, urinalysis, breath tests, and blood tests or a search of his residence or any property under his control. |
| | ☒ | The defendant shall pay court ordered monies pursuant to a separate Order. |
| | ☒ | The defendant was advised that he has the right to appeal his conviction and sentence, and, if indigent, has the right to appointed counsel and the court reporter's transcript provided without cost. |
| | ☒ | *The deft. shall report to the Dobbs House for 6 month treatment program.* |
| | ☐ | |

DONE and ORDERED this *12th* day of *October* , 200*1*.

| 12/17/01 | *Deft. present @ Dobbs Hse - W/ya Rhegm. to start paying rest in Jan. dw* |
|---|---|

_____
CIRCUIT/COURT JUDGE

| 4/5/02 | *Deft has completed drug trtmt. Assessment entered per DDRA is remitted dw* |
|---|---|
| 6/17/02 | *Deft present. Paid all $. Probation terminated & Deft discharged dw* |
| | *Taxed w/ out C.Sugm* |

DW    59

| State of Alabama<br>Unified Judicial System | **ORDER OF PROBATION** | Case Number |
|---|---|---|
| Form CR-50    Rev. 6/98 | | CC 2000-365 |

IN THE ___Circuit___ COURT OF ___Elmore___, ALABAMA
      (Circuit or District)                  (Name of County)

STATE OF ALABAMA v. ___David Wise___
                                    **Defendant**

It appears to the court the above named defendant ☒ has been convicted of ☐ has been adjudicated a Youthful Offender for the offense of ___Unlawful Distribution of a Controlled Substance___ and has been sentenced to ___15 yrs. pen. split to 2 yrs (SAP). 10/12/01, full time suspend to Dobbs House.___

The defendant having applied for the benefits of probation and the court having examined the cause, it is ORDERED, ADJUDGED, and DECREED that the sentence is hereby suspended and that the defendant is placed on probation for a period of ___3 yrs___

It is the order of the court that the probationer comply with the following conditions of probation:

1. Do not violate any Federal, State, or local law.
2. Avoid injurious or vicious habits.
3. Avoid persons or places of disreputable or harmful conduct or character.
4. Report to the Probation Officer as directed.
5. Permit the Probation Officer to visit defendant at home or elsewhere.
6. Work faithfully at suitable employment as much as possible.
7. Remain within a specified place, to-wit: ___The State of Alabama___
8. Support his/her dependents to the best of his/her ability.
9. Do not change residence or employment without the consent of the Probation Officer.
10. Submit to substance abuse tests when ordered to do so by the Probation Officer. These tests may include urinalysis, breathalizer, and blood samples, but are not limited thereto. Probationer will pay costs of tests.
11. Submit to searches by the Probation Officer of his person, residence, vehicle, or any property under his/her control.
12. Pay to the Probation Officer $30.00 per month during the probation period, pursuant to law.
13. Do not possess, receive, or transport firearms.
14. If the defendant was convicted of any offense specified in §36-18-24, Code of Alabama, he or she must submit to DNA testing according to §36-18-25(c), Code of Alabama 1975.
15. The defendant is ordered to pay fines, court costs, restitution, assessments, and other court-ordered monies at the rate of $ _____ per month on or before the _____ day of each month, beginning _____. Payments of cash, money orders, or certified funds may be brought to the clerk's office. Money orders or certified funds may be mailed to the Clerk of Court: _____

Name ___Larry Dozie___
Address ___P.O. Box 90___
City ___Wetumpka___ State ___Al.___ Zip Code ___36092___

At each report to the probation officer, the defendant shall furnish written proof (Clerk's receipt or money order receipt) of any previous month's payment of court-ordered monies.

16. Notify the Clerk of Court of any change of mailing address and appear in court whenever ordered.
17. Report to the Court Referral Officer immediately, and attend, pay for, and successfully complete the recommended program. The telephone number is
18. The defendant shall perform _____ hours of community service to be approved by the court.
19. Other conditions of probation ordered by the court are as follows: ___① Attend Night Court ② Attend and complete Substance Abuse program at Dobbs House ③ No contact with Alcohol or visit an established liquer (liquor) served as the primary business ④ No illegal Drugs. Conditions will be seen in Jan 2002___

It is the further order of the court that the defendant is hereby advised that the court may at any time revoke or modify any conditions of this probation or change the period of probation and may discharge defendant from probation or extend the period of probation. The probationer shall be subject to arrest for violation of any condition of the probation herein granted. The court may, at any time, for cause, order the original sentence executed.

___April 27, 2001___
Date                                        Judge

A copy of this order has been delivered to the probationer, who has been instructed regarding this order.

___10/12/2001___
Date                                     Probation Officer

The above instructions and conditions have been read and explained to me. I have received a copy of this order, I understand the conditions, and, I agree to abide by them.

___10/12/2001___
Date

___407 Jordan Ave___
Probationer's Address

___Tallassee___ ___Al.___
City      State      Zip Code

Probationer's Signature ___David Wise___

Probationer's Telephone Number ___(334) 283-2536___

DW

60

CASE ACTION SUMMARY
CIRCUIT  CRIMINAL        CASE: CC 96-000188.00

IN THE CIRCUIT  COURT OF  ELMORE  COUNTY                    JUDGE: ~~SWD~~
STATE OF ALABAMA              VS     WISE DAVID DE'JUAN                  JBB
CASE: CC 96 000188.00                252 ZEIGLER PLACE
                                     P O BOX 479
                                     WETUMPKA, AL  36092 0000

DOB: 08/28/73  RACE: B  SEX:  M      HT:  0 00  WT: 000  HR:      EYE:
SSN: 292704423   ALIAS NAMES:

CHARGE1: POSS/REC CONTR. SUBS        CODE1: VPCO LIT:POSS/REC CONTR.  TYPE:F
CHARGE2: UNLAW DISTRIB CONTRO        CODE2: UDCS                      TYPE:F
CHARGE3: UNLAW DISTRIB CONTRO        CODE3: UDCS                      TYPE:F
MORE?: Y     OFFENSE DATE: 01/19/96  AGENCY/OFFICER: 0290000 MONCRIE

DATE WAR/CAP ISS:                    DATE ARRESTED: 01/19/96
DATE    INDICTED: 04/11/96           DATE    FILED: 05/07/96
DATE    RELEASED: 04/13/96           DATE  HEARING:
     BOND AMOUNT:    $27,500.00                    SURETIES:

DATE 1: 05/24/96 DESC:  ARRG         TIME:    0900 A
DATE 2:          DESC:               TIME:    0000
DEF/ATY: AUSBORN, KEITH              TYPE: R                          TYPE:
PROSECUTOR: CLARDY, JANICE

OTH CSE: 9600015800    CHK/TICKET NO: 96010188        GRAND JURY: 82
COURT REPORTER                 SID NO: 000000000
DEF STATUS: BOND      DEMAND:                  OPID: KAL

| DATE | ACTION, JUDGMENTS, CASE NOTES |
|---|---|
| 5-23-96 | Plea of Not Guilty and Waiver of Arraignment |
| 5-24-96 | Order of Arraignment |
| 5-29-96 | **Notice Of Habitual Offender Status** |
| 5-31-96 | Motion To Suppress |
| 5-31-96 | Motion For Disclosure and Production |
| 6-7-96 | Motion to Suppress is hereby set for hearing on June 20, 1996 at 9:00 a.m. Notice to DA + Ausborn |
| 6-17-96 | Motion to Continue |
| 6-17-96 | Defense Counsel Motion to Sever one (1) Count of Unlawful Possession Charge from three (3) Counts of Sale and Distribution Charges |
| 6/20/96 | Motion to Continue Denied |
| 6/20/96 | Motion to Suppress is hereby Denied |
| 6-26-96 | **Defendant having failed to appear, his Bond is hereby forfeited and alias capias issued and cause continued** Steve Drinkard Judge   7 + A set aside — Steve Drinkard |
| 6-26-96 | Deft appeared. Continued to 7-3-96 at 9:00 AM for plea SWD Notice to Ausborn + DA |

STATE OF ALABAMA, ELMORE COUNTY
I, Larry Dozier, Circuit Clerk of Elmore County, Alabama,
hereby certify that the within and foregoing is a true and
correct copy of the original on file in this office.

Witness my hand seal this 17 day of Feb 2004

Larry Dozier
Circuit Clerk

DW  61

CASE ACTION SUMMARY
CONTINUATION

CASE: CC 96 000188.00
JUDGE ID:  SWD

STATE OF ALABAMA             VS      WISE DAVID DE'JUAN

| DATE | ACTION, JUDGMENTS, CASE NOTES |
|------|-------------------------------|
| 7/3/96 | This case is hereby set for trial on October 7, 1996 @ 8:30 am |
| 7/3/96 | Continued to the Plea docket on Sept 17, 1996 @ 9:00 am. The Court hereby appoints Patrick Pinkston to represent the Defendant on Count I, II and III only. Keith Osbon represents the Defendant on Count IV. Three to Osborn, Pinkston & DA |
| 7-26-96 | Defendant's Request for Production |
| 9/13/96 | Held open. Case re-set for 10/18/96 GB |
| 9-12-96 | Motion to Continue |
| 10/18/96 | Patrick Pinkston withdrawn as counsel. State's motion to Dismiss Counts 3 & 4 of the indictment. By agreement of the Defendant, State's motion Granted. GB |
| 10/18/96 | Deft in presence of counsel wished to enter a plea of guilt to Sale of Controlled Substance, 2 counts. Court accepted plea of guilt GB |
| 10/18/96 | Deft in presence of counsel makes application for probation, investigation ordered & case Continued to 11/27/96 at 9:00 GB |
| 11/27/96 | Deft present in court. See Sentencing Order GB |

CASE ACTION SUMMARY (CONTINUATION)

**SENTENCING ORDER**

Case Number

96 - 188

Page Number ____ of ____ Pages

**STATE OF ALABAMA v.** David Wise

| DATE | JUDGE'S INITIALS | ACTIONS, JUDGMENTS, CASE NOTES |
|------|------------------|--------------------------------|

### Terms And Conditions Of Probation

4/27/96

The defendant's probation is conditioned on the defendant complying with the following conditions of probation:

The defendant shall not be arrested for any further offenses.

The defendant shall maintain full time employment.

The defendant shall secure full time employment within _____.

The defendant shall not consume any alcoholic beverages or frequent any establishments that serve or sell alcoholic beverages as their primary service.

The defendant shall not have any contact with illegal drugs or associate with any persons who sell, furnish or use illegal drugs.

The defendant shall pay the Court ordered monies:  ☐ Attorney fees on or before _____ ;
☐ Restitution on or before _____ ;  ☐ Costs and VCF on or before _____ ;
☐ in installments commencing on _____ (date) at the rate of $ _____
per  ☐ month  ☐ week  ☐ each two weeks, until paid in full.

The defendant shall not enter _____ during his/her probation.

The defendant shall complete the DUI level _____ program.

The defendant shall work on and obtain his/her GED and provide verified proof of the same to the probation officer.

The defendant shall enroll in the  ☐ Lighthouse;  ☐ Cadet Center;  or  ☐ _____ ;
and complete the program and any aftercare program that is recommended.

The defendant shall not have any contact with _____

The defendant shall remain a  ☐ full time student at ____ / or employment _____ ;
☐ part time student at _____ ; and maintain a _____ grade point average.

The defendant shall comply with any other terms and conditions of probation that may be required by the Department of Probations and Parole.

The defendant shall make him/herself available for searches or tests when ordered by the Probation Officer; including, but not limited to urinalysis, breath tests, and blood tests or a search of his residence or any property under his control.

_Tue weekends FCJ report 5:00_
_Friday_

The defendant was advised that he has the right to appeal his conviction and sentence, and if indigent has the right to appointed counsel and the court reporter's transcript provided without cost to the defendant.

DONE and ORDERED in open court this 27th day of Nov , 19 96 .

_____
**CIRCUIT COURT JUDGE**

DW    63



**STATE OF ALABAMA**
**VS.**
**David Wise**

**IN THE CIRCUIT COURT**
**ELMORE COUNTY**
**CASE NO:   CC96-188**

## EARLY TERMINATION OF PROBATION

It being made to appear to the Court that the Defendant in the above

entitled cause,   David Wise         has satisfactorily fulfilled all the conditions

of the order of probation and suspension of execution of sentence made in his/her

his/her case on the   27ᵗʰ   day of   November, 1996

it is therefore,

ORDERED AND ADJUDGED by the Court that the said Defendant,

David Wise                 Be and he/she is hereby discharged.

The clerk will enter this Order on the minutes of the Court.

Dated and signed at Wetumpka, Alabama this   3ʳᵈ   day of   March, 1998.

_____
Judge, 19ᵗʰ Judicial Circuit

_____
Probation & Parole Officer

DW   68

IN THE UNITED STATES DISTRICT COURT
FOR
THE MIDDLE DISTRICT OF ALABAMA


THE UNITED STATES
OF AMERICA

      vs.

DAVID WISE,
LESLEY REESE

                      CRIMINAL ACTION NO.
                      2:04-CR-09-T


VOLUME II OF IV
2nd DAY OF:
JURY TRIAL PROCEEDINGS



\* \* \* \* \* \* \* \* \* \*



BEFORE:        The Hon. Lyle E. Strom

HEARD AT:      Montgomery, Alabama

HEARD ON:      March 15, 2005

APPEARANCES:   Matthew Miner, Esq.
                Joe Van Heest, Esq.
                Leslie Smith, Esq.
                Susan G. James, Esq.

GOVERNMENT
EXHIBIT

CASE
NO. 2:08CV17

EXHIBIT
NO. D

Page 10

1 argued and submitted to you on Thursday for your
2 deliberations and decision.
3      Do they have notebooks?
4      (Whereupon, the courtroom deputy clerk
5 presented pads and pencils to each of the jurors.)
6      PRETRIAL JURY CHARGE:
7      THE COURT: All right. Ladies and
8 gentlemen, I'm going to give you, or take a few
9 moments right now to give you some initial
10 instructions about this case. At the conclusion of
11 the trial, I will give you a complete set of written
12 instructions which you will use for guiding you in
13 your deliberations and reaching a verdict in this
14 case. Some of the instructions that I give you now
15 will be repeated in those instructions.
16      The purpose of these instructions is to sort
17 of explain a little bit about this case and explain a
18 little bit about your duties as jurors during the
19 trial of this case.
20      This is a criminal case, which has been
21 brought against David Dujuan Wise and Lesley Octavious
22 Reese, the defendants in the case. There are five
23 counts in the indictment in this case. Count one of
24 the indictment charges Mr. Wise alone with knowingly,
25 intentionally conspiring and agreeing with a person

Page 11

1 named Tonney Lamar Hooks to distribute and possess
2 with intent to distribute five hundred grams or more
3 of cocaine hydrochloride, which is sometimes referred
4 to as powder cocaine, a Schedule II controlled
5 substance.
6      Count two charges that on or about -- and
7 that conspiracy, incidentally, that's charged in count
8 one, charges that it began on or about the first of
9 April and continued through April 29 of 2003, a period
10 of about one month.
11      Count two charges that on or about April 29,
12 2003 the defendant, again David Dujuan Wise, while
13 aiding and abetting and inducing another individual
14 named Tony Lamar Hooks, knowingly and intentionally
15 possessed with the intent to distribute five hundred
16 grams or more of powder cocaine, a Schedule II
17 controlled substance.
18      Count three charges that on or about April
19 29, 2003 in -- here in Alabama again, the defendant,
20 David Dujuan Wise, while aiding and abetting another
21 person, knowingly and intentionally possessed a
22 mixture or substance containing in excess of five
23 grams of cocaine base -- that is often referred to as
24 crack cocaine -- a Schedule II controlled substance.
25 Again, in violation of the law of the United States.

