IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

2008 MAR -5  A 10: 18

DAVIS D. WISE,

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

        Petitioner

vs.

UNITED STATES OF AMERICA,
        Respondent.

:
:
:
:
:
:
:
:
:
:

Civil Action No.2:08cv17
(MHT)

PURSUANT TO SECTION 2255

## MEMORANDUM OF LAW IN OPPOSITION TO THE
## GOVERNMENT'S RESPONSE TO FILED SECTION 2255 MOTION

NOW COMES the petitioner David D. Wise (hereinafter "Mr. Wise") moves this Honorable Court for the Middle District of Alabama, Northern Division to grant the present Section 2255 motion in its entirety, or in the alternative, order an evidentiary hearing necessarily to resolved the issues raised therein the motion before this Court. As an additional matter, should this Court deny Mr. Wise's motion on all claims raised thereon, then respectfully request that the Court grant permission to file a Certificate of Appeilibility (COA) to the Court of Appeals. Mr. Wise moves the Court deny the government's opposing brief in its enterity because it lacks pertaining to the issues set forth in the Section 2255 motion. In sum, Mr. Wise prays that the Honorable Court would grant the motion based upon all the reasons in this Memorandum of Law hereinafter.

A.      MR. WISE'S CLAIMS ARE NOT PROCEDURALLY BARRED
        NOR DO THEY LACK MERITS

     Mr. Wise asserts that his substantive claim presented in issue
three (3) in his section 2255 motion is not procedurally barred
whether or not he could have raised it on direct appeal. However,
he states that the government's reliance on Mills v. United States,
36 F.3d 1052, 1055-56 (11th Cir. 1994) is notwithstanding and exact
opposit and fully supports Mr. Wise's claims that he is not "pro-
cedurally" barred from raising them in the section 2255 motion.

     In Mills, the court there held that "A ground of error is
usually available on direct appeal when its merits can be reviewed
without further factual development [of the record]." (36 F.3d 1056).
Here, Mr. Wise asserts because he was represented on direct appeal
by same trial counsel, he could not have raised his ineffective
assistance Sixth Amendment claims, which is based on the trial re-
cord and error on direct appeal. See Billy-Eko v. United States,
8 F.3d 111 (2nd Cir. 1993)("Defendant should raise...claims of in-
effective assistance at the earliest feasible opportunity. If the
defendant has new appellate counsel on direct appeal, and the re-
cord is fully developed on the ineffective assistance issue.");
see also Beaulieu v. United States, 930 F.2d 805,807 (10th Cir.
1991)(holding that procedural bar to ineffective assistance claims
in collaterl proceedings applies in 'situations where the defendant
is no longer represented by trial counsel and it is evident that
resolution of the ineffective claim would not be...aided by further
development of the record.); (Sentencing Transcript ["Sent.Tr."]
pp.43-44)).

-2-

However, there is a two-prongs test which most courts consider when resolving a procedurally barred claim(s). First, the court must determine whether Mr. Wise was represented by "new" counsel (8 F.3d 115) that would have permitted him to raise the claims herein on direct appeal. Second, the court must further determine whether the record was fully "developed". One or the other is adequate for relief, and will not necessarily barred a petitioner from raising such claims in a hebeas corpus petition. Hence, Mr. Wise was represented by same trial counsel on direct appeal. He could not have raised, or niether could counsel, an ineffective assistance claim(s) on herself. See Billy-Eko v. United States, 8 F.3d 111, id at 114.

Because Mr. Wise's issue one (1) claim is based counsel's failure object and preserv an erroneous instruction given to the jury by the trial court, he could not have raised it on direct review, and the record was not fully"developed." See Sullivan v. Louisiana, 508 U.S. 275,281, 124 L.Ed.2d 182,113 S.Ct. 2078 (1993)("The impact of the constitutional defect before us, namely the violation of the defendant Sixth Amendment right to an impartial jury, cannot be determined from a review of the record.").

Thus, Mr. Wise was represented by same trial counsel on direct appeal, and the issues he raises in the motion before the court [erroneous jury instruction and 4th Amendment violation] cannot be raised on direct appeal unless "new" counsel was assigned. The claims Mr. Wise raises now are not procedurally barred either for failure to show cause and/or prejudice (8 F.3d 115), and cannot be penalized.

-3-

## B.    MERIT ON MR. WISE'S FIFTH & SIXTH AMENDMENT VIOLATION
FAIR TRIAL CLAIM

Mr. Wise alleges that the government's assertion and assess-
ment that his claim on Sixth Amendment fair trial violation is
inaccurate. He further claims that this issue is not "meritless"
based upon the fact that the trial court erroneously and unconstitut-
ionally violated his Sixth Amendment fair trial rights when it
instructed the jurors Mr. Wise [sic] "the defendants had already
pled 'guilty' to the charges." That statement was in violation of
Mr. Wise's Sixth Amendment fair trial rights and requires reversal
on his conviction. Furthermore, had the court given the jury a  curative
instruction to disregard that statement it could not untainted the
prejudice Mr. Wise had suffered.