Page 12

1      And then count four and count five both
2 relate to an incident that occurred on or about
3 November 26 of 2002. It charges both Mr. Wise and the
4 other defendant, Leslie Octavious Reese, that they
5 knowingly and intentionally conspired and agreed
6 between themselves to distribute five grams or more of
7 cocaine base, a Schedule II controlled substance, and
8 alternatively on that date here again in Alabama the
9 two of them, while aiding and abetting one another,
10 knowingly and intentionally distributed five grams or
11 more of cocaine base, a Schedule II controlled
12 substance.
13      With respect to counts one and three --
14 counts one and four, which charge a conspiracy, very
15 generally, just to giving you some idea of what the
16 elements of that offense are, the Government will have
17 to produce evidence that satisfies you beyond a
18 reasonable doubt that in count one that Mr. Wise --
19 well first they will have to prove that two or more
20 persons reached an understanding or came to an
21 agreement to distribute or possess with intent to
22 distribute powder cocaine.
23      Number two, the second element is that Mr.
24 Wise either joined in that agreement or understanding
25 when it was first reached or subsequently he learned

Page 13

1 about it and knowing its purpose he voluntarily joined
2 in that agreement.
3      And third, that he knew that the substance
4 involved was powder cocaine.
5      With respect to count four of the
6 indictment, the elements are generally the same except
7 that Miss Reese would also, you'd have to determine
8 whether or not she either joined in that conspiracy at
9 the time or later knowing about it joined in that
10 conspiracy. The elements substantially parallel each
11 other.
12      The other the counts talk about aiding and
13 abetting another person to knowingly and intentionally
14 possess with intent to distribute cocaine, either
15 crack cocaine or powder cocaine. And if you're going
16 to aid and abet, the Government is going to have to
17 prove first that some person was involved with
18 knowingly distributing or possessing with intent to
19 distribute either cocaine or crack cocaine. In other
20 words, what the Government is going to have to prove
21 to prove aiding and abetting is to prove that somebody
22 committed the crime that the defendant is charged with
23 aiding and abetting.
24      These are very general outlines. The
25 purpose of it is to just sort of give you an overview

Page 14

1 of what these crimes are about. The closing
2 instructions that I give you will be in detail as to
3 exactly what the Government must prove in order for
4 you to find the defendant guilty of these charges.
5        The charges set forth in what we call an
6 indictment, that I've just summarized for you. You
7 should understand that an indictment is simply an
8 accusation. It is not evidence of anything. The
9 defendants have entered a plea of guilty (sic.) to
10 these charges and are presumed to be innocent unless
11 and until proven guilty beyond a reasonable doubt. It
12 will be your duty to decide from the evidence whether
13 either or both defendants are guilty or not guilty of
14 the crimes charged. From the evidence you will decide
15 what the facts are.
16        You are entitled to consider that evidence
17 in the light of your own observations and experiences
18 in the affairs of life. You may use reason and common
19 sense to draw deductions or conclusion from facts
20 which have been established by the evidence. You will
21 then apply those facts to the law which I give you in
22 these and in my other instructions and in that way
23 reach your verdict. You are the sole judges of the
24 facts, but you must follow the law as stated in my
25 instructions whether you agree with it or not.

Page 15

1        You are not to allow sympathy or prejudice
2 to influence you. The law demands of you a just
3 verdict unaffected by anything except the evidence,
4 your common sense and the law as I give it to you.
5 You should not take anything that I may say or do
6 during the course of this trial as indicating what I
7 think of the evidence or what I think your verdict
8 should be.
9        And finally, please remember that only these
10 two defendants, not anyone else, are on trial here and
11 that they are on trial only for the crimes which are
12 charged against them and not for anything else.
13        Now I've mentioned the word "evidence".
14 Evidence includes the testimony of witnesses, the
15 documents and other things received as exhibits, any
16 facts that had been stipulated that is formally agreed
17 to by the parties, and any facts that have been
18 judicially noticed. That is facts which I say you may
19 but are not required to accept as true, even without
20 evidence.
21        There are certain things that are not
22 evidence, and I'm going to list those for you now.
23 Number one, statements, arguments, questions and
24 comments by lawyers representing the parties are not
25 evidence. Number two, objections are not evidence.

Page 16

1 Lawyers have a right to object when they believe
2 something is inadmissible or improper. You should not
3 be influenced by the objection. If I sustain an
4 objection to a question, you must ignore the question
5 and must not try to guess what the answer might have
6 been.
7        Number three, testimony that I strike from
8 the record or tell you to disregard is not evidence
9 and must not be considered by you.
10        Number four, anything you see or hear about
11 this case outside the courtroom is not evidence unless
12 I specifically tell you otherwise during the trial.
13 Furthermore, a particular item of evidence is
14 sometimes received for a limited purpose only; that
15 is, it can be used by you only for one particular
16 purpose and not for any other purpose. I will tell
17 you when that occurs and instruct you on the purposes
18 for which the item can and cannot be used.
19        Finally, some of you may have heard the
20 terms "direct evidence" and "circumstantial evidence".
21 You are instructed that you should not be concerned
22 with those terms. The law makes no distinction
23 between direct and circumstantial evidence. You
24 should give all the evidence the weight and value you
25 believe it is entitled to receive.

Page 17

1        In deciding what the facts are you may have
2 to decide what testimony you believe and what
3 testimony you do not believe. You may believe all of
4 what a witness said or only part of it or none of it.
5 In deciding what testimony of any witness to believe,
6 consider the witness's intelligence, the opportunity
7 the witness had to have seen or heard the things
8 testified about, the witness's memory, any motives
9 that witness may have for testifying a certain way,
10 the manner of the witness while testifying, whether
11 the witness said something different at an earlier
12 time, the general reasonableness of the testimony and
13 the extent to which the testimony is consistent with
14 other testimony that you believe.
15        At the conclusion of the trial you may --
16 you must make your decisions based upon what you
17 recall of the evidence. You will not have a written
18 transcript to consult, and the court reporter cannot
19 read back lengthy testimony. Therefore it's important
20 that you pay close attention to the testimony as it is
21 given. If you wish, however, you may take notes, and
22 that's the purpose for the pads that I've had Mrs.
23 Rader furnish you.
24        If you do take notes, please keep them to
25 yourself until you and your fellow jurors go to the

Page 18

1 jury room to decide the case and don't let the
2 note-taking distract you so that you do not hear other
3 answers by the witness. Some people simply can
4 remember better if they can write down a few words or
5 a phrase or something of something they heard. Other
6 people don't need those aids and the notes are
7 available to you to use as you wish to assist you at
8 the conclusion of this trial in recalling the
9 testimony that's presented to you during the course of
10 the trial.
11     As I indicated, your notes should be used
12 only as memory aids. You should not give your notes
13 precedence over your independent recollection of the
14 evidence. If you do not take notes, you should rely
15 on your own independent recollection of the
16 proceedings, and you should not be influenced by the
17 notes of other jurors. I do want to emphasize that
18 notes are not entitled to any greater weight than the
19 recollection or impression of each juror as to what
20 the testimony might have been.
21     Now during this trial and examination of
22 witnesses, the party who calls a witness will conduct
23 what we call a "direct examination". The opposing
24 party then may conduct what we call a "cross
25 examination". In this case since we have two

Page 19

1 defendants, the Government calling its witnesses will
2 conduct a direct examination, and then each
3 defendant's counsel will have the right to cross
4 examine that witness. And then the Government's
5 counsel will have the right to conduct a redirect
6 examination.
7     Conversely, of course, if the defendant
8 calls a witness, conducts a direct examination, the
9 other defendant may conduct a cross examination and
10 the Government may conduct a cross examination. And
11 then the party calling the witness will conduct a
12 redirect examination.
13     That's all of the questions that I permit
14 the lawyers to ask. That is direct, cross and
15 redirect. At the conclusion of those questions, I
16 will turn to the jury and I will ask you if you have
17 any questions that you would like to have me ask the
18 witness. If you have such a question, you don't have
19 to put your name on the sheet of paper, but I'd ask
20 you just to tear a sheet of paper out of your notebook
21 and write the question out. Your questions are
22 governed by the same rules of evidence as are the
23 lawyers'.
24     If the lawyers can't ask the questions, I
25 couldn't permit you to ask the questions. But I don't

Page 20

1 expect you to know the rules of evidence and I don't
2 want you to worry about it. If your question is one
3 that is permitted by the rules of evidence, I will ask
4 it. If it is not permitted by the rules of evidence,
5 I will not ask the question. You'll just have to rely
6 upon the fact that I'm properly applying the rules of
7 evidence to it. I do need to permit counsel to review
8 those questions before they are asked.
9     If you have questions of a witness or if I
10 may have any witness of a witness following the
11 presentation of those questions to the witness, then I
12 permit counsel to ask further questions regarding the
13 subject matters raised by those questions.
14     Now in the evening when we retire, adjourn
15 for the evening, I'm going to ask that you leave your
16 notes in the jury room. They will be secured so
17 nobody can look at them. And to that end, it might be
18 a good idea just to write your name at the top of the
19 first page so that you can easily identify them the
20 following morning when you appear for a continuation
21 of the trial.
22     Now during the trial it may be necessary for
23 me to visit with the lawyers out of the hearing of the
24 jury, either by having a bench conference here while
25 you're present in the courtroom or by calling a

Page 21

1 recess. I want you to understand that while you are
2 waiting, we are working. The purpose of these
3 conferences is to decide how certain evidence is to be
4 treated under the rules of evidence and to avoid
5 confusion and error. You, of course -- or we, of
6 course, will do what we can to keep the number and
7 length of these conversations to a minimum.
8     Now to ensure fairness, as jurors you should
9 and must obey the following rules. First, do not talk
10 among yourselves about this case or about anyone
11 involved with it until the end of the case and you go
12 to the jury room to decide on your verdict.
13     Second, do not talk with anyone else about
14 this case or about anyone involved with it until the
15 trial has ended and you have been discharged as
16 jurors.
17     Third, when you are outside the courtroom,
18 do not let anyone tell you anything about the case or
19 about anyone involved with it. If someone should try
20 to talk to you about the case, please report it to me.
21     Fourth, during the trial you should not talk
22 with or speak to any of the parties, the lawyers or
23 witnesses involved in this case. You should not even
24 pass the time of day with any of them. It is
25 important not only that you do justice in this case,

Page 22

1 but that you also give the appearance of doing
2 justice. If a person from one side of the case sees
3 you talking to a person from the other side, even if
4 it is simply to pass the time of day, an unwarranted
5 and unnecessary suspicion about your fairness might be
6 aroused. If any lawyer, party or witness does not
7 speak to you when you pass in the hall, ride the
8 elevator or the like, it is because they are not
9 supposed to talk or visit with you.
10      Fifth, do not read any news stories or
11 articles about the case or about anyone involved with
12 it, or listen to any radio or television reports about
13 the case or about anyone involved with it.
14      Sixth, do not do any research or make any
15 investigation about the case on your own.
16      And, seventh, do not make up your mind
17 during the trial about what the verdict should be.
18 Keep an open mind until after you've gone to the jury
19 room to decide the case, and you and your fellow
20 jurors have had an opportunity to discuss the
21 evidence.
22      The trial then will proceed now in the
23 following manner. First, counsel for the Government
24 will make an opening statement. Following that
25 counsel for the defendants may make an opening

Page 23

1 statement. An opening statement is not evidence. It
2 is simply a summary of what the attorney expects the
3 evidence to be.
4      The Government will then present its
5 evidence, counsel for the defendants may cross examine
6 the Government's witnesses. Following the conclusion
7 of the Government's case the defendants may, but are
8 not required to present evidence, testify or call
9 other witnesses. If they do testify or call other
10 witnesses, Government counsel of course may cross
11 examine them or those other witnesses.
12      After the presentation of the evidence is
13 completed, the attorneys will make their closing
14 arguments to summarize and interpret the evidence for
15 you. As with opening statements, closing arguments
16 are not evidence. I will then instruct you further on
17 the law, and you will then retire to deliberate on
18 your verdict.
19      With respect to the instructions that I give
20 you at the conclusion of the case, I will furnish each
21 of you with a written copy of those so that you can
22 follow them as I read them to you. And you will be
23 permitted to take those copies with you to the jury
24 room for reference purposes during your deliberations
25 so you don't have to rely entirely on your memory as

Page 24

1 to what the applicable law ought to be.
2      So with those opening instructions, we'll
3 proceed now with the opening statements. As I
4 indicated to you just a moment ago, opening statements
5 are not evidence. I do invite your careful attention
6 to what counsel may have to say, because I think it
7 will aid and assist you in evaluating the evidence as
8 its comes in order to assist you in reaching a proper
9 verdict in this case.
10      Mr. Miner?
11          OPENING STATEMENTS:
12      MR. MINER: Thank you.
13      May it please the Court, Counsel, ladies and
14 gentlemen of the jury. Good morning.
15      This case is about drug dealing. It's a
16 case about two separate conspiracies that involve drug
17 dealing. And there are two defendants in this case.
18 One of the defendants is the ringleader of those two
19 conspiracies --
20      THE COURT: I hate to interrupt you, Mr.
21 Miner, but could Counsel approach over here for just a
22 moment?
23      MR. MINER: Yes, Your Honor.
24      (Whereupon, an off-the-record bench
25 conference was held between all counsel and the

Page 25

1 Court.)
2      THE COURT: Ladies and gentlemen, I'm going
3 to excuse you for just ten minutes. I just realized
4 that you have not yet been properly sworn as a jury in
5 this case, and before we proceed further I have to do
6 that. So we'll have to get the oath so we can
7 properly administer it to you. In the meantime,
8 you'll be excused to the jury room.
9      (Whereupon, the jury was escorted out of the
10 courtroom, and the following colloquy ensued):
11      MS. JAMES: Judge, can we put something on
12 the record? I just wanted to note for the record that
13 Mr. Wise is sleeping on and off through the
14 proceedings. He says it's medication, and I'm trying
15 to nudge him to keep him awake.
16      THE COURT: It's important, Mr. Wise, this
17 is an important case. It's important to you and it's
18 important to the people here, so it's your obligation
19 to participate by staying awake.
20      All right. You may bring in the jury now.
21      (Whereupon, the jury was escorted into the
22 courtroom.)
23      THE COURT: All right, ladies and gentlemen.
24 If you would please stand and we'll administer the
25 oath.

IN THE UNITED STATES DISTRICT COURT
FOR
THE MIDDLE DISTRICT OF ALABAMA


THE UNITED STATES
OF AMERICA

vs.                              CRIMINAL ACTION NO.
                                 2:04-CR-09-T

DAVID WISE,
LESLEY REESE


VOLUME IV OF IV
4th DAY OF:
JURY TRIAL PROCEEDINGS


* * * * * * * * * *


BEFORE:        The Hon. Lyle E. Strom

HEARD AT:      Montgomery, Alabama

HEARD ON:      March 17, 2005

APPEARANCES:   Matthew Miner, Esq.
               Joe Van Heest, Esq.
               Leslie Smith, Esq.
               Susan G. James, Esq.

Page 250

1 off your car and you crash? And if you saw nothing,
2 would you then run out of that car?
3       And what was his explanation? I was scared
4 of a truck that tried to swerve in front of me. And
5 yet he went close to ninety miles an hour for over two
6 miles and he saw nothing? Use your common sense. And
7 what happened? A drug deal did occur, right?
8 Something actually happened. It wasn't make-believe.
9 Here's the dope. Here's the package from the chemist.
10 A drug deal actually occurred on November 26, 2002.
11       The money that was used to buy this dope was
12 found in this defendant's car. This actually
13 happened. And he was there. He drove the car. He
14 aided and abetted. He drove the car. He tried to
15 flee from law enforcement with the sirens going and
16 the lights flashing and they tried to pull him over.
17 He aided and abetted. He fled. You're going to hear
18 the judge instruct you on flight being evidence of
19 guilt. That is what we have. That's the evidence.
20 The evidence convicts.
21       We have a drug deal. We've got the dope.
22 We've got the man who drove the car. And this man is
23 the ringleader, the defendant, Wise, set the whole
24 thing up.
25       All right. So if you want to push Hooks and

Page 251

1 Joanna Hooks and Tonney Hooks and Robert Zeigler and
2 Farron Livingston to the side, push them all aside and
3 look at the other evidence. It is sufficient beyond a
4 reasonable doubt to convict these defendants. But I
5 want you to look at them for this reason: Not for
6 what they said, but for who they are. Tonney Hooks,
7 at the time this happened he was twenty years old and
8 suffered a stroke. Right? This man, twenty-six years
9 old now, three years ago he was twenty-four years old.
10 Joanna Hooks, a young lady. All right?
11       Who else was involved? Zeigler, another
12 young man who suffered a stroke. Tonney Hooks didn't
13 have the stroke but he was a young man. All of these
14 are young people, members of the jury. And who is
15 directing their activities? This man, the ringleader.
16 That makes me sick. Young people being directed by
17 this man. They're mules.
18       THE COURT: You have one minute left.
19       MR. PERRINE: Uneducated, young, unemployed,
20 need the cash, and this man, David Wise, grouped them
21 all together in two conspiracies to deal, to sling his
22 dope. Members of the jury, the evidence in this case
23 is rock solid. The evidence put these two individuals
24 on trial. They tried to put everybody else on trial.
25 The United States submits to you that each count in

Page 252

1 this indictment has but one conclusion. The
2 defendant, Wise is guilty. One, two, three, four and
3 five. This man, the defendant, Reese? He's guilty of
4 counts four and five. Not because I said so, the
5 evidence convicted him.
6       Thank you very much.
7       THE COURT: The instructions will take about
8 twenty or twenty-five minutes. Do you want to take a
9 ten minute break before we start those, or are you
10 ready to proceed at this time?
11       JUROR: Go ahead.
12       JURY CHARGE:
13       THE COURT: All right, ladies and gentlemen.
14 Now that you have heard the evidence and the arguments
15 of counsel have been made, it's my duty to inform you
16 of the legal principles and considerations you are to
17 use in arriving at a proper verdict. In accordance
18 with the oath which each of you took when you were
19 selected as jurors to try this case, it is your duty
20 to determine the disputed issues of fact in this case
21 from the evidence produced, and seek thereby to reach
22 a verdict which shall speak the truth of the case and
23 thereby do justice between the parties hereto,
24 uninfluenced by sympathy, favor, affection or
25 prejudice for or against any party.