## I.    VIOLATION ON SIXTH AMENDMENT FAIR TRIAL RIGHTS

In all criminal matter, a defendant is entitled to be tried
by an impartial jury. U.S. const. amend. VI. In Leonard v. United
States, the Supreme Court held that it is plain error to select a
jury from a panel of prospective jurors who, prior to their select-
ion, had witnessed a guilty verdict returned in a separate case
against the same defendant. 378 U.S. 544, 84 S.Ct. 1696, 12 L.Ed.2d
1028 (1964)(per curiam); see also Oliver v. United States, 202 F.2d
521,523 (6th Cir. 1953)("Neither the immediate admonition of district
judge to the jury to disregard the prosecuting attorney's question
[regarding the defendant's prior guilty plea] nor the subsequent
charge could,...removed...the impressed from the minds of the juror
that the defendant had...pleaded guilty to the charge upon which he

-4-

was being tried."); see also (Trial Transcript ("Transcript") at p.14; L.5-11).

A trial judge's attempts to cure the defect during trial by providing curative instructions do not served to cure the prejudice a defendant may suffered. See United States v. Candali, 558 F.2d 656,668(10th Cir. 1989)( cf. Donovan v. Davis, 558 F.2d 201,203 (4th Cir. 1977)(holding that district court's attempt to remove prejudice through limiting instructions was inadequate...jurors had served in aprior ciminal trial involving same defendant."); see also Willie v. Maggio, 737 F.2d 1372,1379 (5th Cir. 1984)("A juror is presumed to be baised when he or she is apprised of such iherently prejudicial fact about the defendant that the court deems it highly unlikely that the juror can exercise independent judgment, even if the juror decleared to the court that he or she will decide the case solely on the evidence presented.").

II.    The Supreme Court recognizes that a defendant in a criminal trial has certain fundamental rights, the deprivation of which mandates reversal even absent a showing of prejudice. See Arizona v. Fulminante, 499 U.S. 279,309, 113 L.Ed.2d 302,111 S.Ct. 1246 (1991). Examples of such rights are the right to counsel, see Gideon v. Wainwright, 372 U.S. 335,345, 9 L.Ed.2d 799, 83 S.Ct. 792 (1963); the right to be tried before an impartial judge, see Tumey v. Ohio, 273 U.S. 510, 71 L.Ed.2d 749,47 S.Ct. 437 (1927); and the right to have an indictment based on the judgment of a properly selected grand jury, see Vasquez v. Hillary, 474 U.S. 254,263, 88 L.Ed.2d 598,106 S.Ct. 617 (1986). In each of these cases, the Supreme Court was unable to determine whether the error was harmless because

-5-

a review of the record could not reveal the impact of the defect.
III.   Mr. Wise circumstance are similar in nature as the defendants
in the abovementioned case law thereforth. For example, this Court
admonished the jurors, in violation of his Sixth Amendment fair
trial rights, that [sic] "defendants have entered a plea of guilty
to these charges and are presumed to be innocent unless and unlit
prove beyond a reasonable doubt. (See Transcript at p.14; L.8-11);[1]
see also Chapman v. California, 366 U.S. 18,23, 17 L.Ed.2d 705,87
S.Ct. 824 (1967)("There are some constitutional rights so basic to a
fair trial that their infractions can never be treated as harmless
error."); Irvin v. Dowd, 366 U.S. 717,722, 6 L.Ed.2d 751, 81 S.Ct.
1636 (1961)("The constitutional right to an impartial jury is basic
and fundamental to conduct of a fair trial.").

   Because Mr. Wise raises his claim of Sixth Amendment fair trial
violation pursuant to counsel's failure to object and/or preserved
the issue for direct review, he should not have to show cause and pre
judice. His ineffective assistance counsel claims should be deemed as
"cause". Gravely v. Mills, 87 F.3d 77,785 (6th Cir. 1996)(holding
that defense counsel's failure to object to very serious prosecutorial
misconduct amounted to ineffective assistance was cause."); Jackson
v. Herring, 42 F.3d 1350 (5th & 11th Cirs. 1995); Francis v. Hender-
son, 425 U.S. 536,48 L.Ed.2d 149,96 S.Ct. 1708 (1976).

---

1. You should understand that an indictment is simply an accusation. It is not
evidence of anything. The defendants have entered a guilty plea  to these charges
and are presumed to be innocent unless and until proven guilty beyond a reason-
able doubt. (Transcript at p.14, L.5-11). Read insolation or together is unmeasurable
prejudicial. Sullivan v. Louisiana, 508 U.S. 275,281 124 L.Ed.2d 182("The right to
trial by jury is a 'basic protection whose precise effects are unmeasurable.").

C.    MR. WISE'S ISSUE TWO CLAIM HAS MERIT

The government argues two of Mr. Wise's substantive claim has no merit. However, Mr. Wise disagrees with that assessment by the government, and the trial record dispells it position as inaccurate and untruth.  Furthermore, Mr. Wise's    substantive claim meritable and relief can be granted when that claim is based on lack of "probable cause" to stop, arrest, and search a person property.
I.    Mr. Wise contends that his Fourth Amendment rights were violated when the authorities illegally stopped, searched, and arrested him—and that his trial counsel should have  had filed a motion suppressing all evidence illegally seized based on his Fourth Amendment violation.