Page 253

1       It is your duty to receive and accept as
2 correct the law as given you in this charge, and you
3 are not privileged to entertain an opinion as to the
4 law or what the law should be which conflicts in any
5 respect with the law as stated in this charge.
6 However, I have not attempted to embody all of the law
7 applicable to this case in any one of the instructions
8 contained in this charge and, therefore, you must
9 consider the charge in its entirety giving due weight
10 to each instruction and construing each construction
11 in the light of and in harmony with the other
12 instructions and so apply the principles set forth to
13 all of the evidence received during the trial.
14       At the outset I urge you to make every
15 effort to reach an agreement in your deliberations.
16 Inconclusive trials are not desirable. A common
17 understanding among competent and intelligent people
18 ought to be possible. However, this observation must
19 not be construed by any juror as a suggestion of the
20 abandonment of an opinion held understandably and
21 earnestly just for the sake of agreement. The Court
22 must never coerce agreements by jurors.
23       It is appropriate to suggest that if you
24 should find yourselves in apparent disagreement, each
25 of you should carefully reexamine your opinions before

Page 254

1  assuming a position of dissent.  I should give you one
2  preliminary word of caution.  It is seldom wise or
3  beneficial for a juror to make an emphatic expression
4  of his or her opinion of the case, or to announce a
5  determination to stand for a certain verdict
6  immediately upon entering the jury room at the
7  beginning of deliberations.  The reason for this is
8  obvious.  We are all human, and it is difficult to
9  recede from a position once it has been definitely
10  stated.
11      You are to consider only the evidence in the
12  case.  You are not limited to the statements of the
13  witnesses.  In other words, you are not limited to
14  what you see and hear as the witnesses testified.  You
15  are permitted to draw from facts which you which you
16  find may have been proved such reasonable inferences
17  as seen justified in the light of your experience.
18  Inferences are deductions or conclusions which reason
19  and common sense lead the jury to draw from the facts
20  which may have been established by the evidence.
21      There are two types of evidence.  Direct,
22  such as the testimony of an eyewitness; and
23  circumstantial, the proof of circumstances pointing to
24  the existence or nonexistence of certain facts.  The
25  law makes no distinction between direct and

Page 255

1  circumstantial evidence, but requires that the jury
2  find the facts in accordance with the preponderance of
3  all evidence both direct and circumstantial.
4      During the trial I have ruled on objections
5  to certain evidence.  You must not concern yourselves
6  with the reasons for such rulings, since they are
7  controlled by rules of law.  You must not speculate or
8  form or act upon any opinion as to how a witness might
9  have testified in answer to questions which I have
10  rejected during the trial or upon any subject matter
11  to which I have forbidden inquiry.
12      In coming to any conclusion in this case you
13  must be governed by the evidence before you, and by
14  the evidence alone.  You have no right to indulge in
15  speculation, conjecture or inference not supported by
16  the evidence.  The evidence for which you are to find
17  the facts consists of the following:  One, the
18  testimony of the witnesses; and two, documents and
19  other things received as exhibits.
20      The following things are not evidence:  One,
21  statements, comments, questions and arguments by
22  lawyers for the parties; number two, objections to
23  questions; number three, anything you may have seen or
24  heard about this case outside the courtroom.  During
25  the trial you heard testimony which was stricken.  You

Page 256

1  may not consider that testimony and you are to
2  disregard it entirely.
3      You, as jurors, are the sole judges of the
4  credibility of the witnesses, including a defendant
5  who testifies, and the weight their testimony
6  deserves.  In deciding what the facts are you may have
7  to decide what testimony you believe and what
8  testimony you do not believe.  You may believe all of
9  what a witness said, or only part of it or none of
10  it.
11      In determining the weight to be given to the
12  testimony of the witnesses you should take into
13  consideration their interest in the result of this
14  case, if any appears; their conduct and demeanor while
15  testifying; their apparent fairness or bias; their
16  relationship to the parties, if any appears; their
17  opportunities for seeing or knowing and remembering
18  the things about which they testify; the
19  reasonableness or unreasonableness of the testimony
20  given by them; any previous statement or conduct of
21  the witness that is consistent or inconsistent with
22  the testimony of the witness at this trial and all of
23  the evidence, facts and circumstances proved which
24  tend to corroborate or contradict such evidence if any
25  appear.

Page 257

1      You are not bound to take the testimony of
2  any witness as true, and should not do so if you are
3  satisfied from all the facts and circumstances proved
4  at the trial that such a witness is mistaken in the
5  matter testified to, or that for any other reason
6  appearing in the evidence the testimony is untrue or
7  unreliable.
8      The fact that one side may have used a
9  greater number of witnesses or presented a greater
10  quantity of evidence should not affect your decision.
11  Rather, you should determine which witness or
12  witnesses and which evidence appears accurate and
13  trustworthy.  It is the weight of the evidence that
14  counts, not the number of witnesses.
15      The testimony of a single witness which
16  produces in your minds belief in the likelihood of
17  truth is sufficient for proof of any fact and would
18  justify a verdict in accordance with such testimony,
19  even though a number of witnesses may have testified
20  to the contrary if, after consideration of all the
21  evidence in the case you hold greater belief in the
22  accuracy and reliability of the one witness.
23      A law enforcement officer who takes the
24  witness stand subjects his or her testimony to the
25  same examination and the same tests as any other

Multi-Page

Page 258

1  witness.
2       In this case the Government called witnesses
3  who were named as codefendants in the indictment with
4  whom the Government has entered into a plea agreement,
5  providing for the possibility of a lesser sentence
6  than the once would otherwise be exposed to.  Such
7  plea bargaining, as it is called, has been approved as
8  lawful and proper and is expressly provided for in the
9  rules of this Court.  However, a witness who hopes to
10  gain more favorable treatment may have reason to make
11  a false statement because the witness wants to strike
12  a good bargain with the Government.  So while a
13  witness of that kind may be entirely truthful when
14  testifying, you should consider such testimony with
15  more caution than the testimony of other witnesses.
16       The fact that a witness has pled guilty to
17  or has been found guilty of a crime charged in the
18  indictment is not evidence in and of itself of the
19  guilt of any other person.  A witness's guilty plea
20  can be considered by you only for the purposes of
21  determining how much, if at all, to rely upon that
22  witness's testimony.
23       You have heard evidence that Farron
24  Livingston and Joanna Hooks have been convicted of one
25  or more felonies.  You may give consideration to this

Page 259

1  factor in determining how much weight you think their
2  testimony deserves.
3       As you have heard, one of the Government's
4  exhibits has been identified as -- I think that's
5  probably two exhibits -- been identified as a
6  typewritten transcript of an oral conversation that
7  can be heard on the tape recording also received in
8  evidence.  The transcript purports to identify the
9  speakers engaged in such conversation.
10       I have admitted the transcript for the
11  limited and secondary purpose of aiding you in
12  following the content of the conversation as you
13  listen to the tape recording, and also to aid you in
14  identifying the speakers.  However, you are
15  specifically instructed that whether the transcript
16  correctly or incorrectly reflects the content of the
17  conversation or the identity of the speakers is
18  entirely for you to determine based upon your hearing
19  of the tape recording itself as the primary evidence
20  of its own contents.  And if you should determine that
21  the transcript is in any respect incorrect or
22  unreliable, you should disregard it to that extent.
23       You have heard evidence that two of the
24  defendants in this case fled after the police appeared
25  behind their vehicle.  If proved, the flight of a

Page 260

1  defendant after he knows he is to be accused of a
2  crime may tend to prove that the defendant believed
3  that he was guilty.  It may be weighed by you in this
4  connection, together with all the other evidence.
5  However, flight may not always reflect feelings of
6  guilt.  Moreover, feelings of guilt which are present
7  in many innocent people do not necessarily reflect
8  actual guilt.
9       You are specifically cautioned that evidence
10  of flight of a defendant may not be used by you as a
11  substitute for proof of guilt.  Flight does not create
12  a presumption of guilt.  Whether or not evidence of
13  flight does show that the defendant believed that he
14  -- that should be is guilty instead of as -- and the
15  significance if any to be given to the defendants'
16  feelings on this matter are for you to determine.
17       As you have become aware during the course
18  of this trial this is a prosecution upon criminal
19  accusations institute by, and in the name of, the
20  United States of America which is the sole plaintiff
21  in this action.  It is brought against David Dejuan
22  Wise, also known as Julio, and Lesley Octavious Reese.
23  They are the only defendants on trial.  Hereafter I
24  may occasionally refer to the United States of America
25  simply as the plaintiff or the Government.  The

Page 261

1  defendants may be referred to as defendants or by
2  their proper or legal name.
3       Count one of the indictment in this case
4  charges that from on or about the beginning of April
5  2003 through April 29, 2003 David Dejuan Wise did
6  willfully and knowing combine, conspire, confederate
7  and agree with Tonney Lamar Hooks to distribute and
8  possess with intent to distribute five hundred grams
9  or more of cocaine hydrochloride, also known as powder
10  cocaine, a Schedule II controlled substance in
11  violation of the laws of the United States.
12       Count two of the indictment charges that on
13  or about April 29, 2003 David Dejuan Wise, while
14  aiding abetting and inducing another individual named
15  Tonney Lamar Hooks, did knowingly and intentionally
16  possess with intent to distribute five hundred grams
17  or more of cocaine hydrochloride, a Schedule II
18  controlled substance, in violation of the laws of the
19  United States.
20       Count three of the indictment charges that
21  on or about April 29, 2003, David Dejuan Wise, while
22  aiding and abetting Joanna Nicole Hooks, did knowingly
23  and intentionally possess a mixture and substance
24  containing in excess of five grams of cocaine base,
25  also known as crack cocaine, a Schedule II controlled

Page 262

1 substance in violation of the laws of the United
2 States.
3        Count four of the indictment charges that on
4 or about November 26, 2002, David Dejuan Wise and
5 Lesley Octavious Reese did knowingly and intentionally
6 combine, conspire, confederate and agree together with
7 each other and with another individual named Robert
8 James Zeigler, Junior, to distribute five grams or
9 more of cocaine base, a Schedule II controlled
10 substance in violation of the laws of the United
11 States.
12        Count five of the indictment charges that on
13 or about November 26, 2002 David Dejuan Wise and
14 Lesley Octavious Reese, along with another individual
15 named Robert James Zeigler, Junior, did knowingly and
16 intentionally distribute five grams or more of cocaine
17 base, a Schedule II controlled substance, while aiding
18 and abetting one another in violation of the laws of
19 the United States.
20        The defendants have entered pleas of not
21 guilty to these charges. As I told you at the
22 beginning of the trial, an indictment is simply an
23 accusation. It is not evidence of anything. To the
24 contrary, a defendant is presumed to be innocent.
25 Thus, a defendant even though charged begins the trial

Page 263

1 with no evidence against him. The presumption of
2 innocence alone is sufficient to find the defendant
3 not guilty and can be overcome only if the Government
4 proves beyond a reasonable doubt each essential
5 element of the crime charged.
6        The indictment charges that the offenses
7 involved were committed on or about certain dates. It
8 is not necessary that the proof establish with
9 certainty the exact date of an alleged offense. It is
10 sufficient if the evidence shows beyond a reasonable
11 doubt that an offense was committed on the date
12 reasonably near the date alleged.
13        Finally, remember that the defendants, not
14 anyone else, are on trial here, and the defendants are
15 on trial only for the crimes charged against them, not
16 for anything else. The law presumes the defendant to
17 be innocent of crimes. Thus a defendant, although
18 accused, begins the trial with a clean slate with no
19 evidence against him. The presumption of innocence
20 alone is sufficient to acquit a defendant.
21        Unless you are satisfied beyond a reasonable
22 doubt of a defendant's guilt after careful and
23 impartial consideration of all the evidence in the
24 case, does not require that the Government prove guilt
25 beyond all possible doubt, the test is one of

Page 264

1 reasonable doubt. A reasonable doubt is a doubt based
2 upon reason and common sense. The kind of doubt that
3 would make a reasonable person hesitate to act. Proof
4 beyond a reasonable doubt must, therefore, be proof of
5 such a convincing character that a reasonable person
6 would not hesitate to rely and act upon it in the most
7 important of his own affairs.
8        The jury will remember that a defendant is
9 never to be convicted on mere suspicion or conjecture.
10 The burden is always upon the Government to prove
11 guilt beyond a reasonable doubt. This burden never
12 shifts to a defendant, for the law never imposes upon
13 a defendant in a criminal case the burden or duty of
14 calling any witnesses or producing any evidence.
15 There is no burden upon a defendant to prove that he
16 is innocent.
17        Accordingly, the fact that a defendant did
18 not testify, must not be considered by you in any way
19 or even discussed in arriving at your verdict. So if
20 the jury after careful and impartial consideration of
21 all the evidence in the case has a reasonable doubt
22 that a defendant is guilty of the charge, it must
23 acquit. If the jury views the evidence in the case as
24 reasonably permitting either of two conclusions, one
25 of innocence, the other of guilty, the jury should of

Page 265

1 course adopt the conclusion of innocence.
2        The crime of conspiracy, to distribute or
3 possess with intent to distribute cocaine
4 hydrochloride as charged in count one of the
5 indictment, has four essential elements which are one,
6 on or about the beginning of April 2003 and continuing
7 through April 29, 2003 two or more persons reached an
8 agreement or came to an understanding to distribute or
9 possess with intent to distribute cocaine
10 hydrochloride; two, the defendant, David Dejuan Wise,
11 voluntarily and intentionally joined in the agreement
12 or understanding either at the time it was first
13 reached or at some later time while it was still in
14 effect; three, at the time the defendant joined in the
15 agreement or understanding he knew the purpose of the
16 agreement or understanding; and four, that the
17 defendant is responsible for at least five hundred
18 grams but less than two kilograms of cocaine
19 hydrochloride.
20        For you to find the defendant David Dejuan
21 Wise guilty of the crime charged in count one, the
22 Government must prove all of the above numbered
23 essential elements beyond a reasonable doubt as to the
24 defendant. Otherwise you must find the defendant not
25 guilty of the crime charged.