PROBABLE CAUSE TO STOP AND/OR SEARCH, ARREST A PERSON
II.    Based on the totality of an encounter, a court must suppress all evidence illegally obtained from an illegal intrusion and seizure. Wong Sun v. United States, 371 U.S. 471, 487-88 S.Ct. 407, 9 L.Ed.2d 441 (1963). Any evidence obtained pursuant to an investigatory stop (also known as a "Terry stop" or a "stop and frisk") that does not meet...exception must be suppressed as "fruit of the posionous tree." See United States v. Coggings, 28 V.I. 241, 986 F.2d 651,652 (3rd Cir. 1993).

A seizure occurs when a law enforcement officer, by a show of physical force or authority, in some way restraines the liberty of a citizen. See Florida v. Bostick, 501 U.S. 429, 343,115 L.Ed.2d 389,111 S.Ct. 2382 (1991), 501 U.S. at 437 ("[Court] must take into account all of the circumstances surrounding the encounter."). However, an officer may, consistent with the Fourth Amendment, con-

-7-

duct a brief investigatory stop when the officer has a reasonabl
articulable suspicion that criminal activity is afoot. See United
States v. Brown, 448 F.3d 239 (3rd Cir. 2006); see also Illinios
v. Wardlow, 528 U.S. 119,123 S.Ct. 676,145 L.Ed.2d 570 (2000).

Here, in the case at bar, the gist of Mr. Wise's stop, search,
and arrest was based the fact that he and Mr. Hooks were observed
by several officers at Houston, Texas Greyhound bus station in line
trying to purchase departing tickets for Montgomery, Alabama. (See
Transcript at pp.55-56). At that point, the officers Houston, Texas
claimed they noticed both Mr. Wise and Hooks, while inline, "scan-
ning the lobby to identify who the police were." (See Transcript at
p.57; L.13-19). Officer Smith further testified that he noticed,
while Mr. Wise and Hooks were still in the line, "they were still
looking around, looking nervous." (See Transcript at p.57; L.20-22).
He further testified that while observing both Mr. Wise and Hooks's
action, Mr. Hooks and Mr. Wise come running toward gate fourteen
because the bus was departing." (See Transcript at p.59; L.7-13).
Officer Simth acknowledged  that Mr. Hooks alone had a backpack on
his back and no other bags were carried onto that bus. (See Trans-
cript at p.61; L.9-15). However, a call was made to Montgomery,
Alabama Greyhound bus to incept Mr. Wise and Hooks based on the in-
formation relayed by Officer Lopez that two black males had "avoided
their detection" in Houston, Texas. (See Transcript at p.150, L.1-5).
OFFICER LOPEZ'S TESTIMONY

Officer Lopez testified to the jury that based upon his train-
and observation he believed that Mr. Wise and Hooks had narcotics
because of their "nervousness, and scanning of the lobby, and fid-

-8-

getting,...moving back and forth." (See Transcript at pp.82-83;
L.22-25 and 1-9 respectively). He described that the coltthen Mr.
Wise wore, and that he remembered the black carryon bag Mr. Wise
held in his hand.$\frac{2}{-}$· (See Transcript at pp.91-92). Based on his
observation and knowledge pertaining to the situation at Houston,
Texas, Officer Perez called D.E.A. in Montgomery, Alabama——Officer
Bartlett——and shared that information to intercept both Mr. Wise
and Hooks. (See Transcript at pp.94-95).

## OFFICER BARTLETT'S TESTIMONY

Officer Bartlett testified that on April 29, 2003, he was
stationed at Montgomery Greyhound bus station looking for "two
suspects that may have been bringing narcotics into Montgomery via
bus." (See Transcript at p.104; L.11-23). He also testified that
he recieved a call from Officer Lopez, who gave him the descript-
ion of "two black males that 'avoided' their detection when they
left [Houston] the night before." (See Transcript at p.105; L.1-21).
Officer Bartlett stated that he observed Mr. Wise, who fitted the
description (the Cunningham jersey), gotten off the bus and went to
the parking lot. (See Transcript at 110; L.8-14). That after he
identified himself as an officer to Mr. Hooks, who had gotten off
the bus later then Mr. Wise, he asked him whether he could "talk to
him in private." (See Transcript at p.110; L.18-20). Mr. Hooks and
Officer Bartlett went to the parking lot "where there was some other
officers gathered around [a car]." That two persons, when Officer

---

2. Even though Officer Lopez testified that he only "observed" Mr. Wise for
a very brief time because he was attending to other subject, but he was the only
one to observed Mr. Wise in the line with a bag in his hand. For example, Officer
Smith, who "observed" Mr. Wise the entire period leading boarding the bus for
Montgormery, Alabama, never once testified that he "observed" a bag in Mr. Wise's
hand. (See Transcript at pp.95- 55,56, and 57). Niether had the officers at Mont-

-9-

Bartlett walked over to the parking, were in "handcuff." The officers
who were in the parking lot were Sean Collins and Sergeant Drummond.
(See Transcript 110-111; L.23-13).