Page 266

1    To assist you in determining whether there
2  was an agreement or understanding to distribute or
3  possess with intent to distribute a controlled
4  substance, you are advised that the crime of
5  distributing or possessing with intent to distribute
6  has three essential elements which are one, the
7  defendant was in possession of a controlled substance;
8  two, the defendant knew he or she was in possession of
9  a controlled substance; and, three, the defendant
10  intended to distribute some or all of the controlled
11  substance to another person or persons.  As used in
12  this instruction controlled substance has reference to
13  cocaine hydrochloride.
14    A person may also be found guilty of
15  conspiracy even if he personally did not do every act
16  constituting the offense charged if he aided and
17  abetted the conspiracy as explained in instruction
18  number sixteen.
19    The crime of conspiracy to distribute
20  cocaine base as charged in count four of the
21  indictment has four essential elements which are one,
22  on or about November 26, 2002, two or more persons
23  reached an agreement or came to an understanding to
24  distribute cocaine base; two, the defendant
25  voluntarily and intentionally joined in the agreement

Page 267

1  or understanding, either at the time it was first
2  reached or at some later time while it was still in
3  effect; three, at the time the defendant joined in the
4  agreement or understanding he knew the purpose of the
5  agreement or understanding; and, four, that the
6  defendant is responsible for at least five but less
7  than fifty grams of cocaine base.
8    For you to find the defendants David Dejuan
9  Wise or Lesley Octavious Reese guilty of the crime
10  charged in count four, the Government must prove all
11  of the above numbered essential elements beyond a
12  reasonable doubt as to such defendant.  Otherwise, you
13  must find such defendant not guilty of the crime
14  charged.
15    To assist you in determining whether there
16  was an agreement or understanding to distribute a
17  controlled substance, you are advised that the crime
18  of distribution has two essential elements which are
19  one, the defendant intentionally transferred a
20  controlled substance to another person or persons;
21  and, two, at the time of the transfer the defendant
22  knew that the substance transferred was a controlled
23  substance.  As used in this instruction controlled
24  substance has reference to cocaine base.
25    A person may also be found guilty of

Page 268

1  conspiracy even if he personally did not do every act
2  constituting the offense charged if he aided and
3  abetted the conspiracy as explained in instruction
4  number sixteen.  In order to find the defendant David
5  Dejuan Wise guilty of conspiracy as charged in count
6  one of the indictment, or to find either of the
7  defendants guilty of conspiracy as charged in count
8  four of the indictment, the Government must prove that
9  the defendants reached an agreement or understanding
10  with at least one other person.  It makes no
11  difference whether that person is a defendant or named
12  in the indictment.
13    An agreement or understanding need not be an
14  express or formal agreement, or be in writing, or
15  cover all of the details of how it is to be carried
16  out.  Nor is it necessary that the members have
17  directly stated between themselves the details or
18  purpose of the scheme.  You are instructed that the
19  relationship between a buyer and seller of drugs does
20  not alone establish a conspiracy.  You should
21  understand that merely being present at the scene of
22  an event, merely acting in the same way as others, or
23  merely associating with others does not prove that a
24  person has joined in an agreement or understanding.
25    A person who has no knowledge of a

Page 269

1  conspiracy but who happens to act in a way which
2  advances some purpose of one does not thereby become a
3  member.  But a person may join in an agreement or
4  understanding as required by this element without
5  knowing all the details of the agreement or
6  understanding and without knowing who all the other
7  members are.  Further, it is not necessary that a
8  person agreed in playing any particular part in
9  carrying out the agreement or understanding.
10    A person may become a member of a conspiracy
11  even if that person agrees to play only a minor part
12  in the conspiracy, as long as that person has an
13  understanding of the unlawful nature of the plan and
14  voluntarily and intentionally joins in it.  In
15  determining whether the alleged conspiracy existed,
16  you may consider the actions and statements of all the
17  alleged participants.  The agreement may be inferred
18  from all the circumstances and the conduct of the
19  alleged participants.
20    In determining whether the defendants became
21  members of a conspiracy you may consider only the acts
22  and statements of the defendants.  If you find that
23  the Government has failed to prove the existence of
24  the conspiracies charged in the indictment, you must
25  find the defendants not guilty, even if you are

Page 270

1 convinced that the defendants were members of one or
2 more separate or different conspiracies not charged in
3 the indictment. But proof that a defendant was a
4 member of some other conspiracy would not prevent you
5 from returning a guilty verdict if the Government also
6 proved that he was a member of the conspiracy charged
7 in the indictment.
8       A single conspiracy may exist even if all
9 the members did not know each other, or never met
10 together, or did not know what roles all the other
11 members played. A single conspiracy may exist even if
12 the members joined at different times, or the
13 membership of the group changed. Similarly, just
14 because there were different subgroups operating in
15 different places or any different criminal acts
16 committed over a long period of time does not
17 necessarily mean that there was more than one
18 conspiracy. These are factors you may consider in
19 determining whether more than one conspiracy existed.
20       The crime of possession of cocaine
21 hydrochloride with intent to distribute as charged in
22 count two of the indictment has four essential
23 elements which are one, that on or about April 29,
24 2003 David Dejuan Wise was in possession of cocaine
25 hydrochloride; two, the defendant knew that he was in

Page 271

1 possession of cocaine hydrochloride; three, the
2 defendant intended to distribute the cocaine
3 hydrochloride to another person; and, four, that
4 defendant is responsible for at least five hundred
5 grams but less than two kilograms of the cocaine
6 hydrochloride.
7       If all of the essential elements have been
8 proved beyond a reasonable doubt as to the defendant,
9 then you must find the defendant guilty of the crime
10 charged under count two. Otherwise, you must find the
11 defendant not guilty of the crime charged under count
12 two. A person may also be found guilty of possession
13 of cocaine hydrochloride with intent to distribute
14 even if he personally did not do every act
15 constituting the offense charged if he aided and
16 abetted the offense as explained in instruction number
17 sixteen.
18       The crime of possession of cocaine base as
19 charged in count three of the indictment has two
20 essential elements. One, that on or about April 29,
21 2003, David Dejuan Wise was in possession of cocaine
22 base; and, two, that the defendant possessed or is
23 responsible for more than five but less than fifty
24 grams of cocaine base. If both of these essential
25 elements have been proved beyond a reasonable doubt as

Page 272

1 to the defendant, then you must find the defendant
2 guilty of the crime charged in count three.
3 Otherwise, you must find the defendant not guilty of
4 the crime charged in count three.
5       A person may also be found guilty of
6 possession of cocaine base even if he personally did
7 not do every act constituting the offense charged if
8 he aided and abetted the events as explained in
9 instruction number sixteen. The crime of distributing
10 cocaine base as charged in count five of the
11 indictment has three essential elements which are one,
12 that on or about November 26, 2002 a defendant
13 intentionally transferred cocaine base to another
14 individual or individuals; two, at the time of this
15 transfer the defendant knew that the substance was --
16 that the substance transferred was cocaine base; and,
17 three, that the defendant is responsible for more than
18 five but less than fifty grams of cocaine base.
19       If all of the essential elements had been
20 proved beyond a reasonable doubt as to either
21 defendant, then you must find that defendant guilty of
22 the crime charged in count five. Otherwise, you must
23 find that defendant not guilty of the crime charged in
24 count five.
25       A person may also be found guilty of

Page 273

1 distributing cocaine base even if he personally did
2 not do every act constituting the offense charged if
3 he aided and abetted the offense as explained in
4 instruction number sixteen. In order to have aided
5 and abetted the commission of a crime, the defendant
6 must one, have known that the crime charged was being
7 committed or was going to be committed; two, had
8 knowingly acted in some way for the purpose of aiding
9 such crime; and, three, had known the nature of the
10 substance which was distributed.
11       For you to find a defendant guilty of the
12 crime charged by reason of aiding or abetting, the
13 Government must prove beyond a reasonable doubt that
14 all of the essential elements of the crime charged
15 were committed by some person or persons, and that the
16 defendant aided and abetted the commission of that
17 crime.
18       To assist you in determining the quantity
19 you are advised that the following weight measurements
20 are equivalent. One ounce equals twenty-eight point
21 thirty-five grams. One pound equals four hundred
22 fifty-three point six grams. One pound equal point
23 four five three six kilograms. One pound equals
24 sixteen ounces. One kilogram equals one thousand
25 grams. And one gram equals one thousand milligrams.

Page 274

1  The law recognizes several kinds of
2  possession. A person may have actual possession or
3  constructive possession. A person may have sole or
4  joint possession. A person who knowingly has direct
5  physical control over a thing at a given time is then
6  in actual possession of it. A person who, although
7  not in actual possession, has both the power and the
8  intention at a given time to exercise dominion or
9  control over a thing, either directly or through
10  another person or persons, is then in constructive
11  possession of it.
12  If one person alone has actual or
13  constructive possession of the thing, possession is
14  sole. If two or more persons share actual or
15  constructive possession of the thing, possession is
16  joint.
17  Whenever the word possession has been used
18  in these instructions it includes actual as well as
19  constructive possession and also sole as well as joint
20  possession.
21  An act is done knowingly if it is done
22  voluntarily, intentionally and not because of mistake
23  or accident or other innocent reason. An act is done
24  willfully if done voluntarily and intentionally.
25  Intent rarely, if ever, can be proved by

Page 275

1  direct evidence. Intent is a mental process and it
2  therefore generally remains hidden within the mind
3  where it is conceived. While witnesses may see and
4  hear and thus be able to give direct evidence of what
5  a defendant does or fails to do, there can be no
6  eyewitness account of the state of mind with which the
7  acts were done or committed. Intent may, however, be
8  inferred from the words and acts of the defendant and
9  from the facts and circumstances surrounding his
10  conduct. But before that intent can be inferred from
11  such circumstantial evidence alone, it must be of such
12  character as to exclude every reasonable conclusion
13  except that the defendant had the required intent.
14  It is for you to determine from all the
15  facts and circumstances in evidence whether or not the
16  defendant committed the offense or offenses alleged
17  and whether at such time he had the intent required by
18  these instructions. If you have any reasonable doubt
19  with respect to either, you must find the defendant
20  not guilty.
21  In the trial of this case and in this charge
22  I have in no way attempted to express my opinion as to
23  who should prevail upon the issues submitted to you.
24  You must not construe any statement, action or ruling
25  on my part in the trial of this case as an indication

Page 276

1  of any opinion on my part respecting the proper course
2  of your verdict. During the course of a trial I
3  occasionally ask questions of a witness in order to
4  bring out facts not fully covered in the testimony.
5  Do not assume that I hold any opinion on the matters
6  to which the questions related. So regardless of what
7  I may have chosen to say, I must admonish you that you
8  are the sole judges of the facts, and your verdict
9  must respond to your own conclusions from the
10  evidence.
11  You must disregard entirely any personal
12  sympathy which you may have or feel for the
13  defendants. Likewise, however, you must entirely
14  disregard and be uninfluenced by any inclination
15  toward a personal prejudice against the defendants.
16  You must determine this case solely upon the evidence
17  before you and the law as now given you in this
18  charge.
19  You will have nothing whatever to do with
20  the punishment of the defendants in the case of their
21  conviction. Therefore, in determining their guilt or
22  innocence you have no right to take into consideration
23  what punishment, if any, they may or may not receive
24  in the event that they're convicted.
25  Will counsel approach the side bar.

Page 277

1  BENCH CONFERENCE:
2  THE COURT: Does the Government have any
3  other objection or exceptions to the instructions,
4  other than what were made during your instruction
5  conference?
6  MR. MINER: No objections, Your Honor.
7  THE COURT: Miss James?
8  MS. JAMES: As to that same question, no,
9  Your Honor.
10  MR. VAN HEEST: None, Your Honor. Although
11  I don't believe the Court had made instruction
12  twenty-five --
13  THE COURT: I did made that after this. All
14  right. You may return.
15  (Whereupon, the bench conference was
16  concluded.)
17  THE COURT: Upon retiring to the jury room,
18  you shall first select one of your number as
19  foreperson to preside over your deliberations and who
20  alone will sign the verdict forms. You will then
21  proceed immediately with your study and deliberations
22  of the case. In arriving at your verdict remember it
23  must be unanimous. Short of unanimity you cannot
24  consider that you have reached a verdict.
25  You will take with you two verdict forms

IN THE UNITED STATES DISTRICT COURT
FOR
THE MIDDLE DISTRICT OF ALABAMA

THE UNITED STATES
OF AMERICA

vs.                              CRIMINAL ACTION NO.
                                 2:04-CR-09-T

DAVID WISE,
LESLEY REESE

VOLUME IV OF IV
4th DAY OF:
JURY TRIAL PROCEEDINGS

* * * * * * * * * *

BEFORE:        The Hon. Lyle E. Strom

HEARD AT:      Montgomery, Alabama

HEARD ON:      March 17, 2005

APPEARANCES:   Matthew Miner, Esq.
               Joe Van Heest, Esq.
               Leslie Smith, Esq.
               Susan G. James, Esq.

GOVERNMENT
EXHIBIT

CASE
NO. 2:08CV17

EXHIBIT
NO.  F

## Page 182

1 satisfied with the Court's instructions on those.
2     THE COURT: All right. And the verdict
3 form, any objections?
4     MR. VAN HEEST: No.
5     MS. JAMES: None other than that previously
6 noted.
7     THE COURT: Okay. I'm going to give you
8 just a few minutes here, and then -- I'm going to try
9 to get this case argued and submitted to the jury this
10 afternoon. And then they can start their
11 deliberations in the morning.
12     So Mrs. Reader will not be here.
13     Do you want to -- Here's your book. You can
14 just come up here and retrieve it.
15     (Whereupon, a recess was taken.)
16     THE COURT: You may bring in the jury.
17     (Whereupon, the jury was escorted into the
18 courtroom.)
19     THE COURT: You may be seated.
20     It took a little longer to resolve some of
21 these questions on the instructions than I
22 anticipated, so I apologize for that delay but we're
23 now ready for the closing arguments in this case. It
24 really is my intention to, at the conclusion of the
25 arguments, to read the instructions to you. You'll

## Page 183

1 each receive a copy of those instructions so that this
2 case will be considered submitted to you this evening.
3 And I shouldn't say "this evening," this afternoon,
4 because it will be about five or five-fifteen when we
5 finish with the arguments and the instructions.
6     At that time I will advise you that you may
7 retire to the jury room. If you want to deliberate
8 for a while this evening, I will be willing to stay
9 here in order to answer any questions you might have
10 or to receive your verdict if that were to be reached
11 this evening. I will be advising you at that time
12 that you can recess until tomorrow morning and be here
13 at nine o'clock to commence your deliberations. If,
14 among yourselves, you want to start earlier than nine
15 o'clock, just advise me. I'm usually here by no later
16 than seven o'clock in the morning.
17     So I'm not expecting you to come at that
18 time, but it would be no imposition on me if you
19 wanted to come earlier than nine o'clock, is all that
20 I'm saying. Again, that's your option.
21     This is an important case. It's important
22 to both the Government and to the defendants. And I
23 have pushed the lawyers a little hard in this case in
24 order to be sure that we have completed it and got it
25 submitted to you. And I hope none of you draw any

## Page 184

1 conclusions or opinions about my feelings about this
2 case. The time schedule that we're on has compelled
3 me to be sometimes maybe a little harsh, and I haven't
4 meant to be that way, but ignore it if you observed
5 that. It's not their responsibility, that's my
6 responsibility.
7     Give this case the careful consideration
8 that you would any important matter in your life, and
9 that's what we're going to be asking you to do today.
10 The next stage are the closing arguments. I'm a time
11 keeper. I've placed the parties on some time limits
12 in this regard.
13     I do again want to remind you that what the
14 lawyers may say to you during the closing arguments is
15 not evidence. The evidence in this case is the
16 testimony you've heard from the witness stand and the
17 exhibits that have been received in evidence. So if
18 the lawyers were to say something in closing argument
19 that you don't think reflects the evidence, it's your
20 determination as to what the evidence shows, what the
21 facts are as determined by the evidence, not what the
22 lawyers say it is. But I do invite your careful
23 attention to what they have to say, because I believe
24 that it will aid and assist you in reaching a proper
25 verdict in this case.

## Page 185

1     I'm not sure who is going first. Are you,
2 Mr. Miner?
3     MR. MINER: Yes, Your Honor.
4     THE COURT: You may proceed.
5     MR. MINER: Thank you, Your Honor.
6     CLOSING ARGUMENTS:
7     MR. MINER: At the outset let me say that I
8 thank you for your attention to this case over the
9 past three days. I know there's been a lot of
10 witnesses and a lot of evidence, and I appreciate your
11 attention to all of those witnesses and evidence. And
12 as the judge said, this is an important case and I
13 thank you for having treated it as an important case.
14     At the outset of this case, in my opening
15 statement I told you this is a case about drug dealing
16 and that it's a case about two separate conspiracies.
17 I told that you it's a case about a ringleader of
18 those conspiracies. A man who would do whatever he
19 had to keep his hands from getting dirty with the
20 drugs or the evidence against him. The drugs that he
21 was using others to courier for him, to distribute for
22 him.
23     And like a ringleader in a circus, he stands
24 outside the ring and he lets other folks engage in all
25 the activities in the ring. He won't get in there.