## OFFICER COLLINS'S TESTIMONY

Officer Collins testified that he observed Mr. Wise, who fitted
the description (wearing a Cunningham jersey), and he followed him
to the parking lot because he—"felt this probably was the guy so I
followed him."(See Transcript at p.130; L.4-11). He observed, while
following Mr. Wise into the parking lot, and he greeted a female.
Mr. Wise and the female walked towards the car. At that point Officer
Collins stated he "got on his radio and tell them [the other officers],
"I may have the subject here." (See Transcript at p.130; L.8-17). He
also testified that the subject, Mr. Wise, did not have any "bags".
And  that he, on the driver's side and officer Drummond on the passen-
ger's side, approached the vehicle Mr. Wise and Joanna Hooks were
seated. (See Transcript at p.131; L.1-9). Officer Collins stated
that Officer Drummond showed his I.D. shouting "Montgomery Police",
may I talk to you?" At that moment, Officer Collins observed "Mr.
Wise is reaching into his pocket, Hooks is looking at Drummond and
I'm [] police officer--." (See Transcript at p.131; L.10-17). Mr.
Wise was arrested thereafter.

## SERGEANT DRUMMOND'S TESTIMONY

Sergeant Drummond testified that while attending to Mr. Wise
and Joanna Hooks, "another subject walked up with Detective Bartlett
and that he identified himself to the subject as "Sergeant Drummond
of the Montgomery Police Department." He further testified that he
"asked them (Mr. Hooks) if the lugage that he was carrying was his."

2. gomery, Alabama "observed" Mr. Wise with any bag once he had gotten off the bus.

-10-

That Mr. Hooks acknowledged it was was his [lugage]. (See Transcript
pp.151; L.15-25 and 1 through 2.). Sergeant then stated he asked
Mr. Hooks whether he could "search" the shopping bag. Mr. Hooks, he
stated, "set it down." (See Transcript at p.152; L.3-5). "I would
like to see that one, too," (the backpack Mr. Hooks had on his should-
er). Mr. Hooks "set down" in front of Sergeant Drummond. (See Transcript
at p.152; L.5-9). Whereupon, however, sergeant Drummond stated he
found two black socks suffed with cocaine. (See Transcript at p.153;
L.6-12).

D.      No PROBABLE TO ARREST, STOP, AND/OR SEARCH MR. WISE

      Mr. Wise's arrest   was based on "nervousness" at Houston Grey-
hound station while purchasing a bus ticket(s) when Officer Simth
observed him. His Fourth Amendment right was violated and any evidence
seized thereof should have been suppressed as "fruit from a posinous
tree." See United States v. Mesa, 62 F.3d 159 (6th Cir. 1995)("Nervous-
ness and inconsistencies did not validate continued traffic stop.");
United States v. Jones, 149 F.3d 364 (5th Cir. 1998)("Agent lacked
reasonable suspicion for investigatory immigration stop."). Mr. Wise
and Hooks did not "avioded detection in Houston as had relayed to
Officer Brad Bartlett in Montgomery, Alabama in order to stop them
in Montgomery, Alabama. See Transcript at p.105; L.1-5); see also
Northrop v. Trippett, 265 F.3d 372 (6th Cir. 2001)("Anonymous tip of
two black males wearing brand clothing and selling drugs did not
justify detention."); United States v. Davis, 94 F.3d 1465 (10th
Cir. 1996)("No reasonable suspicion for stop of a defendant known
generally as a gang member and drug dealer."): Washington v. Lam-
bert, 98 F.3d 1181 (9th Cir. 1996)("General description of two

-11-

African-American males did not justify stop.").

The Supreme Court has stated that courts must look at the "totality" of the circustances surrounding the encounter. See Florida v. Bostick, 501 U.S. 429,343, 115 L.Ed.2d 389, 111 S.Ct. 2382 (1991), 501 U.S. at 437. Also in Illinois v. Wardlow, 528 US 119,123 S.Ct. 673, 145 L.Ed.2d 570 (2000), the court stated only "consistent" with the Fourt Amendment, an officer may conduct a brief investigatory stop when the officer has a reasonable articulable suspicion that criminal activity is afoot . Cf. United States v. Brown, 448 F.3d 239 (3rd Cir. 2006).

In case at bar, here, the officers at Houston, Texas Greyhound bus station had no reasonable suspicion to be believe that Mr. Wise nor Hooks had committed, or for that matter, was committing a crime. The only reasonable knowledge they had was that Mr. Wise and Hooks were acting "nervous", scanning the area looking, for the officers believed, to see who the police were. That in of its selve did not justify stopping, searching of property, and arresting Mr. Wise. See Wardlow, id; see also United States v. Jones, 149 F.3d 364 (5th Cir. 1989)("Agent lacked reasonable suspicion for investigatory immigarion stop."); United States v. Mesa, 62 F.3d 159 (6th Cir. 1995)("Nervousness and inconsistencies did not validate continued traffic stop."). Moreover, the officers in Montgomery themsevles admitted they were "looking for two black suspects" that "avoided detection" from Houston officials—which implied that Mr. Wise and Hooks had saw the officers and bolted for Alabama. (See Transcript at p.105).