United States of America v. David DeJuan Wise                                    July 13, 2005

Page 1

```
1                  IN THE UNITED STATES DISTRICT COURT

2                  FOR THE MIDDLE DISTRICT OF ALABAMA

3                         NORTHERN DIVISION

4

5    UNITED STATES OF AMERICA

6         vs.                        CASE NO:  2:04cr09-LES

7    DAVID DeJUAN WISE,

8           Defendant.

9

10

11

12                    *  *  *  *  *  *  *  *  *  *

13                   SENTENCING PROCEEDINGS

14                    *  *  *  *  *  *  *  *  *  *

15         BEFORE THE HONORABLE LYLE E. STROM, SENIOR UNITED

16   STATES DISTRICT JUDGE, at Montgomery, Alabama, on Wednesday,

17   July 13, 2005, commencing at 2:59 p.m.

18   APPEARANCES:

19   FOR THE GOVERNMENT:      Mr. Terry F. Moorer
                             Assistant United States Attorney
20                           OFFICE OF THE UNITED STATES ATTORNEY
                             One Court Square, Suite 201
21                           Montgomery, Alabama  36104

22   FOR THE DEFENDANT:      Ms. Susan Graham James, Attorney at Law
                             SUSAN G. JAMES & ASSOCIATES
23                           600 South McDonough Street
                             Montgomery, Alabama  36104

24

              Proceedings reported stenographically;
25               transcript produced by computer.
```

GOVERNMENT
EXHIBIT

CASE
NO. 2:08cv17

EXHIBIT
NO. G



2

1    (The following proceedings were heard before the Honorable
2    Lyle E. Strom, Senior United States District Judge, at
3    Montgomery, Alabama, on Wednesday, July 13, 2005,
4    commencing at 2:59 p.m.:)
5        THE COURT:  This is the matter of the United States of
6    America versus David DeJuan Wise, also known as Julio. It's
7    Criminal Number 2:04 Criminal 9-T.  The matter is before the
8    Court today for sentencing.  Would counsel for the government
9    enter his appearance, please.
10        MR. MOORER:  Yes, Your Honor.  Terry Moorer for the
11    United States.
12        THE COURT:  And Ms. James?
13        MS. JAMES:  Yes, sir.  Susan James on behalf of
14    Defendant Wise.
15        THE COURT:  On March 18th of 2005, a jury found the
16    defendant guilty of the crime charged in counts one, two, and
17    three of the superseding indictment.  Count one charged
18    conspiracy to distribute or possess with intent to distribute
19    powder cocaine.  Count two charged possession with intent to
20    distribute powder cocaine.  Both of those counts relate to the
21    same incident and the same amount of drugs, which I believe
22    amounted to 990 grams -- 990.1 grams of powder cocaine.  And
23    then count three charged possession of crack cocaine, and that
24    involved 22.1 grams of crack cocaine.
25        A revised presentence report has been prepared.  The

4

1    notes which I took during that time, and I have reviewed those.
2    Is anybody going to offer any evidence on any of these
3    objections?
4        MR. MOORER:  No, Your Honor.  I don't see any need to
5    offer anything beyond the trial itself.
6        THE COURT:  Ms. James?
7        MS. JAMES:  Judge, I guess my concern -- and maybe I
8    didn't word it as artfully as I should have -- was that there
9    was this -- this evidence.  I know what -- the jury found him
10    guilty, obviously, whether they believed he handed it to her or
11    whatever.  But you may recall Ms. Hooks testified concerning her
12    previous trial testimony, which we came to learn during the
13    trial was probably not true.
14        But there was the additional evidence that didn't come
15    before the jury but I think is appropriate for the Court to
16    consider for purposes of sentencing, and that was the letter
17    that we had obtained that Ms. Hooks had written.  And you
18    remember, you did this out of presence of the jury.  And you
19    allowed me to question her as to her letter wherein she said
20    that Wise had nothing to do -- in substance, Wise had nothing to
21    do with the crack cocaine; it actually belonged to a third
22    person by the name of Preacher.  Now, she had her lawyer present
23    in court.  And her lawyer consulted with her, and she did
24    exercise her Fifth Amendment privilege not to testify to that
25    based on overtones from the government that she was going to be

3

1    government has advised that they have no objections to the
2    report. The defendant has identified five objections. They
3    object to paragraphs one through 16, as I understand it, on the
4    basis that the defendant maintains that he is not guilty of the
5    crime charged.  And the number two objection is to paragraphs
6    13, 14, and 15, and this relates to whether or not in the
7    vehicle immediately prior to the arrest Mr. Wise handed I think
8    it was Joanna Hooks a small plastic bag containing crack
9    cocaine.  And they object to paragraphs 22 and 27 with respect
10    to calculating the base offense level.  And again, this is on
11    the basis that he denies involvement with crack or powder
12    cocaine.  The fourth objection relates to a role in the offense
13    and objects to the two-level role enhancement claiming that he
14    was not a leader but that Hooks was the leader.  And they object
15    to paragraphs 29 and 27, which relate to the career enhancement
16    based upon the two prior drug convictions of the defendant.
17        It seems to me that with respect to paragraphs one
18    through 16 and paragraph 22, both are premised on the defendant
19    denying his guilt.  Do you wish to offer any argument on that,
20    or are you preserving your record, primarily?
21        MS. JAMES:  Just preserving my record, Your Honor.
22        THE COURT:  Those objections will be overruled. Let's
23    take up -- let's see -- 13 and 14 and 15. Is there any --
24    other -- I take it that as far as the parties are concerned -- I
25    don't have a transcript of the trial testimony, but I have the

5

1    in a quandary of committing perjury.  And I think you so advised
2    that that might present a problem.
3        So just to balance it, I wanted to at least draw the
4    Court's attention to that by way of my objection.  I don't think
5    that we can change what the jury found, but I do think that it's
6    important for the Court simply to recall that there was that
7    competing evidence.
8        THE COURT:  Well, I do.  And, of course, that's a
9    matter of the record also before the Court.  I guess the role
10    enhancement -- and that, again, depends upon I guess whom you
11    believe, whether he was the one that appeared to be in charge of
12    this entire transaction or whether Mr. Hooks was the person who
13    was in charge of the transaction.
14        MS. JAMES:  Right.  And Judge, I know you paid very
15    close attention to the trial.  I thought --
16        THE COURT:  But remember, it was more than two days
17    ago.
18        MS. JAMES:  Yeah.  It was a little while back.  But in
19    this case, there was evidence that we introduced during the
20    course of the trial that Tonney Hooks had previously signed a
21    sworn statement.  Now, the government did cross-examine him
22    fairly thoroughly on that -- that he had signed wherein he
23    indicated that Wise and his sister, Joanna, had nothing to do
24    with any of this.  That's one part of my -- the information I
25    would like the Court to consider when deciding whether to impose

6

1  the role enhancement.
2       The other thing, Judge, is that Wise -- the Court had
3  determined that Wise -- well, based on the evaluation done by
4  the Bureau of Prisons, that he was competent to stand trial.
5  And my request to present an affirmative defense of mental
6  defect or disease or whatever was --
7       THE COURT:  Rejected.
8       MS. JAMES:  -- rejected; but nevertheless, the Court
9  can consider it at sentencing.  And Mr. Wise -- there have been
10 suggestions of malingering and various things, but there is also
11 evidence in the record and even, I would say, noted by Probation
12 today, that Mr. Wise should -- in their recommendation, that he
13 should participate in mental health counseling while
14 incarcerated.
15      You haven't had an opportunity to interact with him
16 because, obviously, he didn't testify.  And other than just
17 having him stand up and things of that nature, I don't know that
18 you've communicated with him.  But I have -- and I believe
19 Probation is aware of it, that there is -- there are a couple of
20 mental health diagnoses that have been assigned to him save this
21 whole competency issue.  I mean he could have schizophrenia, as
22 he indicates that he does.  He's had mental health counseling
23 during the pendency of this litigation and other incidents that
24 have been involved -- or he's been involved in that don't --
25 they're not mutually exclusive of competency, I mean the fact

8

1       MS. JAMES:  Right.  But I --
2       THE COURT:  -- carrying -- holding the black bag in the
3  ticket line to buy a ticket.
4       MS. JAMES:  Judge, I thought -- and I could be wrong.
5  I thought that the evidence was that he was standing -- I don't
6  think there was any -- any suggestion that he wasn't the one
7  standing in the line.  I may be a bit confused, but there was
8  some evidence about them maybe even having a ticket.  Well, I
9  think there was an airline ticket on the way out and then the
10 bus ticket on the way back.  And if you may recall when I was
11 examining Agent Whittle, you know, I made an inquiry of why
12 don't we have the ticket on Wise.  You know, we had the Tonney
13 Hooks ticket on the bus.  We had the Tonney Hooks ticket on the
14 plane, but we didn't have the David Wise ticket.
15      And I think also telling here, Judge, of the
16 unreliability, perhaps, of Mr. Hooks, even in paragraph 13 of
17 the presentence report there is a reference -- this is where the
18 probation officer responds.  This is in the addendum, Judge, I
19 believe, where the probation officer responds to my objection
20 about the role enhancement.  And the probation officer says
21 Hooks said Wise directed -- directed him.
22      THE COURT:  In what paragraph?  In paragraph 13?
23      MS. JAMES:  Wait just a minute, Judge.  I may have
24 written it down wrong.  Yeah.  It's objection number four.
25      THE COURT:  Oh, I'm on the wrong objection.  Okay.

7

1  that he has been determined one who can understand legal
2  proceedings and those kinds of things.
3       But I would suggest to you that based on this mental
4  capacity and the evidence as we understand it -- because you've
5  got to rely on Tonney Hooks, basically, and the government's
6  closing argument to say that Mr. Wise was, quote, the big guy.
7  I mean we had speculation testimony based on experience from the
8  officers in Texas that said, oh, we are skilled in this.  We
9  watch these people as they come through.  We saw him -- and I
10 don't remember their term; but they said, you know, he looked
11 like the guy that was leading it, because they typically kind of
12 try to get away from the crowd; and then the mule, you know, is
13 separated.  And they said, you know, there was some separation.
14 They didn't sit together on the bus.  But none of that
15 necessarily says that it was Wise.  If you believe the evidence
16 that the government presented in the light most favorable, there
17 was no real evidence, other than Tonney Hooks saying he sent me,
18 you know, as stated in the presentence --
19      THE COURT:  Of course, he -- Mr. Wise bought the
20 ticket, too.  I mean that's evidence that he's sort of --
21      MS. JAMES:  Well, the tickets were -- that was based on
22 Tonney Hooks, Judge.  And my recollection --
23      THE COURT:  I think that there was testimony, as I look
24 at it here, from one of the officers that saw him standing in
25 line --

9

1       MS. JAMES:  In the addendum, objection number four,
2  paragraph 13.  The probation officer --
3       THE COURT:  All right.  When you said 13, I was
4  thinking you were referencing paragraph 13 of the presentence
5  report.
6       MS. JAMES:  No, sir.  I apologize.
7       THE COURT:  Go ahead.
8       MS. JAMES:  It was in the addendum.  But basically,
9  here the probation officer says Tonney Hooks reported to the
10 police that the defendant instructed him to go to Texas to buy
11 drugs and made arrangements for drug purchases.  The defendant
12 also accompanied Hooks on these trips and was the purchasing
13 agent.
14      I don't recall from Hooks' testimony -- in fact, what I
15 remember fairly vividly from Hooks' testimony was, you know, he
16 talked about going to the mall.  You remember he was dropped off
17 at the mall one time --
18      THE COURT:  Well, he was given money to buy clothes.
19      MS. JAMES:  That's what he said.  Right.  But, you
20 know, I grilled him pretty intensely about, well, did you see
21 these people?  I mean can you give us a motel?  Did you see
22 them?  Did you talk to them?  Did you recognize them?  And he
23 couldn't tell us anything about that.  So I don't see, you know,
24 given that response, that he was taking instructions from David
25 Wise to go do any of these various things, because I mean this



United States of America v. David DeJuan Wise                    July 13, 2005

**10**

1  man didn't even have any -- any knowledge. I mean he gave us no
2  descriptions, which I think I argued to the jury that was a
3  little bit unbelievable if he was there in hand and in league
4  with Mr. Wise in these alleged transactions, that he wouldn't
5  have had more information.
6      I just simply think, Judge -- and I don't want to just
7  go on about this; but I just don't think that the evidence is
8  reliable enough based on what we have, because we have an arrest
9  as opposed to a long-term conspiracy investigation. I mean we
10  have a bus station stop, and then the case evolves from there
11  with Tonney Hooks becoming a cooperating defendant. I simply
12  think it's too tenuous to say -- with these facts to say that
13  David Wise was, quote, a manager, an organizer, or a leader.
14      THE COURT: And then finally, the objection that
15  relates to the career offender classification under the
16  guidelines.
17      MS. JAMES: And Judge, you know, now with the new
18  discretion post Booker, some of these objections that I'm making
19  now and in other cases are -- I'm making them because I don't
20  want -- for my record. But my argument as to the career
21  offender is probably more appropriately made after the Court
22  makes its findings. And the reason being is I realize the
23  way -- and I haven't done a sentencing with you post Booker, but
24  the way we've been doing it is the Court goes through, makes the
25  guidelines findings, and determines what the base offense level

United States of America v. David DeJuan Wise                    July 13, 2005

**11**

1  is and the criminal history score and then makes the decision
2  are you going to go with the guidelines or you're not going to
3  go with the guidelines. I don't have any evidence to contradict
4  the fact that he has two prior drug convictions that would --
5  that would not make him eligible for career offender.
6      THE COURT: Under the guidelines.
7      MS. JAMES: Under the guidelines. Don't have that. I
8  didn't dispute the arrests and convictions that were noted in
9  the presentence report. Further, there would be nothing
10  incorrect that I've noted with regard to the base level 37,
11  criminal history score of VI. I mean that's not misfigured
12  either. So while I object to it, if we didn't have post Booker
13  discretion, I would go ahead and make my argument like I've
14  always made it for 20 years. But because we now have that
15  discretion --
16      THE COURT: And probably not with a lot of success.
17      MS. JAMES: Right. But I would prefer to have a list
18  of things that I want the Court to consider as to why that
19  overrepresents the conduct in this case, which I think is part
20  two of the process.
21      THE COURT: I have no problem with that procedure.
22  Oh. Before we end this discussion from your
23  standpoint, Mr. Wise, have you received a copy of this revised
24  presentence report?
25      THE DEFENDANT: Yes, sir.

United States of America v. David DeJuan Wise                    July 13, 2005

**12**

1      THE COURT: And have you had the chance to read it and
2  to discuss it with Ms. James?
3      THE DEFENDANT: I read it, but I haven't had a chance
4  to discuss it with --
5      MS. JAMES: I've been out of town since he came in,
6  Judge.
7      THE COURT: Are you satisfied you understand the
8  contents of the report?
9      THE DEFENDANT: Am I satisfied?
10      THE COURT: Yes. Do you understand what's in the
11  report?
12      THE DEFENDANT: Yes.
13  (Off-the-record discussion)
14      THE DEFENDANT: Yes, Your Honor.
15      THE COURT: All I'm trying to do, you heard the
16  objections that she has made to the revised presentence report.
17      THE DEFENDANT: Yes, sir.
18      THE COURT: You've heard those here at least today; is
19  that correct?
20      THE DEFENDANT: Yes, sir.
21      THE COURT: Do you have any other objections to the
22  report other than the ones that she's raised?
23      THE DEFENDANT: No, sir.
24      THE COURT: You may be seated.
25  Well, Mr. Moorer, do you want to respond to all this?

United States of America v. David DeJuan Wise                    July 13, 2005

**13**

1      MR. MOORER: Yes, Your Honor. As it pertains --
2      THE COURT: Mr. Miner tried this case.
3      MR. MOORER: Yes, Your Honor. He's no longer with our
4  office. On the role in the offense argument, Your Honor, I
5  would simply call my agent to testify in that regard to bring
6  out some facts that I think need to be put on the record.
7      THE COURT: All right. I thought you said you weren't
8  going to have any evidence.
9      MR. MOORER: Your Honor, in going through her
10  objections, I thought that was probably the best way for us to
11  handle that one. I apologize. I don't think I will have any
12  other testimony to present.
13      THE COURT: You may swear the witness.
14      THE CLERK: Would you state your name and spell your
15  last name, please.
16      THE WITNESS: Devin Whittle. D-E-V-I-N, W-H-I-T-T-L-E
17  (The witness is sworn)
18      THE CLERK: Thank you.
19      DEVIN WHITTLE, the witness, having been duly sworn,
20  testified, as follows:
21          DIRECT EXAMINATION
22  BY MR. MOORER:
23  Q. For the record --
24      THE COURT: Go up to the microphone, Mr. Moorer.
25  Q. For the record, would you state your name, please?