Based upon Mr. Wise's arrest and encounter by the officers, his Fourth Amendment rights were violated and trial counsel should

-12-

have had filed suppression motion excluding the tainted evidence
used at trial.

## II.    NO CONSENT TO SEARCH SHOPPING AND/OR BACKPACK BAGS

The drugs found in Mr. Hooks's backpack should also have been
suppressed as friut from a posinous tree as there was no consent
given to Sergeant Drummond to search any of the bags Mr. Hooks pos-
sessed while standing in the parking lot. [3] Because there was no
"acrticulable" suspicion that officers in Houston, Texas or Montgom-
ery, Alabama reasonable believed that Mr. Wise or Mr. Hooks had
committed a crime, there was no reason to stop, search, and/or arrest
him. See United States v. Rodriquez-Rivas, 151 F.3d 377 (5th Cir.
1998)("Vehicle stop lacked reasonable suspicion.").

When asked whether he could "search" the shopping bag Mr. Hooks
had in his left hand, Sergeant Drummond testified that Mr. Hooks
"set it down." (See Transcript at p.152; L.3-2). No verbal consent
was given to "search" the shopping bag, but Sergeant Drummond searched
it any way. He further testified, specifically without hersitation
that he asked only to "see" that one, too." (Meaning the backpack Mr.
Hooks had on his shoulder). (Id. at 6-7). Again, Sergeant Drummond

---

3. I'm Sergeant Drummond of the Montgomery Police Department. We're out trying
to alliviate the drugs coming through the City of Montgomery, and I asked them
if the luggage that he (Mr. Hooks) was carrying was his. He siad that it was.
(pp.151-152) (Bold Mines).
    I then asked him if he minded if I would search it. He then took like a shop-
ping bag and set it down and put his backpack and threw it back over his shoulder.
I said "I would to SEE that one, too." At that time he kind of dropped his head
and set the backpack down in front of me. (See Transcript at p.152; L.3-9).

-13-

stated that Mr. Hooks "set the backpack down in front of me." (Id at 7-9). Thus, he Searched the backpack and founded two black socks suffed with cocaine in the backpack. (See Transcript at p.153, L. 1-21).

III. Mr. Wise claims his Fourth Amendment rights were violated since Sergeant Drummond had only asked to "see the backpack" and not to "search" it. (Id at 6-7). Even had he asked to "see" the backpack based on the fact he had already had consent to "search" the shopping bag, a Fourth Amendment violation still manifested for filing a suppression by trial counsel. No verbal consents were given to search either bags. (See Transcript at p.152; L.3-9); see also United States v. Guapi, 144 F.3d 1393 (11th Cir. 1998)("Bus passenger did not voluntarily consent to search."); United States v. Drayton, 231 F.3d 787 (11th Cir.), Cert. denied, 122 S.Ct. 803 (2002)("Search at depot was not voluntary).

Because Sergeant Drummond only asked to "see" the backpack—and Mr. Hooks did not verbally consented to searche the bags—a suppression motion should have filed by trial counsel based on a Fourth Amendment violation. Specifically, "friut from a posinous tree." See United States v. Washington, 151 F.3d 1354 (11th Cir. 1998)(Bus passenger was searched without voluntary consent."); United States v. Osage, 235 F.3d 518 (10th Cir. 2000)("Consent to search suitcase did not extend to sealed can package."); United States v. Runyan, 275 F.3d 449 (5th Cir. 2001)("Police could not open closed container discovered by previous private search."); United States v. Heath, 259 F.3d 522 (6th Cir. 2001)("Allowing officer to examine keys was not consent to open and enter apartment.").

-14-

Thus, there was no consent give to search the backpack, which contained the cocaine stuffed in two black socks,and there was only a request made to "see" the backpack not to "search" it, a pre-trial motion was needed to suppress the tainted  seized evidence.

E.    INEFFECTIVE ASSISTANCE SIXTH AMENDMENT VIOLATION

The Sixth Amendment gaurantees a criminal defendant a trial comptent and adequate throughout every stage of proceedings. The Sixth Amendment alse requires not merely the provision of counsel to the accused in a criminal prosecution, but assistance which is to be for his defense, and thus, the core purpose of the counsel guaranty is to assure assistance at trial when the accused is confronted with both the intricacies of the law and the advocacy of the prosecutor; if no actual assistance for the accused's defense is provided, then the constitutional guaranty has been violated. See United States v. Cronic, 80 L.Ed.2d 657, 466 US 648.

The right to efective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial, and absent some effect of challenged conduct on the reliability of the trial process,  the Sixth Amendment guaranty is generally not implicated. See United State v. Valenzuela-Bernal, 458 US 858, 867-868, 73 L.Ed.2d 1193, 102 S.Ct. 3440 (1982); United States v. Morrison, 449 US, at 364-365, 66 L.Ed.2d 564, 101 S.Ct. 665.