14

1  A. Devin Whittle.
2  Q. And what do you do for a living?
3  A. I'm a special agent with the Department of Justice, the Drug
4  Enforcement Administration.
5  Q. Agent Whittle, the Court is considering, among other issues,
6  the defendant's role in the offense today. During the course of
7  the investigation, did you develop information concerning the
8  role the defendant played in the offenses for which he was
9  convicted at the jury trial?
10 A. Yes, I did. Your Honor, during the interview of Tonney
11 Hooks the day he was arrested, he indicated that Mr. Wise had
12 basically put him up to bringing this -- the drugs back from
13 Houston, that Mr. Wise had paid for his plane ticket to go to
14 Houston. There was an indication during the course of the
15 investigation that Mr. Hooks had no money at the time on hand
16 and Mr. Wise carried all of the money out to Houston. There was
17 a motel room purchased out there by Mr. Wise. There was a
18 shopping spree that Mr. Hooks went on that was paid for by
19 Mr. Wise. After they left the motel room and went to the bus
20 station, Mr. Wise purchased the bus tickets. Mr. Hooks was then
21 in possession of a book bag that he told me belonged to
22 Mr. Wise. That was the book bag containing the cocaine that was
23 found in Mr. Hooks' possession.
24 Q. Now, did you have any contact with the defendant via any
25 third parties in regards to setting up a drug transaction?

16

1  informant make two undercover calls to Mr. Wise. A drug
2  transaction was set up. Mr. Wise agreed over the telephone in a
3  taped conversation to a meeting location where that buy would
4  take place. And instead of Mr. Wise showing up at that location
5  to do the drug transaction, Mr. Reese and Mr. Zeigler showed up
6  at that location and conducted the transaction, drug
7  transaction, for the specified amount that was agreed to with
8  Mr. Wise. And then those two individuals were later arrested
9  after -- after a short chase; again, an indication that Mr. Wise
10 was separating himself from the drugs and he was directing other
11 people to do things in a position where he would not be caught
12 but they would.
13       THE COURT: At least the jury didn't accept that.
14       THE WITNESS: Yes. That's correct.
15       MR. MOORER: I have no further questions, Your Honor.
16       THE COURT: Anything, Ms. James?
17       MS. JAMES: Judge, just a couple things, since we're
18 making a record here.
19             CROSS-EXAMINATION
20 BY MS. JAMES:
21 Q. Agent Whittle, the bulk of what you've testified here today
22 about Mr. Wise and his activities came from Mr. Hooks' statement
23 to you, did it not?
24 A. Yes, ma'am, that's correct.
25 Q. I mean I guess with the exception of your agents in Texas

15

1  A. There was a -- there was another event during the course of
2  this trial where Mr. -- where the Prattville Police Department
3  conducted an investigation. Is that the --
4  Q. Yes. That's what I'm referring to.
5       MS. JAMES: Your Honor, I would object to that. The
6  jury found him not guilty on the two counts that he's about to
7  describe. And I think post Blakely and post Booker, it would be
8  inappropriate, even at a sentencing, for the Court to consider
9  acquitted conduct in any fashion in determining the sentence in
10 this case.
11       THE COURT: Mr. Moorer?
12       MR. MOORER: Your Honor, the law has long been that a
13 judge can consider anything in considering what sentence to
14 fashion, even which --
15       THE COURT: I'm going to let you develop the evidence.
16 My practice generally is that if the defendant has been found
17 not guilty by a jury, I ought not to override that and rely on
18 that particular crime as the basis for anything, but I'll let
19 you make your record on it.
20       MR. MOORER: Yes, sir.
21 Q. (Mr. Moorer, continuing:) Will you briefly state how that
22 transaction took place?
23 A. Yes, sir. Your Honor, I believe it was in November of 2002,
24 the Prattville Police Department was conducting investigation
25 into Mr. Wise's drug activities. They had a confidential

17

1  saying that they saw Mr. Wise up at the ticket counter to buy
2  the ticket, everything else was pretty much what Tonney Hooks
3  told you about what they did, right?
4  A. That's right. And those -- that trip on the airplane and
5  that trip on the bus was supported by bus tickets that Mr. Hooks
6  had in his possession.
7  Q. Okay. But with regard to who paid for them -- I mean other
8  than him having the copy of the ticket, you don't know who paid
9  for them other than what you told you.
10 A. That's correct.
11 Q. And the same thing would be true with regard to the airline
12 ticket, correct?
13 A. That's correct.
14 Q. And also with regard to the shopping spree, that was
15 information provided by Mr. Hooks, right?
16 A. Yes.
17 Q. And with regard to the motel that you say was paid for by
18 Mr. Wise, that information came to you from Mr. Hooks also,
19 right?
20 A. Yes, it did.
21 Q. And I know the Court will recall, but just for the record,
22 when Mr. Hooks was apprehended along with Mr. Wise at the bus
23 station, it was Mr. Hooks who was in possession of close to a
24 kilo of cocaine.
25 A. That's correct.

**18**

1  Q. And the --
2      THE COURT: Is my recollection wrong? Was that cocaine
3  distributed part in the black bag and part in the black bag --
4  or the book bag?
5      MS. JAMES: No.
6      THE WITNESS: No.
7      THE COURT: It was all in the book bag?
8      THE WITNESS: All the powder cocaine was in the book
9  bag.
10     THE COURT: In the white socks.
11     THE WITNESS: Yes.
12     MS. JAMES: I have no further questions of this
13  witness.
14     THE COURT: I think this is pretty much -- do you have
15  any redirect?
16     MR. MOORER: No, Your Honor.
17     THE COURT: This pretty much covers what I heard at the
18  trial. You may be excused.
19     Anything else, Mr. Moorer, that you care -- and any
20  response you wish to make? I've overruled the objection -- the
21  number one and number three objection. Number 13, 14, and 15 --
22     MR. MOORER: Your Honor --
23     THE COURT: -- related to the transfer of the drugs
24  from Ms. Hooks to Mr. Wise.
25     MR. MOORER: Right. Actually, I think in large part

**19**

1  since there is no issue about the fact that he would be a career
2  offender under the guidelines and in light of the jury verdict
3  on his guilt to counts one, two, and three of the indictment, I
4  think that really kind of subsumes those objections, because the
5  verdicts indicate that they did not believe the version or the
6  take on it that Ms. James has.
7      THE COURT: Well, I'm inclined to agree. In reviewing
8  these -- and I went back and reviewed all my notes. I think the
9  issue -- as far as these objections are noted, I'm going to
10  overrule them and deny them. I think what we get to is, now
11  that the guidelines are no longer binding upon the Court but are
12  merely advisory and since the career offender provisions are
13  only a part of the guidelines, I think the argument of defendant
14  goes to how the Court should handle that and whether I should
15  fashion the sentence other than as reflected in the presentence
16  investigation report and in the proposed sentence, as set
17  forth.
18     So let me proceed with my findings now that I've
19  resolved the objections. The Court now adopts the revised
20  presentence report and the facts set forth therein as findings
21  for purposes of sentencing. And obviously, I've had the benefit
22  of having heard the trial testimony. And while I didn't have a
23  transcript, I did have a chance to review all my notes.
24     Under the -- starting out, as I've noted, the 990.1
25  grams of powder cocaine constitute the basis for both count one

**20**

1  and count two. In fashioning a presentence investigation report
2  in this matter, the drugs, when taken just -- or Probation has
3  taken just the drugs that were discovered on the date of their
4  arrest, 990.1 grams of powder cocaine, the 22.1 grams of crack
5  cocaine, and then converted them under the guidelines to
6  marijuana, which resulted in a base offense level of 28. To
7  that, there's then added the adjustment for the role in the
8  offense, which is two offense levels, resulting in an adjusted
9  offense level of 30. And his prior history was calculated as
10  only -- I know it comes out as a criminal history category of
11  III based on a criminal history score of six points. And this
12  would convert to a sentence range of 121 to 151 months.
13     However, if you apply the provisions of Section 4B, I
14  believe it is, Section 4B1.1, noting the two prior drug
15  convictions of the defendant, his offense level is converted to
16  a 37 and his criminal history category is converted to a level
17  VI. And under the guidelines, this would result in a sentence
18  of 360 months to life imprisonment.
19     Count -- if we go back to the guidelines, for counts
20  one and two, because he had a prior drug conviction under Title
21  21, United States Code, Section 841(d), the statutory sentence
22  for each of those two convictions is ten years to life. The 121
23  to 151 months, of course, falls within that. The conviction
24  under count three results in the statutory penalty of five to 20
25  years, but these would all be lumped together in one sentence.

**21**

1  He would be sentenced cumulatively on the three using the
2  guidelines. So it's either 121 to 151 months, or it's 360
3  months to life. He's facing under the guidelines a term of
4  supervised release of not less than eight years and under count
5  three, not more than -- or -- yes, not more than three years.
6  The fine range is 20,000 to 8 million. And is that based on
7  level 37? A level 30 would be 15,000, and I think the 8 million
8  still applies, because I believe that's under the statute. And
9  on the 37, it's 20,000 to 8 million. And then he's subject to a
10  special assessment of $300. Those are the guideline findings of
11  the Court.
12     So before we proceed with sentencing in this matter,
13  I'm going to hear from both the government and the defense and
14  from the defendant with respect to an appropriate sentence.
15  Those are the guidelines. The guidelines are advisory under
16  Booker. The Court is required to apply the factors set forth in
17  Title 18, United States Code, Section 3553(a). (b)(1), the one
18  I referred to, has been declared unconstitutional, so it doesn't
19  apply at all in determining this sentence.
20     And so I'll start with you, Mr. Moorer.
21     MR. MOORER: Your Honor, you sat through the trial.
22  And the guidelines range is 30 years to life. And I don't think
23  that there is really any more argument that can be added to the
24  seriousness of the conduct that the defendant was engaged in.
25  He does have the two prior drug convictions, which indicate that



22

1   he is not an individual who has learned from his previous
2   encounters with the law.  And we would leave it to the Court to
3   decide where within that guidelines range to sentence the
4   defendant.  But it's very serious behavior --
5        THE COURT:  I take it that it's the position of the
6   United States that he should be sentenced within the range
7   that's provided for by applying the United States Sentencing
8   Guidelines?
9        MR. MOORER:  Yes, Your Honor.
10       THE COURT:  What's the -- if a young man in Alabama
11   commits a murder for which he doesn't receive capital
12   punishment, what's the average sentence that he serves?  Do you
13   know?
14       MR. MOORER:  I do not know, Your Honor.  Ms. James
15   could probably tell you, because she's practiced in the state
16   system more so than I.
17       THE COURT:  I imagine it's less than 360 months.
18       MR. MOORER:  Your Honor, our -- I do know that our
19   murder statute is somewhat different than the common law
20   situation.  Quite a few of the murder convictions that we would
21   get would be a capital-type conviction.  Now --
22       THE COURT:  Where they are sentenced to death, you
23   mean?
24       MR. MOORER:  Or they face that possibility, anyway.
25   But I cannot tell you.

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

24

1   with you.  I've been on the bad side of that, and you've got
2   some that they make serve more than that.  But they don't
3   consider them until 15 years.  And that's been sentenced --
4        THE COURT:  And they have to then -- the parole
5   commission then has to convert the life sentence to a term of
6   years, and then a parole program is set up for the defendant?
7        MS. JAMES:  Well, they still remain under parole.
8   Let's assume they get a life sentence and the board decides in a
9   case to let them go in 15 years.
10       THE COURT:  Oh, they could let them go in 15 years.
11       MS. JAMES:  Right.  They could let them go.  They could
12   let them go in less than that if they want to.  There is not a
13   requirement that they serve a mandatory 15, but I'm just telling
14   you that in practice.  And procedurally, they set it up for
15   crimes after March of 2001.
16       THE COURT:  I don't know if that has any merit at all,
17   Mr. Moorer, but that's one of the things that bothers me.  You
18   know, I have to sentence young men in Nebraska to 20 years and
19   30 years in prison for a drug crime; and if they had committed
20   second-degree murder in Nebraska, they probably would be out in
21   ten to 12 years.  And it seems to me there's a real imbalance in
22   our whole system.  And I can't balance the federal system with
23   the state system.  I don't have that -- the power to do that.
24   It just -- all it does is it just sort of highlights that we've
25   got an awful lot of disparity in sentencing in this country, and

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

23

1        MS. JAMES:  I can speak to that when he --
2        THE COURT:  Yes.  Why don't you.
3        MS. JAMES:  When he finishes or now?
4        MR. MOORER:  That's fine.
5        THE COURT:  I think Mr. Moorer is finished.
6        MR. MOORER:  Yes.
7        THE COURT:  Proceed.
8        MS. JAMES:  Judge, just in response to that question, I
9   do practice in the state court.  And in all candor, there are a
10   number of people that are convicted to murder, young men, that
11   do receive life sentences.  And that is contingent, oftentimes,
12   on the nature of the crime as well as the degree of the crime.
13   I mean we have intentional murder.  We have reckless murder.  We
14   have a number of different things.  But I will tell you that
15   these are all people that are eligible for parole unless they
16   receive life without or death, which is the capital murder type
17   cases.  The other run-of-the-mill murders are parole-able.
18       THE COURT:  How much time do they serve generally?
19       MS. JAMES:  They're -- in March of 2001, they changed
20   their rules.  And they now require before a parole review --
21   it's not mandatory, but typically, they require in a murder case
22   that a man serve at least 15 years.
23       THE COURT:  That's pretty much the same as it is in
24   Nebraska.
25       MS. JAMES:  Now, I'm not telling you -- I'll be honest

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

25

1   the guidelines are never going to solve that problem, either
2   federally or otherwise.  I think that's just inherent in the
3   entire system of criminal justice.  You are going to have
4   disparity in sentencing.  But go ahead.  I'll hear from you.
5        MS. JAMES:  Well, obviously, Judge, your observations
6   with regard to disparity are the same observations that I've had
7   for years.  And we have those same disparities in the federal
8   system if you just look at the federal system because, you know,
9   obviously, if Mr. Wise had decided to cooperate with the
10   government, he would be looked at by the government and likely
11   by the Court in a much more favorable and lenient fashion,
12   despite the fact that he has the two prior drug convictions and
13   despite the fact that he has the present --
14       THE COURT:  You would have negotiated much of that, I'm
15   sure.
16       MS. JAMES:  Right.  But in this particular case, at the
17   risk of -- I'm going to say this; and if you give him 30 years,
18   then I'm going to probably wish I didn't.  But really, I've got
19   a chance to say it.  I mean in my opinion, I think a 30-year
20   sentence would be ridiculous in this case.  I think that it
21   would overstate the seriousness of his criminal history and the
22   crime that's at issue here.  And I've got various reasons for
23   that.
24       First and foremost, he's being put into a career
25   offender posture based on two prior convictions.  One happened,

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405





26

1  as you know from the presentence report, in 1996. Five rocks of
2  crack cocaine; he got a hundred -- $180 worth. He received a
3  reverse sentence, a reverse flip sentence. In other words, be a
4  good boy; we'll put you on probation after the fact. Then in
5  the year 2000, which was four years later, in Elmore County,
6  which is an adjacent county, he received a 15-year split
7  sentence for .9 grams of cocaine. Now --
8        THE COURT: Did he plead to both of those or did he go
9  to trial?
10       MS. JAMES: He pled.
11       THE COURT: He pled.
12       MS. JAMES: He did plead. He pled to both of those.
13  Served three --
14       THE COURT: He didn't learn his lesson, did he?
15       MS. JAMES: Well, no. And -- well, I'm not saying that
16  he's guilty. But if you accept the jury verdict and evidence,
17  then yes. But, you know, I go and advocate -- it's like being
18  schizophrenic myself. I mean I advocate in state court you slap
19  them on the wrist; and then I have to come in here and say,
20  well, the state system, if they had slapped him hard the first
21  time, we wouldn't be here, which is -- you know, it's one of
22  those --
23       THE COURT: There's a lot of merit to that.
24       MS. JAMES: Well --
25       THE COURT: I think if the sentences in state court