There may be, as in the instant case, circumstances of such magnitude that, although counsel is available to assist the accused

-15-

during trial, the likelihood that any lawyer, even a fully compet-
ent one, could provide effective assistance is so small that a
presumption of prejudice is appropriate without inquiry into the
actual conduct of the trial. Powell v. Alabama, 287 US 45, 77 L.Ed.
158, 53 S.Ct. 55, 84 ALR 527 (1932).

II.   A trial counsel who failed to file any pre-trial motions on
defensive issues, and failed to seek pre-trial discovery, to obtain
transcript of testimony before grand jury warrants an evidentiary
hearing to resolve the ineffectiveness of counsel claim. See Clark
v. Blackburn, 619 F.2d 431 (5th Cir. 1980); see also Kirkpatrick v.
Blackburn, 777 F.2d 272 (5th Cir. 1985)("Trial counsel's failure
to move to suppress evidence obtained during illegal search of
petitioner's residence may constitute ineffective assistance and
requires an evidentiary hearing to develop the record on claim.");
Morrison v. Kimmelman, 650 F.Supp. 801 (D.N.J. 1986)("Trial counsel's
failure to seek suppression of illegally siezed evidence amounted
to ineffective assistance."); Bond v. United States, 1 F.3d 631 (
7th Cir. 1993)("Trial counsel's failure to move to suppress evidence
is properly raised on petition for hebeas relief instead on direct
appeal.")

III.  Mr. Wise contends that his trial counsel's failure to object
and/or suppress the the illegally tainted evidence seized and used at
trial constitutes ineffective assistance representation. See Simth
v. Wainwright, 777 F.2d 609 (11th Cir. 1985)("Trial counsel's failure
to move to suppress a confession can be extremely prejudicial and
constituted ineffective assistance."); United States v. Matos, 905
F.2d 30 (2nd Cir. 1990)("Trial counsel's failure to file suppression

-16-

motion and preserve issue for review on appeal any constitute ineffective assistance of counsel and requires a remand.").

The evidentiary records show that Mr. Wise's Fourth Amendment rigths were violated during an illegal stop and search of properties. Counsel had a Sixth Amendment duty to protect Mr. Wise's constitutional rights during the stages of the procees. Cronic, id. also see Adcox v. O'Brien, 899 F.2d 735 (8th Cir. 1990)("The trial court must determine whether...motion to suppress would have been successful if pursued by defense counsel in order for failure to pursue motions to suppress.") Because this failure to obect and preserve the Fourth Amendment violation violates Mr. Wise's Sixth Amendment Constitutional right to effective representation, prejudice is "presumed". See Chapman v. California, 17 L.Ed.2d 705, 386 U.S. 18 ("In order for an error involving the denial of a federal constitutional right to be held harmless...the reviewing court must be satisfied beyond a reasonable doubt that the error did not contribute to the defendant's conviction."); see, e.g, Payne v. Arkansas, 356 US 560, 2 L.Ed.2d 975, 78 S.Ct. 844(coerced confession); Gideon v. Wainwright, 372 U.S. 335, 9 L.Ed.2d 799, 83 S.Ct. 792, 93 ALR.2d 733 (right to counsel); Tumey v. Ohio, 273 U.S. 510,71 L.Ed.2d, 47 S.Ct. 437, 50 ALR 1243 (impartial judge).

In sum, the Mr. Wise's claim of ineffective assistance is meritable and this Court should grant him the relief he seeks. His Counsel's failure to object to the erroneous jury instruction denied him a fair trial. Counsel's failure suppress the tainted evidence used at trial violates Mr. Wise's Fourth Amendment rights.

-17-

F.      ISSUE 3 OF MR. WISE'S MOTION IS NT PROCEDUDRALLY BARRED
        BECAUSE THE BASIS FOR RAISING IT WAS NOT KNOWN AT THE
        TIME OF SENTENCING

The government's response must fail because this Court did
indicate that had it used its discretion under the mandatory 100-1
law at sentencing. However, had the decided the less-than 100-1
crack vs. cocaine powder sentence, it felt its decision would have
been "overturned" by the Court of Appeals. (See Transcript at 37;
L.6-19). However, Mr. Wise's failure to raise this issue on direct
appeal does not procedurally bar him from raising it in a § 2255
hebeas corpus petition.

I.      An error asserted by a petitioner in  his motion not raised at
sentencing or on direct appeal does not prohibit him from raising
it in a hebeas corpus. Accordingly, to obtain relief he must meet
the two part "cause and actual prejudice" test. United States v. Frady
456 U.S. 153, 167-68, 102 S.Ct. 1584, 1594-95, 71 L.Ed.2d 816 (1982).
Under that test, "[t]o obtain collateral relief based on trial error
to which no contemporaneous objection was made, convicted defendant
must show both (1) 'cause' excusing his double procedural default,
and (2) "actual prejudice' resulting from the errors of which he com-
plains." Id; United States v. Mayback, 23 F.3d 888,890 n.1 (4th Cir.
1994).

The court precedent nevertheless authorizes collateral review
in a narrow class of cases, where the error involves a "foundamental
defect which inherently results in a complete miscarriage of justice."
United States Addonizio, 442 U.S. 178,185, 99 S.Ct. 2235,2240, 60
L.Ed.2d 805 (1979); United States v. Timmrect, 441 U.S. 780, 99 S.Ct.
2085, 60 L.Ed.2d 634 (197().