27

1  were more meaningful than they are, that it would alert these
2  people to the fact that they are facing substantial sentences
3  for this crime. And I can't believe today, for example,
4  Ms. James, that young people out there involved in the drug
5  craze don't realize that if they get charged in federal court,
6  they are facing a very severe and serious sentence.
7        MS. JAMES: Well, Judge, some of them do. The smarter
8  ones do, because -- and I've represented folks that have brought
9  in barge loads of marijuana and airplanes full of cocaine. And
10  I see a change in that, in that quantities are smaller. Risks
11  are greater, because there are more trips. But I think the
12  upper echelon has given a lot of thought to that, and I think
13  that they have adjusted their business practices accordingly.
14  Contrary to that, you have young -- and I'm -- you know,
15  primarily young black men in our community that are charged with
16  selling rocks of crack cocaine. And I mean with five rocks of
17  crack cocaine, you're not making a whole lot if you're the guy
18  selling it on the street; now, maybe the guy that's breaking it
19  down and doing a lot more.
20       But in the overall scheme of life, Judge, those two
21  prior convictions, while serious, if you look at it and say if
22  he did this crime, he didn't learn by the first two, but in the
23  overall scheme of things, they're not real serious, long-going,
24  ongoing drug distributions.
25       And here's why I think the Court shouldn't -- if it

28

1  goes like it's suggested in the presentence report, the Court
2  will actually be considering those two prior offenses twice.
3  Now, I'm not telling you I can fashion that necessarily into a
4  double-counting argument, but --
5        THE COURT: How am I considering them twice?
6        MS. JAMES: Well, we bumped up from a five-year minimum
7  to a ten-year on each count because of the priors, prior -- the
8  priors.
9        THE COURT: Well, one -- it only takes one prior.
10       MS. JAMES: Right. One prior. One prior, we bumped up
11  to a minimum ten, okay? Those same priors are being used -- in
12  other words, with the discretion that the Court has, I would be
13  in here, absent the prior convictions, saying, Judge, you know,
14  you should give him five years because that's the least you can
15  give him. But now, because of the prior convictions, the least
16  you can give him, regardless of what you want to do, is ten.
17       Now, those same prior convictions are being considered
18  additionally -- not only statutorily -- that's where we are
19  now -- but they're also being considered under the guidelines
20  wherein he would have been at a base level of 30, criminal
21  history score of III, but for those two prior convictions. So
22  those two prior convictions bump him into this level 37, take
23  his criminal history score from a III to a VI. So I think
24  that -- not that I can fashion a, quote, double-counting
25  argument like we used to make in the old days when the

29

1  guidelines were mandatory, but I do think it's in the family of
2  double counting. I think that that is a mitigating factor
3  because he's been increased 15 months statutorily based on the
4  same thing that he's being enhanced seven levels -- base levels
5  and three criminal history levels to a level VI.
6        I'd also point out, Judge, that in this case, we have
7  Tonney Hooks, who immediately became a cooperating defendant.
8  And he is pretty much the bulk of -- I mean other than they get
9  caught there and they get caught with the drugs. But there's
10  nothing to suggest that when Mr. Hooks was pointing the finger
11  at Mr. Wise, he's the man, he's the man, he's the man, that
12  Mr. Hooks was not trying to protect Preacher. I mean Preacher
13  is the man that his sister was apparently involved with who was
14  the alleged source of crack cocaine that Ms. Hooks stated. I
15  think that that is a possibility.
16       But I think in this case what -- what you're being
17  asked to do is to give him a 30-year sentence for involvement
18  with less than a kilogram of powder cocaine. We don't know -- a
19  lot of cases, you've got a road map, Judge. You know what these
20  guys have been doing, because they've got wiretaps. You know
21  that these guys have been doing, because you've had undercover
22  officers involved. We don't know, based on what this case is
23  with regard to the evidence, what was going to happen with that
24  powder cocaine. Now, I think it's logical and fair to assume
25  that it was going to be distributed in some form of fashion, but

30

1  it's possible that that was being brought here for someone else
2  other than Mr. Wise. And Mr. Wise didn't testify -- and I think
3  that was a wise decision that he didn't testify -- but, you
4  know, you're having to put all this store in Tonney Hooks --
5        THE COURT: He was either going to distribute it to a
6  number of people or to one person.
7        MS. JAMES: Right. And I'm not -- I'm not denying
8  that, you know, a kilogram would suggest that you're probably
9  not going to be able to take it home and use it all anytime real
10  soon. But nevertheless, I think that the quantity of cocaine
11  here is something -- should cause some concern, but I don't
12  think it's enough to warrant 30 years in prison. And I don't
13  think that the two prior convictions support a sentence of 30
14  years. Because even with good time, even with the halfway
15  house, even with the drug program, which he probably would not
16  get, you're talking about a young man serving an awful long,
17  long time in prison.
18        And I appreciate the Court's position that you don't
19  normally consider acquitted conduct. But I would say in this
20  case, Judge, just to touch on that briefly, because they did
21  make a record with regard to this conduct that he was -- the
22  conduct that he was acquitted on. Although the government
23  didn't bring the informant, the other defendant in the case
24  brought the informant to testify that this was Mr. Wise on the
25  tape and this was Mr. Wise that did this and this was Mr. Wise

32

1  cooperated, he said this guy did this or this guy did that, I
2  don't think that that totally wipes out disparity.
3        THE COURT: No, but you have to throw into that mix
4  also the prior criminal history. That has a substantial effect,
5  as we know, particularly if there are crimes of violence or, as
6  in this case, two prior drug convictions. That changes the
7  whole geometry of the situation.
8        MS. JAMES: Except, Judge, you do get a criminal
9  history score of III. I mean you've got a criminal history
10  score of III based on that. Now, let's look at it this way.
11  You asked the question about murder. But let's say these two
12  prior drug convictions, one in '96 and one in 2000, had been for
13  his involvement with 25 kilograms of cocaine coming into the
14  Montgomery airport and 25 -- or five kilos of crack cocaine
15  coming in by bus from Chicago.
16        THE COURT: Same effect.
17        MS. JAMES: Same effect. As opposed to $180 worth and
18  opposed to nine grams. And so I think that where -- and thank
19  goodness that we can do this now -- is that we can ask the Court
20  with some genuine hope that the Court might do it to really kind
21  of balance it out and see it for what it is. And that is that
22  while he deserves to be penalized based on a criminal history
23  score of III, if you gave him ten years, Judge, which is the
24  least you can do, I think it satisfies the purposes of
25  punishment and accountability. It sends the right message. And

31

1  that did that. So I mean, we didn't have to speculate. I mean
2  the man that said it was on the stand, albeit not brought by the
3  government, but brought by the codefendant. And for whatever
4  reason, the jury didn't believe him. They didn't believe that
5  David Wise was, quote, even, I guess, involved.
6        Now, with regard to how do you reconcile -- because
7  I've thought about this -- they let him go on that, with this
8  guy sitting there saying he did it, he did it, he did it, and
9  they don't let him go on the other. And in kind of retrospect,
10  you know, I can see how a jury could say, well, you know, they
11  were both there. I mean the jury didn't have to make the role
12  finding. The jury didn't have to make any finding other than he
13  was there, he was with him, they had been to Texas together,
14  they had come back with a kilo; they're both involved.
15        I don't know what sentence Mr. Hooks has received. I'm
16  not sure if Your Honor sentenced him or not. But I would think
17  based on the sentence that Mr. Zeigler was promised -- and I
18  think that came out at the trial, Mr. Zeigler being his
19  brother -- half brother and codefendant in the other case where
20  he was acquitted. But his sentences won't be anywhere close to
21  this 30-year sentence that has been suggested. And I simply
22  think that cooperation, in and of itself, is just simply not
23  enough to negate disparity. In other words, the fact that
24  you've got two equally culpable people or one more culpable
25  person and the only factor that you throw into the mix is he

33

1  he will serve that sentence less, you know, 54 days a year good
2  time. I mean that's a chunk of time under these facts. So if
3  you have any questions, I'll be happy to answer them, but --
4        THE COURT: No. I don't think anyone can answer the
5  questions that I have.
6        Mr. Wise, is there anything you would care to say
7  before the Court proceeds to sentencing?
8        THE DEFENDANT: I think 30 years is ridiculous too.
9  And I know I did the prior -- I had the prior drug convictions
10  and stuff like that, but I paid for that. And I didn't have no
11  involvement in the conspiracy case that they charged me with.
12        THE COURT: Well, of course, the jury has found to the
13  contrary on that, Mr. Wise.
14        Mr. Moorer, did you want to say something?
15        MR. MOORER: Yes, Your Honor. I --
16        THE COURT: Before you do that, I want to be sure that
17  Mr. Wise -- I didn't mean to cut you off if there's anything
18  else you care to say.
19        THE DEFENDANT: No. That's it.
20        THE COURT: Mr. Moorer.
21        MS. JAMES: Oh --
22        MR. MOORER: Your Honor, I would like to inject into
23  the --
24        MS. JAMES: Go ahead. I --
25        MR. MOORER: I would --






34

1    MS. JAMES: Well, I apologize, Judge. But I do -- one
2  thing I did fail to tell you. And that is his family is in the
3  courtroom today, his aunt, his fiancee, and his daughter. His
4  former wife is in the military and is -- I think she's in Iraq.
5  And so the child is actually, I think, staying with a friend.
6  And I realize ten years or 30 years is not going to make much
7  difference in terms of immediate child care, but I would say
8  that she is a young child. And with a ten-year sentence, which
9  is the least he could do, you know, he could get -- he'll be out
10  for her graduation from high school, and he'll have plenty of
11  time to stop and think about those things.
12    Additionally, the aunt who is present today, in talking
13  with me briefly about this case, you know, she knew what was in
14  the presentence report, that I guess, you know, they're
15  recommending 30 years or whatever. And she was just telling me
16  how concerned she was about that because -- you know, saying,
17  how could he be a kingpin? Where's the money? Where's the
18  money? I mean there is no evidence of David Wise living a very
19  prosperous life, the rings and the cars and the boats and the
20  plane. So while that doesn't make it any less criminal, we
21  don't have a substantial history here or evidence of his making
22  tremendous profits from this conduct.
23    MR. MOORER: Your Honor, I would just like to inject
24  one thing, one factor into this. And I realize the Court has a
25  very difficult decision to make, one that is not fettered by the

36

1  are engaged in possession of quantities of cocaine, such as he
2  had, it's important to send a message to the community that when
3  we find this type activity, the sentences are severe. And
4  hopefully it will discourage others and it will serve the need
5  to punish people, such as Mr. Wise. Thank you.
6    THE COURT: I probably have said enough to indicate
7  that I am concerned, and I think the factors that both you and
8  Ms. James have raised are factors which I constantly struggle
9  with in trying to determine an appropriate sentence. I guess I
10  might say that I start out in cases of this kind where a
11  defendant is facing either a mandatory life sentence or
12  mandatory sentence of 360 months or more with the feeling that
13  this sentence is too severe for the criminal conduct involved.
14    What is an appropriate sentence? And I look at -- as I
15  read Booker and 3553(a) and particularly -- well, I guess both
16  (1) and then the factors set forth in subparagraph (2), (3), and
17  (4) are equally important. But I guess I have to determine the
18  sentence by considering the nature and circumstances of the
19  offense and the history and characteristics of the defendant.
20  And, of course, that's the career criminal provisions the
21  Sentencing Commission devised to treat the drug offenses being
22  committed by people who have a prior history of dealing in
23  drugs.
24    And we have here two prior convictions, both of which
25  he has admitted that he entered pleas of guilty to. He didn't

35

1  guidelines anymore. But I think that one thing the Court has to
2  consider is that even though Mr. Wise is not, say, Pablo
3  Escobar, you do have individuals out there who are distributing
4  drugs such as he was caught doing, and it has a great impact
5  upon the community. Crack cocaine causes individuals who are
6  consuming it to engage in other criminal behavior, quite often
7  violent behavior. We know of these two incidents where he has
8  been caught previous to this time, and I submit that's just
9  those two times that we know of. Quite often when you've got a
10  person who's engaged in drug dealing over a period of time,
11  which he has, based on his two prior convictions prior to this
12  case where he was caught with a kilogram of cocaine, you've got
13  individuals who repeatedly sell and we just simply are not able
14  to detect it by way of law enforcement except on those occasions
15  that we do.
16    I think we have to look at the societal harm caused by
17  someone. I understand that for him to go to jail for 30 years
18  is a long time. But at the same time, that was a choice that he
19  made to involve himself in this type of criminal activity. And
20  when you're talking about particularly crack cocaine, for those
21  who become addicted to it -- and it's powerfully addicting --
22  it's almost a death sentence for those individuals. And he is
23  an integral part of what's necessary for the drug trade to go
24  on; that is, for people to be out there selling it. And when we
25  find people such as Mr. Wise engaged in the sale of cocaine, who

37

1  say that he was not guilty, so there isn't any question in this
2  case. And I would have been surprised by a jury verdict, I
3  think, for the defendant in the case, having heard the evidence
4  that he certainly has knowledge of what the subject is and
5  traded in it.
6    And we know from experience that the conversion of
7  powder cocaine to crack cocaine anymore is a very simple matter
8  and that a large percentage of this powder cocaine that's
9  transported in interstate commerce to various locations is
10  converted to crack cocaine. I have struggled over the years
11  with Congress's decision that crack cocaine is 100 times worse
12  than powder cocaine. That discrepancy offends me because it's
13  not supported by the evidence that I received, which would
14  support the findings that I made that this was not a reasonable
15  difference, and for other reasons. All of these reasons sounded
16  good to me; but they didn't sound very good to the Court of
17  Appeals, and I was reversed every time on them. And it
18  doesn't -- that doesn't really bother me except it doesn't help
19  anybody when you can just arbitrarily pick sentences on what I
20  think a sentence ought to be without considering all of these
21  factors which are set forth here and the need to reflect the
22  seriousness of the offense and to promote respect for the law.
23    These are matters, I think, Mr. Moorer has addressed.
24  The drug problem is a serious problem. This is a serious
25  offense, to transport significant amounts. And I think a

**38**

1  kilogram or almost a kilogram of powder cocaine is a significant
2  amount of cocaine to be transporting in interstate commerce.
3      To afford adequate deterrence of criminal conduct. I
4  don't know how we do that without imposing a sentence that is
5  relatively severe so that people realize if they're going to
6  deal in criminal conduct of this kind, that there's going to be
7  a serious sentence.
8      To protect the public from further crimes of the
9  defendant. Obviously, incarceration does that.
10     To provide the defendant with needed educational or
11  vocational training, medical care, or other correctional
12  treatment in the most effective manner. Much of that will be
13  available to him with the kinds of sentences that are available
14  and the kinds of sentence and the sentencing range established
15  for these offenses under the guidelines, which are now advisory.
16     I think Ms. James has made one telling point, and that
17  is that we start out at the beginning. He's committed these two
18  prior crimes. And that's true; he's served those sentences.
19  That does not exonerate him from being held more responsible, to
20  a more severe sentence this time, simply because he's paid his
21  price for the prior two times. The purpose of the sentencing is
22  to deter repetitive criminal conduct. And I have to accept the
23  verdict of the jury that the defendant is guilty of this crime
24  and this is a crime which, in part, he's conducted -- he's
25  committed in the past. And while he didn't receive severe

**39**

1  sentences for those -- the sentences could have been, but they
2  ended up being very light -- I think leads people to the
3  conclusion that they can commit these crimes without any serious
4  consequences. That simply isn't true. And the consequences
5  have to be serious enough to deter other people from doing
6  that.
7      But it's true, those two prior offenses for which he's
8  been sentenced now were used first as a basis under Section 841
9  to increase the statutory range from five years to 40 years, to
10  ten years to life. So that's number one. Those two sentences
11  have done that, and they were not good sentences.
12     And then because we do have those two sentences, the
13  guidelines say, well, that makes him a career offender, and now
14  you have to sentence him to 360 months to life. And I can't do
15  that. I don't think I can go down to 120 months. But when I
16  look at the crime and the effect of the statute and the impact
17  of the guidelines, I have to pick the sentence which I think
18  under the circumstances in considering these factors, without
19  being able to more specifically articulate -- it's my conclusion
20  in this case that the appropriate sentence for this offense
21  conduct and for considering his prior criminal history and his
22  prior involvement with drugs is a term of imprisonment of 240
23  months.
24     And that's going to be the sentence of this Court, that
25  the defendant will be committed to the custody of the Bureau of