-18-

I.    REASON FOR FAILURE TO RAISE CRACK RATIO 100 TO 1 ON
      DIRECT APPEAL

Mr. Wise asserts that his failure to raise this claim on direct appeal——even though his counsel did make the request at sentencing—— because prior to sentencing the law was that a sentencing court had no "discretion" to consider less than the 100 to 1 crack cocaine ratio when sentencing a defendant.[4] However, the United States Supreme Court's recent decision in Kimbrough v. United States, No. 06-6330__, Arg. Oct. 2, 2007__Decided Dec. 6, 2007,  now gives this Court "discretionary" authority to consider less than the 100-1 crack ratio in fashioning a defendant's sentencing.[5]  Mr. Wise should now be re-sentenced in accordance with Kimbrough's reasoning, which will give this Court an opportunity to consider the previous sentence imposed.

Applying the two part cause and prejudice test, the Court find that Mr. Wise has shown adequate cause for his failure to raise the

4. I have struggled over the years with Congress's decision that crack cocaine is 100 times worse than powder cocaine. That discrepancy offends me because it's not supported by the evidence that I received, which would support the findings taht I made that this was not a reasonable diffence, and for other reasons. All of these reasons sounded good to me; but they didn't sound very good to the Court of Appeals, and I was reversed every time on them. (Id. at p.37, L.10-18).

5. In Kimbrough, though he pleaded guilty to offenses that were similar to Mr. Wise's Conspiracy charge(s)--two type of drugs [crack and cocaine powder], the plea subjected him to a minimum prison term of 15 years and a maximum of life. He was also a "career criminal". The advisory Guidelines range was 228 to 270 months, or 19 to 22.5 years. The district court sentenced him to the statutory minimum sentence--concluding  it was long enough to accomplish § 3553(a)'s objectives. The district Court rasoned "Kimbrough's case exemplified the 'disproportionate and unjust effect that crack cocaine guidelines have in sentencing."

present issue on direct appeal as Kimbrough decision was issued
well after Mr. Wise's sentencing and direct appeal. Abreu v. United
States, 911 F.Supp. 203,207 (E.D. Va. 1996)(citing Reed v. Ross,
468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984))("A petitioner seek-
ing collateral relief may be excused from failing to make an object-
ion in the original proceeding if the basis for the objection was
not known until after the petitioner's conviction because final.").

## II.    PREJUDICE THEREOF

Mr. Wise was prejudice because his Fifth Amendment right was
violated because the Court, though it was willing to used its dis-
cretion, indicated that the Court of Appeals will overturn the
sentence just as it had done in every case the judge had used his
"discretion" in fashioning other defendants' sentences. (See Id.
at p.37; L.10-18). See Weir v. Muller, 527 D.2d 872 (5th Cir. 1976)
("[W]e have ruled district courts erred in finding no jurisdiction
to consider damage claims based upon implied causes of action under
the Due Process Clauses of the fifth amendment); see also Reeves v.
Cit of Jackson, 532 F.2d 491, 495 (5th Cir. 1976)(same); Roane v.
Callisburg Independent School District, 511 F.2d 633, 635 n.1 (5th
Cir. 1975)(same); United Farmworkers of Florida Housing Project, Inc.
v. City of Delray Beach, 499 F.2d 799, 801-02 & n.2 (5th Cir. 1974)
(same).

## III.   MR. WISE'S CAREER OFFENDER SENTENCE DOES AFFECT HIS GUIDE-
LINES RANGE TO THE NEW AMENDMENT RETROACTIVELY--AND THIS
COURT SHOULD THUS REDUCE THE SENTENCE UNDER THE NEW DRUG
AMENDMENT

With further consideration, Mr. Wise agrues that issue two (2)
of his Section 2255 motion calls for re-sentencing due to the recent

-20-

United States Sentencing Guidelines retroactive March 3rd, 2008, amendment pursuant to cocaine base ("Crack") in calculating his sentence. See Amendment 706.[6]. However, the government is wrong that 28 U.S.C. § 2255 is not suffice to the issue raised therein, but should have been brought pursuant to a motion under 18 U.S.C. § 3582(c)(2). The government's assertion is equally "most easily disposed on that basis—too. See United States v. Marmolejos, 140 F.3d 488 (3rd Cir. 1998). .

In Marmolejos, like Mr. Wise, the Third Circuit Court held because [he] noted, and the government there conceded, § 1B1.10 "is not releveant to [the] consideration of the instant § 2255 mot- ion," Marmolejos was intitle to relief based on his substantive retroactive claim pursuant to Note 12 to § 2D1.1.[7]. Because Mr. Wise's § 2255 claim is not based on a "post-sentence amendment lowing the guideline rang (See 28 U.S.C. § 3582(c)(2)), relief can be grant based on the Section 2255. He seeks review only on whether the Court used the correct offense level in calculating his prison term. See Marmolejos, Id.