**40**

1  Prisons for a term of 240 months. I think this sentence
2  reflects the seriousness of this offense and that it will
3  promote respect for the law and provide for just punishment. I
4  think that it affords adequate deterrence to criminal conduct
5  and that it will protect the public from further crimes of the
6  defendant. And it will give the defendant the opportunity to
7  get the educational or vocational training and medical care in
8  prison. He'll have an opportunity to do that. And under all of
9  the sentences available to me, I think that this sentence, to
10  me, is what I consider to be a reasonable, proportionate
11  sentence under all of the circumstances of this case. And that
12  in addition to that, of course, he'll be required to pay the
13  special assessment of $300. He does not have the ability to pay
14  a fine. Accordingly, the fine is waived as part of this
15  sentence.
16     Upon the completion of that sentence, he will be placed
17  upon supervised release for a term of eight years on counts one
18  and two and three years on count three. The sentence on counts
19  one and two is 240 months each to be served concurrently. And
20  on count three, it is 60 months to be served concurrently with
21  the sentences under counts one and two. The net effect of that
22  is the overall sentence is a total of 240 months. He will
23  receive credit for all time that he has served pending trial and
24  pending sentencing in this matter.
25     Then as I say, he'll be placed upon supervised release

**41**

1  as I just described. And he'll be required to report to the
2  probation office in the district to which he is released within
3  72 hours of his release from custody. While on supervised
4  release, you will comply with the mandatory and standard
5  conditions of supervised release on file with this Court.
6      And the following special conditions which are set
7  forth in the sentence and statement of reasons will apply. The
8  defendant will participate in random drug testing and/or
9  treatment as directed by the probation officer. He shall
10  contribute to the cost of any treatment based on his ability to
11  pay and the availability of third-party payments. He shall
12  participate in a mental health treatment program as directed by
13  the probation officer and contribute to the cost based on
14  ability to pay and availability of third-party payments. He
15  shall submit to searches of his person, residence, office, or
16  vehicle pursuant to the search policy of this Court and will
17  cooperate with the probation officer in the collection of DNA as
18  directed by the probation officer.
19     And the Court finds that there is no identifiable
20  victim who incurred a financial loss as a result of this
21  offense.
22     In imposing this sentence, I have considered the fact
23  that there are career offender provisions in the guidelines; but
24  I think I have to look at those in conjunction with the law, all
25  other factors, and in particular, those factors identified in



42

1  Section 3553(a).
2       Does anybody have any questions with respect to the
3  sentence which the Court has just pronounced? Mr. Moorer?
4       MR. MOORER: No, Your Honor.
5       MS. JAMES: No questions.
6       THE COURT: All right. Then the sentence will be
7  ordered imposed as stated.
8       MS. JAMES: I guess --
9       THE COURT: Let me cover his rights of appeal first;
10 otherwise, I forget that sometimes.
11      Mr. Wise, you have a right to appeal to the United
12 States Court of Appeals for the Eleventh Circuit your conviction
13 by the jury in this case and the findings and the sentence which
14 the Court has imposed today. That appeal, if it's to be taken,
15 must be taken by filing a notice of appeal with the clerk of
16 this Court within ten days after the Court files a written
17 judgment and committal order reflecting this sentence.
18      Ms. James, are you court appointed or are you
19 retained?
20      MS. JAMES: I'm retained, Your Honor.
21      THE COURT: All right. Ms. James, of course, will be
22 available to assist you in the preparation of the filing of that
23 notice of appeal. Now, if you cannot afford to pay the costs of
24 appeal, you have the right to appeal in forma pauperis; that is,
25 without paying the costs of appeal. In that instance, you have

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

44

1  make that known to the Court because I clearly -- regardless of
2  my status, I clearly anticipate filing a motion for a free
3  transcript, given those circumstances.
4       THE COURT: All right. With respect to the $300
5  special assessment which is required by the statute, I don't
6  think that I addressed that specifically. That, of course, is
7  due and payable immediately to the Court. If you are unable to
8  pay it, you will be required to make payment on it out of any
9  earnings you may realize while you're incarcerated and from any
10 other funds that become available to you while you're
11 incarcerated to the extent of 25 percent of such earnings and/or
12 funds until the $300 has been paid in full. If for any reason
13 that $300 has not been paid in full by the time you are released
14 from incarceration, the balance will be due and payable within
15 15 days of your being placed upon supervised release. And that
16 will be included in the judgment and committal order.
17      MS. JAMES: Judge, I know a couple of things that I
18 didn't address when you got off on the notice on appeal that I
19 had forgotten.
20      THE COURT: Go ahead.
21      MS. JAMES: One was when you said did we have any
22 questions, I might -- I possibly didn't understand. I would say
23 that we do have objections to the sentence imposed -- the
24 Court's findings based on the arguments that I previously
25 raised.

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

43

1  to apply to this Court for leave to appeal in forma pauperis,
2  and you have to submit a written affidavit with that setting
3  forth your assets and your financial situation so the Court can
4  determine whether or not you are entitled to proceed in forma
5  pauperis. If I were to find that you are entitled to proceed in
6  forma pauperis, then you have a right to have a lawyer represent
7  you on appeal; but that application for appointment of counsel
8  has to be filed with this Court. It will be forwarded to the
9  Eleventh Circuit for a ruling. Do you understand the time
10 within which an appeal must be taken?
11      THE DEFENDANT: Yes, sir.
12      THE COURT: And these other rights of appeal as I've
13 explained them to you?
14      THE DEFENDANT: Yes, sir.
15      THE COURT: Ms. James?
16      MS. JAMES: Judge, a couple of things with regard to
17 his status. He is personally indigent. And there was a hearing
18 before Judge Thompson early on in the case where I moved to
19 withdraw because of some financial issues that had come up
20 between Mr. Wise and I. Subsequent to that, his family has been
21 able to -- not Mr. Wise, but his family has been able to come up
22 with a little additional money to pay for what the balance was.
23 And I understand in our circuit we are obligated to proceed. If
24 we're retained, we're obligated to proceed on the appeal, and
25 that that should be contemplated in our initial agreement. I

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

45

1       THE COURT: Those will be made a matter of record.
2       MS. JAMES: Okay. The other thing, Judge, is I don't
3  know if you recommended the drug treatment program. I'm not
4  sure he's going to qualify with his criminal history score of
5  III. But if the Bureau of Prisons were to determine him
6  eligible, it would facilitate things if the Court recommended
7  it.
8       THE COURT: I will include in the judgment and
9  committal order a recommendation to the Bureau of Prisons that
10 the defendant be permitted to participate in that comprehensive
11 drug treatment program that's available in the Bureau of
12 Prisons.
13      MS. JAMES: And Judge -- thank you. And the final
14 thing that I would ask is I had previously filed a motion --
15      THE COURT: Yes.
16      MS. JAMES: -- for release pending sentencing and
17 appeal. Obviously, we're past the sentencing; but those
18 factors, the basis for the motion, are still in existence. And
19 so I'm curious if the Court would entertain that or if you've
20 made a ruling.
21      THE COURT: I have not made a ruling, but I have
22 reviewed that. I went back and reviewed the order I entered at
23 the time shortly after the jury returned its verdict. And for
24 the reasons set forth in that order, I believe that that is
25 still the position I must take. Your motion for release pending

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

46

1  appeal will be denied. And I'm not going to repeat those
2  findings I made then, but I think they're as applicable today as
3  they were then.
4       The defendant will be remanded to the custody of the
5  United States Marshal for execution of sentence. And we will be
6  in recess. No, we won't be in recess, but you may be excused,
7  Ms. James.
8       Are you in on the next case, Mr. Moorer?
9       MR. MOORER: Yes, Your Honor, I am.
10      THE COURT: You can excuse your agent, if you wish, or
11 he may stay. I'm certainly not compelling anybody to leave.
12 You are free to leave if you wish.
13      MS. JAMES: May I be excused, Your Honor?
14      THE COURT: You may be excused.
15  (Proceedings concluded at 4:11 p.m.)
16          * * * * * * * * * * *
17      COURT REPORTER'S CERTIFICATE
18      I certify that the foregoing is a correct transcript
19 from the record of proceedings in the above-entitled matter.
20      This 14th day of October, 2005.
21
22              
                RISA L. ENTREKIN, RDR, CRR
23              Official Court Reporter
        24
25

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

United States of America v. David DeJuan Wise                    July 13, 2005

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

United States of America v. David DeJuan Wise                    July 13, 2005

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

United States of America v. David DeJuan Wise                    July 13, 2005

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405



AO 245B   (Rev. 12/03) Judgment in a Criminal C.
Sheet 1

# UNITED STATES DISTRICT COURT

| MIDDLE | District of | ALABAMA |
|---|---|---|

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| V. | |
| DAVID DEJUAN WISE | |

| | |
|---|---|
| Case Number: | 2:04-cr-00009-001-S |
| | (WO) |
| USM Number: | 11376-002 |
| Susan James | |
| Defendant's Attorney | |

## THE DEFENDANT:

☐ pleaded guilty to count(s)

☐ pleaded nolo contendere to count(s)
which was accepted by the court.

X was found guilty on count(s)   1s, 2s and 3s of the Superseding Indictment on March 18, 2005
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21 USC 846 | Conspiracy to Distribute and Possess with Intent to Distribute Cocaine Hydrochloride | 04/29/2003 | 1s |
| 21 USC 841(a)(1) and 18 USC 2 | Possession with Intent to Distribute Cocaine Hydrochloride; Aiding and Abetting | 04/29/2003 | 2s |
| 21 USC 844(a) | Possession of Cocaine Base | 04/29/2003 | 3s |

The defendant is sentenced as provided in pages 2 through ___6___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

X The defendant has been found not guilty on count(s)   4s and 5s of the Superseding Indictment on March 18, 2005

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

July 13, 2005
Date of Imposition of Judgment

_Signature of Judge_

LYLE E. STROM, SENIOR UNITED STATES DISTRICT JUDGE
Name and Title of Judge

7/26/05
Date

GOVERNMENT
EXHIBIT

CASE
NO. 2:09CV17

EXHIBIT
NO. H

AO 245B    (Rev. 12/03) Judgment in Criminal Case
Sheet 2 — Imprisonment

DEFENDANT:          DAVID DEJUAN WISE
CASE NUMBER:       2:04-cr-00009-001-S

Judgment — Page __2__ of __6__

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

240 Months.  This term consists of 240 months on each of Counts 1s and 2s and 60 months on Count 3s, all to be served concurrently.

X    The court makes the following recommendations to the Bureau of Prisons:
   The Court recommends that the defendant be designated to a facility where Intensive Residential Substance Treatment is available.

X    The defendant is remanded to the custody of the United States Marshal.

☐    The defendant shall surrender to the United States Marshal for this district:

   ☐    at _____ ☐ a.m. ☐ p.m.    on _____ .

   ☐    as notified by the United States Marshal.

☐    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

   ☐    before 2 p.m. on _____ .

   ☐    as notified by the United States Marshal.

   ☐    as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a_____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B    (Rev. 12/03) Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page ___3___ of ___6___

DEFENDANT:        DAVID DEJUAN WISE
CASE NUMBER:     2:04-cr-00009-001-S

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

EIGHT YEARS. This term consists of eight (8) years on Counts 1s and 2s and three (3) years on Count 3s, all such terms to run concurrently.

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐    The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

X    The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

X    The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐    The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐    The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)    the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)    the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)    the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)    the defendant shall support his or her dependents and meet other family responsibilities;

5)    the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)    the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)    the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)    the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)    the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)    the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)    the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)    the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)    as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

DEFENDANT:        DAVID DEJUAN WISE
CASE NUMBER:      2:04-cr-00009-001-S

## SPECIAL CONDITIONS OF SUPERVISION

1. The defendant shall participate in drug testing and/or treatment if directed by the probation officer. He shall contribute to the cost of any treatment based on ability to pay and availability of third party payments.

2. The defendant shall participate in a mental health treatment program as directed by the probation officer and contribute to the cost based on ability to pay and availability of third party payments.

3. The defendant shall submit to a search of his person, residence, office, and vehicle pursuant to the search policy of this Court.

DEFENDANT:        DAVID DEJUAN WISE
CASE NUMBER:      2:04-cr-00009-001-S

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $ 300.00 | $ 0 | $ 0 |

The $300 assessment consists of a special assessment fee of $100 on each of Counts 1s, 2s and 3s.

☐   The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case*(AO 245C) will be entered after such determination.

☐   The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |

| | | | |
|---|---|---|---|
| **TOTALS** | $ _____ | $ _____ | |

☐   Restitution amount ordered pursuant to plea agreement  $ _____

☐   The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐   The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐   the interest requirement is waived for the   ☐  fine  ☐  restitution.

    ☐   the interest requirement for the   ☐   fine   ☐   restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

DEFENDANT:       DAVID DEJUAN WISE
CASE NUMBER:     2:04-cr-00009-001-S

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

**A**  X  Lump sum payment of $  300.00            due immediately, balance due

☐  not later than _____ , or
☐  in accordance  ☐ C,  ☐ D,  ☐  E, or  ☐ F below; or

**B**  ☐  Payment to begin immediately (may be combined with  ☐ C,    ☐ D, or   ☐ F below); or

**C**  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D**  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

**E**  ☐  Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**  X  Special instructions regarding the payment of criminal monetary penalties:

All criminal monetary penalty payments shall be made to the Clerk, United States District Court, Middle District of Alabama, Pos Office Box 711, Montgomery, Alabama 36101.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

# United States Court of Appeals

### For the Eleventh Circuit

RECEIVED

2006 NOV -9  A 11: 29

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

No. 05-14710

District Court Docket No.
04-00009-CR-T-N

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

Oct 10, 2006

THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVID DEJUAN WISE,
a.k.a. Julio,

Defendant-Appellant.



A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By:
Deputy Clerk
Atlanta, Georgia

Appeal from the United States District Court
for the Middle District of Alabama

### JUDGMENT

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

Entered:   October 10, 2006
For the Court:   Thomas K. Kahn, Clerk
By:   Harper, Toni

ISSUED AS MANDATE

NOV 0 8 2006

U.S. COURT OF APPEALS
ATLANTA, GA.



GOVERNMENT
EXHIBIT

CASE
NO. 2:09 CV 17

EXHIBIT
NO. I

**RECEIVED**                                        [DO NOT PUBLISH]

200b NOV -9 I♭THE(UNITED STATES COURT OF APPEALS

DEBRA P. HACKETT. CLK‍FOR THE ELEVENTH CIRCUIT
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

No. 05-14710

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 10, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-00009 CR-T-N

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVID DEJUAN WISE,
a.k.a. Julio,

Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of Alabama

**(October 10, 2006)**

Before ANDERSON and DUBINA, Circuit Judges, and VINSON,* District Judge.

PER CURIAM:

\*Honorable C. Roger Vinson, United States District Judge for the Northern District of Florida,
sitting by designation.

Appellant David DeJuan Wise ("Wise") appeals his convictions and

sentences for conspiracy to distribute and possess with the intent to distribute

cocaine hydrochloride, in violation of 21 U.S.C. § 846; possession with the intent

to distribute cocaine hydrochloride, and aiding and abetting, in violation of 21

U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and possession of cocaine base, in violation

of 21 U.S.C. § 844(a).

Wise presents the following issues for appellate review: (1) whether the

evidence presented at trial was sufficient to sustain Wise's convictions on Counts

1, 2 and 3 of the superseding indictment; (2) whether the district court ruled

correctly when it excluded evidence concerning a letter written by Joanna Hooks;

(3) whether the district court abused its discretion when it excluded Wise's

defense of diminished capacity; and (4) whether the district court erred when it

denied Wise's request for a special verdict form as to drug quantity.

After reviewing the record, reading the parties' briefs and having the benefit

of oral argument, we conclude that there is no merit to any of the arguments Wise

presents in this appeal. Accordingly, we affirm his convictions and sentences.

**AFFIRMED.**

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

2