IV.   Mr. Wise is however, entitled to the benefit of retrocactive crack amendment because his sentence did depend on the conviction for possessing crack cocaine. Under the old drug equivalency chart

6.   Not 12 § 2D1.1 deals with negotiated drug amount intented to deliver, which the Sentencing Commission rule cannot be applied in a defendant base offense level for sentencing purposes unless it can be proved by preponderance of the evidence that the defendant could have actually delivered the negotiated amount.

7.   Though the government is techically correct that Amendment 706 does become "effective retroactively" until March 3, 2008, this Court could nontheless hold this issue in abyance until March 3rd, 2008, has arrived--for retroactive purposes.

of Marijana. This is no longer the rule. The Sentencing Commission has an equivalency table that is based upon the amounts of the other drugs. For example, an offense that has a based offense level of 38, the marijuana equivalency would be 6.7kg of marijuana to 1g of cocaine base. But for an offense level 12, the marijuana equivalency would be 10kg of marijuana to 1g of cocaine base. Mr. Wise's sentencing ragne would have effect pursuant to this reasoning because he was charged in a multi-object conspiracy and the drugs were all converted to the marijuana chart.

## V.         CAREER CRIMINAL STATUS AFFACTED

Additionally, Mr. Wise's career offender enhancemen is affected by Amendment 706, and his career offense level could be reduced to the required "minimum mandatory" 15 years—fulfilling U.S.S.G. § 4B1.1' goals. See Gall v. United States, 128 S.Ct. 586, 591 (2007), 128 S.Ct. at 596("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range ...the Guidelines should be the starting point and the initial benchmark. They are not the only consideration, however....[T]he judge should then consider all of the § 3553(a) factors to determine whether they support the sentence reqested by a party.") (emphases added).

Thus, nothing in the statutory language requires that guideline amendment actually have the effect of lowering a defendant's guideline range before the sentencing court can revisit the sentence. Rather, the statute requires that the defendant's sentence was "based on" a sentencing range that has subsequently been lowered. See Gall, 128 S.Ct. at 596; see also United States v. LaBonte, 70 F.3d 1396, 1412 (1st Cir. 1995)("Rejecting government's argument that § 3582(c)(2)

-22-

resentencing is inappropriate where defendant's original sentence falls within the amended guideline range because 'we cannot be confident that, faced with a different range of options, the district court's choice will remain the same.")(overruled on other grounds 520 U.S. 751 (1997)). United States v. William, 435 F.3d 1350, 1354-55(11th Cir.2006).

## CONCLUSION

WHERERORE, based on all of the foregoing matters raised in Mr. Wise's Memorandum of Law this Court grant all the relief seeked thereof.

Respectfully Submitted,

DAVIS D. WISE, Pro Se
U.S.P. Canaan
Post Office Box 300
Waymart, Pennsylvania 18472

cc.
Filed:02/2.5/2008

LEURA G. CANARY
UNITED STATES ATTORNEY

SANDRA J. STEWART

Assistant United States Attorney
131 Clayton Street
Montgomery, Alabama 36101-0197

-23-



CERTIFIED MAIL

7007 0710 0002 2240 0659

Office of the Clerk
United States District Court
Post Office Box 711
Montgomery, Alabama 36101-0711

DAVID DEJUAN WISE
Reg. No. 11376-002
Post Office Box 300
Minersville, Pennsylvania 18472

LEGAL MAIL:

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DAVID D. WISE,

    Petitioner/Defendant,

      vs.

UNITED STATES OF AMERICA,

    Respondent.

)
)
)
)
)
)
)
)
)
)

Civil Action No.:2:8-cv-17

    (MHT)

DECLARATION OF DAVID D. WISE
IN SUPPORT OF § 2255 MEMORAND-
UM OF LAW

I, David D. Wise, hereby declare:

1. I am the moving Petitioner in the Civil Action § 2255 motion before the District Court for the Middle District of Alabama.

2. I was convicted by a jury of conspiracy with Intent to Distribute Cocaine involving several counts pursuant to 18 U.S.C. §§ 841 and 846.

3. I appealed the Sentence and Judgment imposed by this Court on or about 2006, to the 11th Circuit Court of Appeals. The appellate court affirmed the Sentence and Judgment on or about 2007.

4. I filed before this District Court, Middle District of Alabama, a Section 2255 motion dated Dec. 21, 2008, to Vacate, Set Aside the sentence or conviction.

5. In the motion, I declared, based on the sworn testimony by the government's witnesses who testified on their behalf, base on probable cause to stop and search me and a codefendant, that declarant's Fourth Amendment rights were violated from said test-

imon , and that my Sixth Amendment rights were violation to a fair trial and representation of counsel.

6. I assertedly based the motion pursuant to the ineffectiveness of assistance that was rendered at said trial and appellate failures. That those claims were factually true and based upon the trial records and testimony rendered from the proceedings. And all factual statements in the motion are derived therefrom.

I declare under penalty of perjury the foregoing is true an correct.

Respectfully Submitted,

D____ D. W___

❀❀❀❀❀❀❀❀❀❀❀❀❀❀❀❀❀❀❀❀❀❀❀ .

Dated: Feb. 25 , 2008

D____ D. W___
David D. Wise

-2-